1  ROBBINS GELLER RUDMAN
     & DOWD LLP
2  SPENCER A. BURKHOLZ (147029)
   THOMAS E. EGLER (189871)
3  SCOTT H. SAHAM (188355)
   NATHAN R. LINDELL (248668)
4  ASHLEY M. ROBINSON (281597)
   655 West Broadway, Suite 1900
5  San Diego, CA  92101
   Telephone:  619/231-1058
6  619/231-7423 (fax)
   spenceb@rgrdlaw.com
7  tome@rgrdlaw.com
   scotts@rgrdlaw.com
8  nlindell@rgrdlaw.com
   arobinson@rgrdlaw.com
9
   KESSLER TOPAZ MELTZER
10    & CHECK, LLP
   ANDREW L. ZIVITZ
11 SHARAN NIRMUL
   KIMBERLY JUSTICE
12 JENNIFER L. JOOST
   280 King of Prussia Road
13 Radnor, PA  19087
   Telephone:  610/667-7706
14 610/667-7056 (fax)
   azivitz@ktmc.com
15 snirmul@ktmc.com
   kjustice@ktmc.com
16 jjoost@ktmc.com

17 Co-Lead Counsel for Plaintiffs

18 [Additional counsel appear on signature page.]

19            UNITED STATES DISTRICT COURT
             CENTRAL DISTRICT OF CALIFORNIA
20

| | |
|---|---|
| DAVID H. LUTHER, et al., Individually and On Behalf of All Others Similarly Situated, | No. 2:12-cv-05125-MRP(MANx) |
| | CLASS ACTION |
| Plaintiffs, | PLAINTIFFS' OPPOSITION TO THE COUNTRYWIDE DEFENDANTS' MOTION TO DISMISS |
| vs. | |
| COUNTRYWIDE FINANCIAL CORPORATION, et al., | DATE:     February 25, 2013 TIME:      11:00 a.m. CTRM:    12, Hon. Mariana R. Pfaelzer |
| Defendants. | |

[Caption continued on following page.]

804146_1

1

2

3

4

5

6

7

8

| | |
|---|---|
| WESTERN CONFERENCE OF TEAMSTERS PENSION TRUST FUND, Individually and On Behalf of All Others Similarly Situated, | No. 2:12-cv-05122-MRP(MANx) |
| Plaintiff, | <u>CLASS ACTION</u> |
| vs. | |
| COUNTRYWIDE FINANCIAL CORPORATION, et al., | |
| Defendants. | |

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

804146_1

# TABLE OF CONTENTS

**Page**

I.  Introduction .................................................................................................... 1

II.  Plaintiffs Have Standing to Assert Securities Act Claims on Behalf of the Putative Class at the Pleading Stage ...................................................... 3

    A.  Standing Principles ................................................................................. 4

        1.  Constitutional Standing Under Article III .................................... 4

        2.  Statutory Standing Under §§11 and 12(a)(2) .............................. 7

    B.  The Proper Scope of the Proposed Class at the Pleading Stage ........... 9

        1.  The Second Circuit Approach in *NECA v. Goldman Sachs* ........................................................................................... 9

        2.  The First Circuit Approach – *Plumbers' Union Local No. 12 Pension Fund v. Nomura Asset Acceptance Corp.* .............. 12

III.  Plaintiffs Are Entitled to Amend the Complaint to Add Additional Plaintiffs ......................................................................................................... 14

IV.  The Complaints Properly Allege Violations of the Securities Act .............. 16

    A.  The Complaints Plead that Defendants' Statements Are False and that They Omitted Material Information....................................... 16

    B.  Plaintiffs' Remedy Under the Securities Act Is Damages, Not the "Substitution" of Loans............................................................. 17

    C.  Plaintiffs Need Not Plead in Compliance with Fed. R. Civ. P. 9(b) ...................................................................................................... 19

V.  Plaintiffs Do Not Seek to Recover for Post-Filing Purchases ..................... 20

    A.  Per Federal Regulation and Case Law, Plaintiffs Need Not Plead Nor Demonstrate Reliance ......................................................... 22

    B.  Plaintiffs' Purchase of MBS Before the Effective Date of the Prospectus Supplements and Amendments to the Registration Statements Does Not Bar Their Claims................................................ 23

VI.  Plaintiffs' Claims Are Timely ...................................................................... 24

    A.  Statute of Repose ................................................................................. 24

    B.  Statute of Limitations........................................................................... 28

VII.  Plaintiffs Have Adequately Pled §12(a)(2) Claims...................................... 29

804146_1

1
2                                                                          **Page**

3        A.    The Issuing and Underwriting Defendants Are Sellers Within
               the Meaning of §12(a)(2) ................................................................ 30
4
         B.    Plaintiffs Have Adequately Alleged that They Purchased Their
5              Securities in the Offerings .................................................................. 34

6   VIII.  The *Western Conference* Action Was Timely Filed ................................... 36

7        A.    California Law Governs Any Analysis of the Timeliness of the
               *Western Conference* Complaint and Cross-Jurisdictional
8              Tolling Is Inapplicable ........................................................................ 36

9        B.    The *Western Conference* Complaint Was Tolled Under
               California Law Because the *Luther* Plaintiffs Had Standing to
10             Bring Claims on Behalf of All Class Members with a Well
               Defined Community of Interest in the Law and Facts Involved ........ 37
11
     IX.    Conclusion ........................................................................................... 39
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# TABLE OF AUTHORITIES

**Page**

## CASES

*Allstate Ins. Co. v. Countrywide Fin. Corp.*,
   824 F. Supp. 2d 1164 (C.D. Cal. 2011).......................................................17, 29

*APA Excelsior III L.P. v. Premiere Techs.*,
   476 F.3d 1261 (11th Cir. 2007).......................................................................23

*ASARCO, Inc. v. Kadish*,
   490 U.S. 605, 109 S. Ct. 2037,
   104 L. Ed. 2d 696 (1989)...............................................................................39

*B.W.I. Custom Kitchen v. Owens-Illinois, Inc.*,
   191 Cal. App. 3d 1341 (1987).......................................................................38

*Baker v. Carr*,
   369 U.S. 186, 82 S. Ct. 691,
   7 L. Ed. 2d 663 (1962).....................................................................................5

*Bangert v. Narmco Materials, Inc.*,
   163 Cal. App. 3d 207,
   209 Cal. Rptr. 438 (1984).............................................................................37

*Bateman v. Ariz.*,
   429 U.S. 1302, 97 S. Ct. 1,
   50 L. Ed. 2d 32 (1976)...................................................................................39

*Blakemore v. Superior Court*,
   129 Cal. App. 4th 36,
   27 Cal. Rptr. 3d 877 (2005)..........................................................................38

*Blum v. Yaretsky*,
   457 U.S. 991 (1982) ........................................................................................6

*Brown v. Regents of Univ. of Cal.*,
   151 Cal. App. 3d 982,
   198 Cal. Rptr. 916 (1984).............................................................................38

*Capri v. Murphy*,
   856 F.2d 473 (2d Cir. 1988) .........................................................................32

804146_1

Page

*Citiline Holdings, Inc. v. iStar Fin., Inc.*,
  701 F. Supp. 2d 506 (S.D.N.Y. 2010) ....................................................... 30, 35

*City of Ann Arbor Emps.' Ret. Sys. v.*
  *Citigroup Mortg. Loan Trust Inc.*,
  No. CV 08-1418, 2010 WL 6617866
  (E.D.N.Y. Dec. 23, 2010) ....................................................................... 18, 19

*City of Pontiac Gen. Emps.' Ret. Sys. v. MBIA, Inc.*,
  637 F.3d 169 (2d Cir. 2011) ........................................................................ 29

*Daniels v. Centennial Grp. Inc.*,
  16 Cal. App. 4th 467,
  21 Cal. Rptr. 2d 1 (1993) ...................................................................... 15, 38

*Dexia Holdings, Inc. v. Countrywide Fin. Corp.*,
  No. 11-cv-7165-MRP (MANx), 2012 WL 1798997
  (C.D. Cal. Feb. 17, 2012) ............................................................................ 17

*Doody v. E.F. Hutton & Co.*,
  587 F. Supp. 829 (D. Minn. 1984), *aff'd*,
  968 F.2d 810 (9th Cir. 1992) ....................................................................... 18

*Doremus v. Bd. of Educ.*,
  342 U.S. 429, 72 S. Ct. 394,
  96 L. Ed. 475 (1952) ................................................................................... 39

*Dravo Corp. v. White Consol. Indus. Inc.*,
  602 F. Supp. 1136 (W.D. Pa. 1985) ............................................................ 36

*F.D.I.C. v. Countrywide Fin. Corp.*,
  No. 2:12-CV-4354 MRP, 2012 WL 5900973
  (C.D. Cal. Nov. 21, 2012) ............................................................ 4, 5, 29, 37

*Fallick v. Nationwide Mut. Ins. Co.*,
  162 F.3d 410 (6th Cir. 1998) ......................................................................... 3

*Fed. Hous. Fin. Agency v. UBS Ams., Inc.*,
  No. 11 CIV. 5201 DLC, 2012 WL 2400263
  (S.D.N.Y. June 26, 2012) ............................................................................ 25

- iv -

804146_1

**Page**

*Finkel v. Stratton Corp.*,
  962 F.2d 169 (2d Cir. 1992) ..................................................................... 24

*Fireside Bank v. Superior Court*,
  40 Cal. 4th 1069, 155 P.3d 268 (2007) ............................................ 37

*Foman v. Davis*,
  371 U.S. 178 (1962) ...................................................................... 14, 32

*Genesee Cnty. Emps.' Ret. Sys. v.*
  *Thornburg Mortg. Sec. Trust 2006-3*,
  825 F. Supp. 2d 1082 (D.N.M. 2011)........................................5, 11, 14, 31

*Fort Worth Emps. Ret. Fund v. J.P. Morgan Chase & Co.*,
  862 F. Supp. 2d 322 (S.D.N.Y. 2012) ........................................*passim*

*Grasty v. Amalgamated Clothing & Textile Workers Union*,
  828 F.2d 123 (3d Cir. 1987) ................................................................ 3

*Herb v. Pitcairn*,
  324 U.S. 117, 65 S. Ct. 459,
  89 L. Ed. 789 (1945) ......................................................................... 36

*Highland Farms Dairy, Inc. v. Agnew*,
  300 U.S. 608, 57 S. Ct. 549,
  81 L. Ed. 835 (1937)......................................................................... 39

*Hutchison v. CBRE Realty Fin., Inc.*,
  638 F. Supp. 2d 265 (D. Conn. 2009) ............................................... 35

*In re Am. Bank Note Holographics Sec. Litig.*,
  93 F. Supp. 2d 424 (S.D.N.Y. 2000) ..........................................31, 32

*In re Am. Int'l Grp., Inc.*,
  741 F. Supp. 2d 511 (S.D.N.Y. 2010) ..........................................5, 11

*In re Bear Stearns Mortg. Pass-Through Certificates Litig.*,
  851 F. Supp. 2d 746 (S.D.N.Y. 2012) ........................................*passim*

*In re Charles Schwab Corp. Sec. Litig.*,
  257 F.R.D. 534 (N.D. Cal. 2009) ...................................................... 32

804146_1

1

2                                                                                          **Page**

3  *In re Citigroup Bond Litig.*,
4       723 F. Supp. 2d 568 (S.D.N.Y. 2010) ............................................................. 11

5  *In re Countrywide Fin. Corp. Mortg.-Backed Sec. Litig.*,
        No. 2:11-ML-02265-MRP (MANx), 2012 WL 3578666
6       (C.D. Cal. Aug. 17, 2012) ................................................................ 16, 24

7  *In re Countrywide Fin. Corp. Sec. Litig.*,
8       273 F.R.D. 586 (C.D. Cal. 2009) ............................................................. 22

9  *In re Countrywide Fin. Corp. Sec. Litig.*,
10      588 F. Supp. 2d 1132 (C.D. Cal. 2008) ......................................... 7, 11

11 *In re DDi Corp. Sec. Litig.*,
        No. CV 03-7063 NM, 2005 WL 3090882
12      (C.D. Cal. July 21, 2005) ....................................................... 33, 35

13
   *In re Dynex Capital, Inc. Sec. Litig.*,
14      No. 05 Civ. 1897 HB, 2011 WL 781215
15      (S.D.N.Y. Mar. 7, 2011) ........................................................ 12, 14

16 *In re IndyMac Mortg.-Backed Sec. Litig.*,
17      No. 09 Civ. 4583 LAK, 2012 WL 3553083
        (S.D.N.Y. Aug. 17, 2012) ............................................................. 22
18
   *In re Levi Strauss & Co. Sec. Litig.*,
19      527 F. Supp. 2d 965 (N.D. Cal. 2007) ................................................ 35

20
   *In re Morgan Stanley Mortg. Pass-Through Certs. Litig.*,
21      810 F. Supp. 2d 650 (S.D.N.Y. 2011) ........................................ 15, 34

22 *In re Oppenheimer Rochester Funds Grp. Sec. Litig.*,
23      838 F. Supp. 2d 1148 (D. Colo. 2012) ............................................. 30

24 *In re Scottish Re Group Sec. Litig.*,
25      524 F. Supp. 2d 370 (S.D.N.Y. 2007) ............................................. 33

26 *In re Wash. Mut.*,
        259 F.R.D. 490 (W.D. Wash. 2009) ................................................ 33
27

28

1
2

**Page**

*In re Wash. Mut., Inc. Sec.*,
  694 F. Supp. 2d 1192 (W.D. Wash. 2009) ........................................ 34

*In re Wash. Mut. Mortgage-Backed Sec. Litig.*,
  276 F.R.D. 658 (W.D. Wash. 2011) ........................................ 13, 22

*In re Wells Fargo Mortgage-Backed Certificates Litig.*,
  712 F. Supp. 2d 958 (N.D. Cal. 2010) ........................................ 18

*In re Westinghouse Sec. Litig.*,
  90 F.3d 696 (3d Cir. 1996) ........................................ 33, 35

*In re WorldCom, Inc. Sec. Litig.*,
  294 F. Supp. 2d 392 (S.D.N.Y. 2003) ........................................ 35

*La Duke v. Nelson*,
  762 F.2d 1318 (9th Cir. 1985) ........................................ 10

*Lewis v. Casey*,
  518 U.S. 343, 116 S. Ct. 2174,
  135 L. Ed. 2d 606 (1996) ........................................ 3, 6

*Lierboe v. State Farm Mut. Auto. Ins. Co.*,
  350 F.3d 1018 (9th Cir. 2003) ........................................ 10

*Lone Star Fund V (US), LP v. Barclays Bank PLC*,
  594 F.3d 383 (5th Cir. 2010) ........................................ 18, 19

*Los Angeles v. Lyons*,
  461 U.S. 95, 103 S. Ct. 1660,
  75 L. Ed. 2d 675 (1983) ........................................ 39

*Lujan v. Defenders of Wildlife*,
  504 U.S. 555, 112 S. Ct. 2130,
  119 L. Ed. 2d 351 (1992) ........................................ 4

*Luther v. Countrywide Fin. Corp.*,
  195 Cal. App. 4th 789,
  125 Cal. Rptr. 3d 716 (2011) ........................................ *passim*

804146_1

**Page**

*MacLean v. Huddleston*,
  459 U.S. 375, 103 S. Ct. 683,
  74 L. Ed. 2d 548 (1983)...................................................................... 16

*Maher v. Durango Metals*,
  144 F.3d 1302 (10th Cir. 1998) ........................................................... 31

*Maine State Ret. Sys. v. Countrywide Fin. Corp.*
  No. 2:10-cv-0302 MRP (MANx), 2011 WL 4389689
  (C.D. Cal. May 5, 2011) ...............................................................*passim*

*Maine State Ret. Sys. v. Countrywide Fin. Corp.*,
  722 F. Supp. 2d 1157 (C.D. Cal. 2010).......................................*passim*

*Mallen v. Alphatec Holdings, Inc.*,
  861 F. Supp. 2d 1111 (S.D. Cal. 2012) ............................................... 31

*Merck & Co. v. Reynolds*,
  _U.S._, 130 S. Ct. 1784,
  176 L. Ed. 2d 582 (2010)...................................................................... 29

*N.J. Carpenters Health Fund v. DLJ Mortg. Capital*,
  No. 08 Civ. 5653 PAC, 2011 WL 3874821
  (S.D.N.Y. Aug. 16, 2011).................................................................... 12

*N.J. Carpenters Health Fund v. Residential Capital, LLC*,
  272 F.R.D. 160 (S.D.N.Y. 2011)......................................................... 12

*Nat'l Paint & Coatings Ass'n v. State of Cal.*,
  58 Cal. App. 4th 753, 68 Cal. Rptr. 2d 360 (1997) ............................ 39

*NECA-IBEW Health & Welfare Fund v. Goldman Sachs & Co.*,
  693 F.3d 145 (2d Cir. 2012) .........................................................*passim*

*Pennell v. San Jose*,
  485 U.S. 1, 108 S. Ct. 849,
  99 L. Ed. 2d 1 (1988)........................................................................... 39

*Pinter v. Dahl*,
  486 U.S. 622, 108 S. Ct. 2063,
  100 L. Ed. 2d 658 (1988).................................................30, 31, 32, 33

804146_1

1
2                                                                          **Page**

3   *Plumbers' Union Local No. 12 Pension Fund*
4       *v. Nomura Asset Acceptance Corp.*,
        632 F.3d 762 (1st Cir. 2011) ............................................................5, 12, 13, 34
5
    *Pub. Emps.' Ret. Sys. of Miss. v.*
6       *Merrill Lynch & Co., Inc.*,
7       277 F.R.D. 97 (S.D.N.Y. 2011)..............................................................5, 12, 14

8   *Safron Capital Corp. v. Leadis Tech., Inc.*,
9       274 F. App'x 540 (9th Cir. 2008)................................................................. 19

10  *Sav-On Drug Stores, Inc. v. Superior Court*,
11      34 Cal. 4th 319, 96 P.3d 194 (2004) ......................................................... 37

12  *Schoenhaut v. Am. Sensors*,
        986 F. Supp. 785 (S.D.N.Y. 1997) ............................................................. 33
13
    *Secretary of Md. v. Joseph H. Munson Co.*,
14      467 U.S. 947, 104 S. Ct. 2839,
15      81 L. Ed. 2d 786 (1984)................................................................................ 39

16  *State Treasurer of the State of Michigan v.*
17      *Countrywide Fin. Corp.*,
        No. 11-CV-00809-MRP-MAN (C.D. Cal. 2011).........................................22, 23
18
    *Stratmore v. Combs*,
19      723 F. Supp. 458 (N.D. Cal. 1989).............................................................. 18
20
    *Thrivent Fin. for Lutherans v. Countrywide Fin. Corp.*,
21      No. 11-cv-7154-MRP (MANx), 2012 WL 1799028
22      (C.D. Cal. Feb. 17, 2012) ............................................................................ 17

23  *Tsereteli v. Residential Asset Securitization Trust 2006-A8*,
24      692 F. Supp. 2d 387 (S.D.N.Y. 2010)......................................................... 18

25  *United Food and Commercial Workers Union*
        *v. Chesapeake Energy Corp.*,
26      No. CIV-09-1114-D, 2010 WL 3527596
27      (W.D. Okla. Sept. 2, 2010)......................................................................31, 32

28

804146_1

|  | Page |
|---|---|
| *United Union of Roofers, etc. No. 40 v. Ins. Corp. of Am.,*<br>919 F.2d 1398 (9th Cir. 1990) | 15 |
| *Vasquez v. Superior Court of San Joaquin Cnty.,*<br>4 Cal. 3d 800, 484 P.2d 964 (1971) | 37 |
| *Wachovia Equity Sec. Litig. v. Wachovia Corp.,*<br>753 F. Supp. 2d 326 (S.D.N.Y. 2011) | 33 |
| *Winkels v. George A. Hormel & Co.,*<br>874 F.2d 567 (8th Cir. 1989) | 36 |
| *W.R. Huff Asset Mgmt. Co.,*<br>549 F.3d 100 (2d Cir. 2008) | 4 |

**STATUTES, RULES AND REGULATIONS**

15 U.S.C.
| | |
|---|---|
| §77(a) | 7, 22 |
| §77k | *passim* |
| §77k(a) | 7, 21, 22 |
| §77k(d) | 24, 26, 27 |
| §77l | 33 |
| §77l(1) | 31 |
| §77l(a)(1) | 31 |
| §77l(a)(2) | 8, 29 |
| §77l(2) | 35 |
| §77l(a)(2) | *passim* |
| §77m | 24, 25, 28 |
| §77n | 18 |
| §77o | 19, 20 |
| §77z-1(a)(3)(B)(iii) | 20 |
| §78j(a)(3) | 25 |
| §78m | 24, 28 |
| §78n(a)3 | 23 |

804146_1

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**Page**

17 C.F.R.
　　§230.158(a)(2)(i)-(ii) .................................................................... 22
　　§230.159A .................................................................................... 30
　　§230.159A(a) ......................................................................... 30, 31
　　§230.424 ...................................................................................... 30
　　§230.430B .............................................................................. 25, 26

Federal Rules of Civil Procedure
　　Rule 8(a) ............................................................................... 32, 34
　　Rule 9(b) ...................................................................................... 19
　　Rule 12(a)(2) ................................................................................ 32
　　Rule 12(b)(6) ......................................................................... 23, 35
　　Rule 15(a) .................................................................................... 14
　　Rule 23 .............................................................................. 3, 8, 13
　　Rule 23(a)(3) ................................................................................. 3

Securities Offering Reform,
　　Securities Act Release No. 75,
　　2005 WL 1692642 (July 19, 2005) ............................................. 30

70 Fed. Reg. (Aug. 3, 2005)
　　44,722 .......................................................................................... 26
　　44,773 .......................................................................................... 26
　　44,774 .......................................................................................... 25

## I.    Introduction

This case is a five-year old putative class action involving strict liability claims under the Securities Act of 1933 (the "1933 Act" or "Securities Act") brought on behalf of purchasers of mortgage-backed securities ("MBS") created and sold by Countrywide and several Wall Street bank underwriters pursuant to uniform offering documents – ***uniform offering documents that this Court has held are actionable under the 1933 Act***.  In light of this, the core issue in defendants' motion to dismiss is not whether plaintiffs state a claim – they clearly do – but rather the size of the case that should proceed to discovery.

Between 2005 and 2007, defendants issued and underwrote 20 Registration Statements (the "Registration Statements"), from which they commenced 429 MBS offerings (the "Offerings") and sold billions of dollars in toxic MBS to unsuspecting investors.  Plaintiffs purchased 69 MBS in 57 of these Offerings pursuant to 13 of the 20 Registration Statements and, thus, have Article III and statutory standing to assert 1933 Act claims in their own right.[1]  As for the size of the putative class, Lead Plaintiffs respectfully submit that they are qualified to represent all 375 Offerings issued pursuant to the 13 Registration Statements at the pleading stage because their claims share "a common set of concerns."  *See NECA-IBEW Health & Welfare Fund v. Goldman Sachs & Co.*, 693 F.3d 145, 158 (2d Cir. 2012).  Accordingly, plaintiffs respectfully request that they be permitted to represent those investors who purchased pursuant to the 375 Offerings commenced pursuant to the 13 Registration Statements from which they purchased.  *See infra*, §II.

---

[1]    Plaintiffs include Vermont Pension Investment Committee ("VPIC"), Maine State Retirement System ("Maine"), Mashreqbank, p.s.c. ("Mashreqbank"), Pension Trust Fund for Operating Engineers ("PTOE"), Operating Engineers Annuity Plan ("OEAP"), and Washington State Plumbing & Pipefitting Pension Trust ("Washington").  There are 69 tranches at issue – VPIC purchased six additional tranches in 2009 that are not part of the case.  As set forth herein, based upon the Court's prior rulings, plaintiffs have timely claims for 58 of the 69 tranches, and 49 of the 57 Offerings.

1    Notably, defendants admit that the vast majority of federal courts to address the
2    "class standing" issue have found that MBS plaintiffs have standing to pursue 1933
3    Act claims for all purchasers in each and every *offering* in which they purchased an
4    MBS.  *See* Ex. A to the Declaration of Spence Burkholz in Support of Plaintiffs'
5    Opposition to the Countrywide Defendants' Motion to Dismiss ("Burkholz Decl."),
6    (Appendix A to  the Countrywide Defendants' Memorandum of Points and
7    Authorities in Support of Demurrer to Plaintiffs' Consolidated Complaint dated
8    December 19, 2011 ("12/19/11 Defs.' Demurrer") (collecting 23 "MBS Decisions
9    Adopting *Offering*-based Standing")).[2]  If the Court is unwilling to recognize
10   "registration statement-based" class standing at the pleading stage, plaintiffs
11   alternatively and respectfully request that the Court permit plaintiffs to represent a
12   class of plaintiffs who purchased MBS from the 49 timely offerings within which they
13   purchased MBS.  Plaintiffs also request the right to amend their complaint to add
14   other plaintiffs to cure any perceived standing issues.

15   Defendants contend that plaintiffs have "standing" to prosecute this matter only
16   with respect to the MBS tranches they purchased and correctly note that this Court's
17   prior rulings support their argument.   For the reasons stated herein, plaintiffs
18   respectfully submit that the majority line of cases – many of which have been issued
19   since the Court's tranche-based standing ruling – supports a broader class scope at the
20   pleading stage and urge the Court to revisit its prior ruling.  *See infra*, §II.

21   Defendants' further attempt to carve up the class by using the statute of repose
22   falls short.  Defendants seek to dismiss the class's claims as to 24 of the 57 Offerings
23   and 33 of the 69 tranches purchased by plaintiffs on the grounds that plaintiffs did not
24   assert their individual claims within the three-year statute of repose.  Defendants'
25   contention fails, however, as the statute of repose as to the Underwriter Defendants

26   _____

27   [2]    Citations are omitted and emphasis is added unless otherwise noted.

28

804146_1

did not run as to 16 of the 24 disputed Offerings and 22 of the 33 disputed tranches, leaving plaintiffs with timely claims for 49 Offerings and 58 tranches. *See infra*, §VI.

Finally, the *Western Conference* case was timely filed in California state court. Western Conference filed its complaint in state court in reliance on the *Luther* complaint having tolled the applicable statute of limitations. California state law, which controls here, supports a finding that *Luther* tolled the statute of limitations for Western Conference, rendering its complaint timely filed. Accordingly, defendants' cross-jurisdictional tolling argument fails. *See infra*., §VIII.

## II.    Plaintiffs Have Standing to Assert Securities Act Claims on Behalf of the Putative Class at the Pleading Stage

To assert a class claim under the Securities Act, a plaintiff must demonstrate initially that it has standing under (1) Article III of the United States Constitution; and (2) the Securities Act. *Maine State Ret. Sys. v. Countrywide Fin. Corp.*, 722 F. Supp. 2d 1157, 1163 (C.D. Cal. 2010). Once it is determined that a plaintiff has standing to assert a claim, Fed. R. Civ. P. 23 ("Rule 23") is implicated to determine the scope of the plaintiff class that the named plaintiff may represent. *See Lewis v. Casey*, 518 U.S. 343, 395-96, 116 S. Ct. 2174, 135 L. Ed. 2d 606 (1996) (Souter, J., concurring in part, dissenting in part, and concurring in the judgment) ("'***Whether or not the named plaintiff who meets individual standing requirements may assert the rights of absent class members is neither a standing issue nor an Article III case or controversy issue but depends rather on meeting the prerequisites of Rule 23 governing class actions***.'") (emphasis in original and added).[3] It is indisputable that plaintiffs themselves have Article III and Securities Act standing. Accordingly, defendants' contention that the plaintiffs lack "standing" to represent the putative class (*see* Defs.'

---

[3]    *See also Fallick v. Nationwide Mut. Ins. Co.*, 162 F.3d 410, 422-23 (6th Cir. 1998); *Grasty v. Amalgamated Clothing & Textile Workers Union*, 828 F.2d 123, 130 n.8 (3d Cir. 1987) (because named plaintiffs alleged personal injury, defendants' contentions that they "do not have standing to raise the claims of the class . . . confuse standing and the typicality requirement of Rule 23(a)(3)").

804146_1

1  Brf. at 5-10)[4] is a premature class scope challenge, best reserved for the class

2  certification stage of the litigation.[5]

3      **A.    Standing Principles**

4          **1.    Constitutional Standing Under Article III**

5          This Court has held that "[t]o establish constitutional standing, a plaintiff must

6  demonstrate that it has personally suffered an injury in fact that is fairly traceable to a

7  defendant's alleged misconduct and is likely to be redressed by a decision in the

8  plaintiff's favor." *Maine State*, 722 F. Supp. 2d at 1163; *see also Lujan v. Defenders*

9  *of Wildlife*, 504 U.S. 555, 560-61, 112 S. Ct. 2130, 119 L. Ed. 2d 351 (1992). These

10  "requirements ensure that a plaintiff has a sufficiently personal stake in the outcome

11  of the suit so that the parties are adverse." *W.R. Huff Asset Mgmt. Co.*, 549 F.3d 100,

12  107 (2d Cir. 2008).

13          In the MBS context, a plaintiff has "Article III standing to sue defendants in its

14  own right [where] it plausibly alleged (1) a diminution in the value of

15  the . . . Certificates (2) as a result of defendants' inclusion of misleading statements in

16  the . . . registration statements and associated prospectuses that is (3) redressable

17  through rights of action for damages under §§11 and 12(a)(2)." *Goldman Sachs*, 693

18  F.3d at 158. Plaintiffs and other purchasers subject to the same misstatements within

19  MBS offering documents have a shared interest in proving that these statements were

20  _____

21  4     "Defs.' Brf." refers to Countrywide Defendants' Memorandum of Points and

22  Authorities in Support of Their Motion to Dismiss Plaintiffs' Consolidated Amended
    Complaint and Complaint for Violation of Sections 11, 12(a) and 15 of the Securities

23  Act of 1933 (Dkt. No. 96-1).

24  5     Plaintiffs recognize that the Court's prior decisions on standing and class scope
    have adopted positions counter to those expressed herein. *See, e.g., Maine State Ret.*

25  *Sys. v. Countrywide Fin. Corp.* ("*Maine State II*"), No. 2:10-cv-0302 MRP (MANx),
    2011 WL 4389689, at *2-*8 (C.D. Cal. May 5, 2011); *F.D.I.C. v. Countrywide Fin.*

26  *Corp.*, No. 2:12-CV-4354 MRP, 2012 WL 5900973, at *9-*12 (C.D. Cal. Nov. 21,
    2012). Plaintiffs respectfully include a discussion of the applicable case law and their

27  position on standing and the scope of the putative class for purposes of preserving the
    record for appeal in the event the Court is unwilling to revisit its prior decisions.

28

1    false, and therefore possess the requisite "'personal stake'" and incentive to litigate

2    required under Article III. *See Plumbers' Union Local No. 12 Pension Fund v.*

3    *Nomura Asset Acceptance Corp.*, 632 F.3d 762, 770 (1st Cir. 2011) ("'plaintiffs need

4    "such a personal stake in the outcome of the controversy as to assure . . . concrete

5    adverseness"'") (quoting *Baker v. Carr*, 369 U.S. 186, 204, 82 S. Ct. 691, 7 L. Ed. 2d

6    663 (1962)). *See also Fort Worth Emps. Ret. Fund v. J.P. Morgan Chase & Co.*, 862

7    F. Supp. 2d 322, 335-38 (S.D.N.Y. 2012) (citing *In re Am. Int'l Grp., Inc.*, 741 F.

8    Supp. 2d 511, 538 (S.D.N.Y. 2010)).[6]

9      Accordingly, where a plaintiff has alleged common misstatements in the

10    offering materials and a shared incentive to litigate, potential differences between the

11    tranches within a given offering do not deprive a plaintiff of Article III standing to

12    represent purchasers of other tranches in the same and other offerings. *See In re Bear*

13    *Stearns Mortg. Pass-Through Certificates Litig.*, 851 F. Supp. 2d 746, 778 (S.D.N.Y.

14    2012) ("Once, as here, a named plaintiff has established that she suffered the same

15    species of injury as the members of the class, traceable to the same unlawful conduct

16    by a defendant, she has fulfilled the requirements of constitutional standing. . . .

17    ***Having satisfied Article III's standing criteria, the dissimilarities between the***

18    ***tranches is an issue appropriately left to the class certification stage***.").[7]  Any

19

---

20    [6]     As this Court recently stated, the misstatements in the common offering

21    documents are the very "substance" of RMBS class actions. *See F.D.I.C. v. Countrywide Fin. Corp.*, No. 2:12-CV-4354 MRP, 2012 WL 5900973, at *11 (C.D.

22    Cal. Nov. 21, 2012) ("What matters for RMBS litigation alleging misstatements . . . is what the defendants said about those [underwriting] standards. The ***statements*** about

23    underwriting standards are the substance of the class action suits. Named plaintiffs only have the same set of concerns as class members when they have read the same

24    filings with the same statements as the class members.") (emphasis in original).

25    [7]     *See also Genesee Cnty. Emps.' Ret. Sys. v. Thornburg Mortg. Sec. Trust 2006-3*, 825 F. Supp. 2d 1082, 1152 (D.N.M. 2011) (stating that while "[i]t is true that there are

26    a variety of tranches within each of the MBS offerings in this case, which received different ratings from the Rating Agency Defendants and which have different

27    priorities for payment . . . [t]he same offering documents apply, however, and the same misrepresentations flow to all of the tranches"); *Pub. Emps.' Ret. Sys. of Miss. v.*

28    *Merrill Lynch & Co., Inc.*, 277 F.R.D. 97, 108 (S.D.N.Y. 2011) ("Moreover, the

1    differences between tranches merely implicate questions of commonality and

2    typicality to be addressed following the creation of an evidentiary record at the class

3    certification stage. *See id.*; *see also Fort Worth*, 862 F. Supp. 2d at 335.

4        It is beyond dispute that the named plaintiffs have Article III standing in their

5    own right to pursue their Securities Act claims as they allege "(1) a diminution in the

6    value of the . . . Certificates (2) as a result of defendants' inclusion of misleading

7    statements in the . . . registration statements and associated prospectuses that is (3)

8    redressable through rights of action for damages under §§11 and 12(a)(2)."[8] *Goldman*

9    *Sachs*, 693 F.3d at 158.[9]

10

11

12

---

13    representations in each Offering apply equally to all tranches within that Offering. . . .
      Indeed, because of the 'waterfall' method of repaying investors in order of the quality

14    of security purchased, false statements in Offering Documents affect all Certificates in
      the Offering.").

15    [8]    *See, e.g.*, *Luther* Consolidated Complaint (L.A. Super. Ct. Oct. 16, 2008)

16    ("*Luther* Complaint"), ¶18 ("The Certificates continue to diminish in value as a result
      of increasing delinquencies and foreclosures related to the mortgages underlying the

17    Certificates, and plaintiffs and other Class members have suffered significant losses
      and damages."), Burkholz Decl., Ex. E; ¶222 ("The value of the Certificates has

18    declined substantially, subsequent to, and due to, the Individual Defendants' and the
      Issuing and Underwriting Defendants' violations."); ¶230 ("Accordingly, plaintiffs

19    and members of the Class who purchased the Certificates pursuant to and/or traceable
      to the Prospectuses sustained material damages in connection with their purchases of

20    the Certificates."). All "¶" or "¶¶" references are to the *Luther* Complaint. The
      *Western Conference* complaint has similar allegations.

21    [9]    Defendants' contention that the plaintiffs have Article III standing to represent

22    only those investors who purchased the exact same MBS tranches as the Named
      Plaintiffs because the misstatements in the Offering Documents are "unique" to the

23    loan pools is based on (1) a misapplication of Article III (*see Goldman Sachs*, 693
      F.3d at 158 (rejecting argument that the named plaintiff had Article III standing to

24    represent only those who "'bought the same securities'")); *see also Fort Worth*, 862 F.
      Supp. 2d at 332 ("when the Supreme Court says that a named plaintiff must show that

25    it was 'personally . . . injured,' that injury has been suffered by other, unidentified
      members of the class," *Lewis*, 518 U.S. at 357, ***the Court does not mean that the***

26    ***named plaintiff must literally suffer the same actual injury that each class member***
      ***suffered***") (quoting *Blum*, 457 U.S. at 999); and (2) a misreading of the Offering

27    Documents as the alleged false statements cover every security in the Offerings – they
      are not specific to tranches or loan pools. *See, e.g.*, ¶¶88-91, 98.

28

804146_1

## 2.    Statutory Standing Under §§11 and 12(a)(2)

Section 11(a) provides that where "any part of the ***registration statement*** . . . contained an untrue statement of a material fact or omitted to state a material fact . . . any person acquiring such security" may sue.  15 U.S.C. §77k(a).  Thus, this provision confers standing based on an individual's purchase of securities pursuant to a registration statement that contains misstatements.  *See, e.g.*, *Fort Worth*, 862 F. Supp. 2d at 339 ("based on the context, it is clear that a prerequisite to bringing suit based on misstatements in a registration statement is the purchase of a security covered by that registration statement").  The "such security" language is intended to denote a security that is traceable to an alleged misstatement rather than, as defendants argue (*see* Defs.' Brf. at 7), a "securit[y] with certain shared attributes" such as rate of return, interest rate and CUSIP number.  *Fort Worth*, 862 F. Supp. 2d at 340; *accord In re Countrywide Fin. Corp. Sec. Litig.*, 588 F. Supp. 2d 1132, 1165 (C.D. Cal. 2008) ("The statute grants standing to anyone who buys 'such security' – one traceable to a defective registration statement."); *Bear Stearns*, 851 F. Supp. 2d at 779 (same).

Because §11 states that the purchase of a security pursuant to a misleading registration statement confers statutory standing on a plaintiff, the plaintiff can likewise represent the interests of other purchasers injured by the same misleading document.  *See Fort Worth*, 862 F. Supp. 2d at 340 (holding "'[t]he actionable conduct under Section 11 is . . . the specific registration statement containing misrepresentations'" and therefore a "plaintiff with standing to bring suit for that 'actionable conduct' thus may have standing to represent the claims of another plaintiff who also has standing to bring suit for the exact same 'actionable conduct.' The statute does not provide otherwise.").[10]

---

[10]    The *Fort Worth* court also emphasized that "neither the Constitution nor the [Securities Act] mandates" "that a securities class action involve a class of only purchasers of exactly the same security."  862 F. Supp. 2d at 340; *see also Goldman Sachs*, 693 F.3d at 158 (finding that the district court committed reversible error by

804146_1

1    Section 12(a)(2) provides that, where an individual "offers or sells a security . . .

2  by means of a prospectus or oral communication, which includes an untrue statement

3  of a material fact or omits to state a material fact," that individual is liable to "the

4  person purchasing such security."  15 U.S.C. §77l(a)(2).  Courts interpreting the text

5  of this provision have held that the grammatical "referent of 'such security' is 'a

6  security [sold] . . . by means of a prospectus or oral communication' that contains a

7  material misrepresentation or omission." *Bear Stearns*, 851 F. Supp. 2d at 779.  As in

8  §11, there is no requirement that "such security" possess common rates of return,

9  ratings, interest rates or investors' needs and expectations.  *Id*.  Therefore, the text of

10  the statute does not preclude the purchaser of "such security" from representing other

11  individuals who purchased different classes of securities in the same offerings

12  pursuant to the same misleading prospectuses.[11]

13    Here, the plaintiffs have statutory standing under §§11 and 12(a)(2) to pursue

14  their claims as each one purchased MBS pursuant to materially misleading

15  Registration Statements and Prospectus Supplements.  *See, e.g.*, ¶¶23-29.  Because the

16  plaintiffs adequately allege both Article III and statutory standing, they are able to

17  represent a class of investors who purchased MBS pursuant to the misleading Offering

18  documents.  The size of that class and whether there are differences between the

19  proposed class and the plaintiffs that render the latter not typical or adequate to

20  represent the proposed class is subject to further analysis under Rule 23.

21

22

23

24  holding that the only MBS investors who could be part of the class "must have purchased the same securities [the named plaintiff] purchased").

25  [11]    *See Bear Stearns*, 851 F. Supp. 2d at 779 ("The Court recognizes that the

26  dissimilarities between the tranches can be highly relevant to those who purchased them; but there is nothing in the text of Sections 11 and 12(a)(2) that enables the Court

27  to assign any ***statutory standing*** significance in this case to the mere fact that the securities differ in their bibliographic, payment priority, or rate of return particulars.").

28

**B.** **The Proper Scope of the Proposed Class at the Pleading Stage**

**1.** **The Second Circuit Approach in *NECA v. Goldman Sachs***

Plaintiffs respectfully submit that the Court should follow the Second Circuit's approach to determining the scope of the putative MBS class at the pleading stage as articulated in *Goldman Sachs*, 693 F.3d 145.  In *Goldman Sachs*, the named plaintiff, NECA, which bought two MBS in two offerings, sought to represent a class of MBS purchasers in 17 offerings issued pursuant to one shelf registration statement.  *Id.* at 149.  The district court held, *inter alia*, that NECA could only represent a class of investors in the two tranches in which NECA purchased.  *Id.* at 154.  The Second Circuit reversed.

Following the determination that the named plaintiff, NECA, possessed Article III and statutory standing to pursue Securities Act claims based on the MBS it purchased (*see id.* at 158), the Second Circuit addressed the size of the class that NECA was entitled to represent at the pleading stage, referring to the inquiry as "class standing."  *Id.* ("whether NECA has 'class standing' – that is, standing to assert claims **on behalf of** purchasers of Certificates from other Offerings, or from different tranches of the same Offering – does not turn on whether NECA would have statutory or Article III standing to seek recovery for misleading statements in those Certificates' Offering Documents") (emphasis in original).  To have "class standing," the court held that the illegal conduct that harmed the named plaintiff must "implicate[] 'the same set of concerns' as the conduct alleged to have caused injury to other members of the putative class by the same defendants."  *Id.* at 162.  In the MBS context, the "same set of concerns" are shared by, and class standing exists, for "purchasers of certificates backed by mortgages originated by the same lenders that originated the mortgages backing plaintiff's certificates."  *Id.* at 148-49.

The *Goldman Sachs* defendants, like the Countrywide defendants here, sold RMBS pursuant to a shelf registration statement in separate offerings through

- 9 -

1    prospectus supplements containing nearly identical misstatements. *Id.* at 148, 163.

2    Though the plaintiff in *Goldman Sachs* did not purchase certificates in ***all*** 17 offerings

3    issued pursuant to the prospectus supplements and the shelf registration statement, the

4    Second Circuit held that "to the extent certain Offerings were backed by loans

5    originated by originators common to those backing the [offerings which plaintiffs

6    purchased from, the plaintiff's] claims raise a sufficiently similar set of concerns to

7    permit it to purport to represent Certificate-holders from those Offerings." *Id.* at 164.

8    Thus, due to the liberal nature of "class standing" at the pleading stage, the court held

9    that the plaintiff was able to represent other MBS purchasers in other offerings tied to

10   the same registration statement because any such claims "implicate 'the same set of

11   concerns'" as the named plaintiff's claims. *Id.* at 148-49.

12        As in *Goldman Sachs*, the claims of purchasers in Offerings pursuant to the 13

13   Registration Statements within which the *Luther* plaintiffs purchased implicate the

14   "same set of concerns" as those implicated by the *Luther* plaintiffs' claims. *Id.* at 149.

15   Indeed, each of the 13 Registration Statements and related Prospectus Supplements

16   from which plaintiffs purchased MBS (1) contain ***uniform*** misrepresentations

17   regarding the underwriting standards purportedly employed in the origination of the

18   mortgages that were securitized and packaged into RMBS (*see, e.g.*, ¶¶88-91); and (2)

19   are secured by Countrywide originated loans. *See, e.g.*, ¶¶5, 30. Thus, under

20   *Goldman Sachs*, the *Luther* plaintiffs have "class standing" to sue on behalf of all

21   purchasers pursuant to each of the 13 Registration Statements and related Offerings,

22   despite the plaintiffs themselves not having purchased securities in ***every*** offering or

23   tranche at issue.[12]

24   _____

25   [12]    The standing cases cited by defendants (Defs.' Brf. at 8) are distinguishable.
     *See, e.g.*, *Lierboe v. State Farm Mut. Auto. Ins. Co.*, 350 F.3d 1018, 1022 (9th Cir.
26   2003) (finding "the sole named plaintiff could [not] even state a claim for relief"
     whereas the *Luther* plaintiffs undisputedly have a personal stake in the relief being
27   sought); *accord La Duke v. Nelson*, 762 F.2d 1318, 1325 (9th Cir. 1985) (standing
     requires a "personal stake" in the relief sought, which the plaintiffs have).

28

804146_1

1    Similar to the Second Circuit in *Goldman Sachs*, other courts have held that the

2    proper size of putative class in Securities Act cases at the pleading stage is governed

3    by the shelf registration statements pursuant to which the named plaintiffs purchased.

4    *See, e.g.*, *Am. Int'l Grp.*, 741 F. Supp. at 538 (holding that because the plaintiffs

5    complain of "the alleged material misstatements and omissions located in the common

6    elements of the three different registration statements . . . [p]laintiffs therefore can

7    trace the injury of the purchasers in each of the 101 offerings to the same underlying

8    conduct on the part of the defendants [and] have standing to assert claims premised

9    upon all 101 offerings alleged in the Complaint").  These courts reason that "where

10   the actionable part of the registration statement is alleged to be common to all

11   purchasers from the same shelf, then a plaintiff has standing to represent them because

12   they have all suffered from the same alleged injury." *See In re Citigroup Bond Litig.*,

13   723 F. Supp. 2d 568, 584 (S.D.N.Y. 2010).[13]

14   Here, the plaintiffs purchased MBS pursuant to 13 of 20 shelf registration

15   statements, each of which contained and prospectively incorporated by reference

16   ***uniform material misrepresentations***.  *See, e.g.*, ¶¶82, 83, 88-91; ¶88 (each of the

17   Shelf Registration Statements issued by CWALT and CWMBS misrepresented that:

18   "'All of the mortgage loans in the trust fund will have been originated or acquired by

19   Countrywide Home Loans in accordance with its credit, appraisal and underwriting

20   standards.   Countrywide Home Loans' underwriting standards are applied in

21   accordance with applicable federal and state laws and regulations.'"); ¶83 (alleging,

22   *inter alia*, that "[e]ach Prospectus Supplement filed with the SEC in connection with

23

24   ---
     [13]    *Accord Countrywide*, 588 F. Supp. 2d at 1166 ("So long as (1) the securities are
25   traceable to the same initial shelf registration and (2) the registration statements share
     common 'parts' that (3) were false and misleading at each effective date, there is §11
26   standing."); *see also Genesee Cnty.*, 825 F. Supp. 2d at 1152 (holding that registration
     statement-based standing, not tranche-based, is appropriate because "[t]he same
27   offering documents apply . . . and the same misrepresentations flow to all of the
     tranches").

28

1   the Registration Statements was incorporated by reference prospectively in the

2   Registration Statements").   Accordingly, plaintiffs have "class standing" at the

3   pleading stage to represent a class of investors who purchased in the 375 Offerings

4   pursuant to the 13 Registration Statements from which they purchased.[14]

5           **2.      The First Circuit Approach – *Plumbers' Union Local**
            **No. 12 Pension Fund v. Nomura Asset Acceptance**
6           **Corp.***

7           If the Court is unwilling to (1) find that plaintiffs have Registration Statement-

8   based class standing; or (2) defer the class scope determination until class

9   certification, plaintiffs respectfully submit that the Court should apply Offering-based

10  class standing and permit plaintiffs to represent a putative class of those class

11  members who purchased securities in the same 49 timely Offerings in which plaintiffs

12  purchased.  The only other Circuit Court to address the issue of class standing in the

13  MBS context held that a plaintiff could represent all purchasers of all tranches in the

14  same *offering* in which the named plaintiff purchased. *Nomura*, 632 F.3d at 769-71.

15  The First Circuit framed the class standing issue as a question of "whether plaintiffs

16  can pursue claims, to the extent claims may be stated, based on offerings in which

17  they did not participate and against trusts whose certificates they did not purchase."

18  *Id*. at 768.  While the First Circuit recognized that "the named plaintiffs have no claim

19  

20  [14]     If the Court declines to apply the principles enunciated by the Second Circuit in
    *Goldman Sachs* or Registration Statement-based class standing at the pleading stage,
21  plaintiffs respectfully submit that it should defer the determination of the size of the
    class until the class certification stage of the case following the development of an
22  evidentiary record, which is necessary to assess properly whether plaintiffs (and any
    other proposed class representatives) are typical and adequate to represent the putative
23  class. *See Fort Worth*, 862 F. Supp. 2d at 333 ("But once [a plaintiff] has established
    [standing], questions of adequacy, typicality and the like should be resolved at the
24  class certification stage.").  Notably, those courts to have addressed the propriety of
    defendants' tranche-based standing position on an evidentiary record at the class
25  certification stage have rejected it.  *See Merrill Lynch*, 277 F.R.D. at 108-09; *N.J.
    Carpenters Health Fund v. DLJ Mortg. Capital*, No. 08 Civ. 5653 PAC, 2011 WL
26  3874821, at *3 (S.D.N.Y. Aug. 16, 2011) (rejecting argument that differences among
    tranches defeats typicality); *In re Dynex Capital, Inc. Sec. Litig.*, No. 05 Civ. 1897
27  HB, 2011 WL 781215, at *2 (S.D.N.Y. Mar. 7, 2011); *N.J. Carpenters Health Fund v.
    Residential Capital, LLC*, 272 F.R.D. 160, 165-66 (S.D.N.Y. 2011).

28

1    ***on their own behalf*** based on trust certificates that they did not buy," it nevertheless

2    held that plaintiffs had standing to assert claims on behalf of all purchasers in the

3    offerings in which plaintiffs purchased because the "necessary identity of issues and

4    alignment of incentives" was present with respect to the two offerings in which the

5    named plaintiffs purchased due to the alleged common misstatements.  *Id.* at 768-71;

6    *see also Fort Worth*, 862 F. Supp. 2d at 335 (holding that the named plaintiffs could

7    suffer the same injury as other purchasers in an offering because all purchasers can

8    trace their injuries to common misstatements in the Offering Documents).  The court

9    reasoned that "Rule 23 criteria can still be used as a required tool for shaping the

10   scope of a class action without abandoning the notion that Article III creates some

11   outer limit based on the incentives of the named plaintiffs to adequately litigate issues

12   of importance to them."  *Nomura*, 632 F.3d at 770.

13        Defendants concede that the overwhelming weight of authority to address the

14   issue supports offering-based class standing at the pleading stage because the alleged

15   harm flows from the common misstatements in the offering documents.  *See* Burkholz

16   Decl., Ex. A (Appendix A to Defs.' Demurrer (collecting ***23*** "MBS Decisions

17   Adopting Offering-Based Standing")); *see also Bear Stearns*, 851 F. Supp. 2d 746;

18   *Fort Worth*, 862 F. Supp. 2d 322.   Furthermore, the overwhelming majority of

19   courts[15] to address the issue have rejected defendants' tranche-based standing position

20   – that "a named plaintiff has standing to represent only a class of plaintiffs who have

21   purchased the 'same security' as the named plaintiff." *Fort Worth*, 862 F. Supp. 2d at

22   329 (reasoning that the alleged injury flows from the misleading offering documents,

23   which are "not specific to any one pool or subgroup of loans" and "the fact that one

24   tranche is backed by one sub-group of loans with particular interest rates" does not

25   _____

26   [15]     It is plaintiffs' understanding that only this Court (*see Maine State II*, 2011 WL
     4389689) and a court in the United States District Court for the Western District of
27   Washington have adopted tranche-based standing in the MBS context.  *See In re
     Wash. Mut. Mortgage-Backed Sec. Litig.*, 276 F.R.D. 658 (W.D. Wash. 2011).

28

affect class standing).[16]  Here, plaintiffs (1) purchased MBS within 57 Offerings and brought timely claims as to 49 of those Offerings based on the Court's prior rulings (*see* plaintiffs' Appendix A); and (2) allege that defendants' misrepresentations are common across the Offering Documents.[17]    Accordingly, plaintiffs should be permitted to represent a putative class of purchasers in the 49 Offerings.

## III.    Plaintiffs Are Entitled to Amend the Complaint to Add Additional Plaintiffs

As Rule 15(a) states, "[t]he court should freely give leave when justice so requires" and "this mandate is to be heeded."  Fed. R. Civ. P. 15(a); *Foman v. Davis*, 371 U.S. 178, 182 (1962).  Furthermore, "[i]f the underlying facts or circumstances relied upon by a plaintiff maybe a proper subject of relief, he ought to be afforded an opportunity to test his claim on the merits."  *Foman*, 371 U.S. at 182.  Plaintiffs respectfully request that if the Court determines that plaintiffs' standing or ability to represent the putative class is deficient for any reason, plaintiffs should be afforded

---

[16]    *See also Goldman Sachs*, 693 F.3d at 164 ("Turning to the question of tranche-level standing, we do not believe the Certificates' varying levels of payment priority raise such a 'fundamentally different set of concerns' as to defeat class standing."); *Merrill Lynch*, 277 F.R.D. at 108 ("Moreover, the representations in each Offering apply equally to all tranches within that Offering."); *Genesee Cnty.*, 825 F. Supp. 2d at 1152 (finding that "the same misrepresentations flow to all of the tranches"); *cf. Dynex*, 2011 WL 781215, at *2 ("While investor's repayment rights may vary slightly based, on the seniority of the tranches they purchased, this does not present a 'fundamental conflict within the class.").

[17]    For example, the Offering Documents represented that the mortgages were originated through "'underwriting standards . . . applied by or on behalf of Countrywide Home Loans to evaluate the prospective borrower's credit standing and repayment ability and the value and adequacy of the mortgaged property as collateral.'"  ¶89; *see also* ¶90 ("'underwriting standards are primarily intended to evaluate the value and adequacy of the mortgaged property as collateral for the proposed mortgage loan and the borrower's credit standing and repayment ability'"); ¶91 (The "'underwriting process is intended to assess the applicant's credit stand and repayment ability.'"); ¶98 (The "underwriting standards . . . require an independent appraisal of the mortgaged property . . . .  Each appraisal includes a market data analysis based on recent sales of comparable homes in the area and, where deemed appropriate, replacement cost analysis based on the current cost of constructing a similar home . . . .  Every independent appraisal is reviewed by a representative of Countrywide Home Loans before the loan is funded . . . .").

804146_1

leave to amend, in order to cure any such deficiencies by adding additional named plaintiffs. *See United Union of Roofers, etc. No. 40 v. Ins. Corp. of Am.*, 919 F.2d 1398, 1402 (9th Cir. 1990) ("Often a plaintiff will be able to amend its complaint to cure standing deficiencies."); *In re Morgan Stanley Mortg. Pass-Through Certs. Litig.*, 810 F. Supp. 2d 650, 669-70 (S.D.N.Y. 2011) (liberally allowing amendment to add plaintiffs not originally named in the complaint). Here, justice requires the right to amend, as but for the two appeals necessitated by defendants' now-discredited jurisdictional challenges, lead plaintiffs would have long ago been afforded the opportunity to correct any deficiencies found by a court in ruling on defendants' standing-based challenge.

Furthermore, while plaintiffs respectfully submit that they currently have standing to represent the proposed putative class under federal precedent, *see, e.g.*, *supra*, *Goldman Sachs*, 693 F.3d 145, plaintiffs no doubt had the ability to represent the putative class during the entire time they were prosecuting the case in California State Court under California's "community of interest" standard – pursuant to which the operative complaints were pled. *See* Burkholz Decl., Exs. B-E (attaching complaints filed on November 14, 2007, June 12, 2008, September 9, 2008 and October 16, 2008). The complaints were filed in good faith reliance on California class standing provisions, *i.e.*, that a community of interest existed and was sufficient to support the putative class set forth in the complaints. Under California law, plaintiffs have standing to represent other investors who did not buy the same exact security so long as there is a "sufficient community of interest to define the class" which would exist when the different investments were "'prepared by the same defendants and containing the same alleged omissions and misrepresentations.'" *Daniels v. Centennial Grp. Inc.*, 16 Cal. App. 4th 467, 473, 21 Cal. Rptr. 2d 1 (1993). Plaintiffs are entitled to amend to correct any standing deficiencies.

**IV.    The Complaints Properly Allege Violations of the Securities Act**

Defendants submit that plaintiffs' claims must be dismissed because (1) plaintiffs have failed to plead an actionable misstatement; (2) plaintiffs' do not allege that defendants have failed to substitute or replace deficient loans; and (3) plaintiffs' claims sound in fraud and must be pleaded with particularity. As detailed below, each of these contentions is misplaced.

**A.    The Complaints Plead that Defendants' Statements Are False and that They Omitted Material Information**

It is well-settled that "§11 places a relatively minimal burden on a plaintiff." *MacLean v. Huddleston*, 459 U.S. 375, 382, 103 S. Ct. 683, 74 L. Ed. 2d 548 (1983). "If a plaintiff purchased a security issued pursuant to a registration statement, he need only show a material misstatement or omission to establish his prima facie case. Liability against the issuer of a security is virtually absolute, even for innocent misstatements." *Id.* The complaints in *Luther* and *Western Conference* are replete with allegations that the Registration Statements and Prospectus Supplements "contained material statements concerning, *inter alia*, (1) the underwriting process and standards by which mortgages held by the Issuing Trusts were originated, and (2) a representation of the value of the real-estate securing the mortgages pooled in the Issuing Trusts, expressed in part as the average LTV ratios of the underlying mortgages and the appraisal standards by which such real estate values were obtained." ¶81; *see also*, *e.g.*, ¶¶89-91 (detailing the statements regarding Loan Underwriting Standards in the Offering Documents); ¶¶98-99 (detailing statements regarding the Appraisals and LTV Ratios). The complaints further allege that these statements were false when made, and that defendants omitted material information from the Offering Documents. *See, e.g.*, ¶¶154, 158, 161, 166, 168.

The foregoing allegations are sufficient to support a Securities Act claim. *See In re Countrywide Fin. Corp. Mortg.-Backed Sec. Litig.*, No. 2:11-ML-02265-MRP (MANx), 2012 WL 3578666, at *1 (C.D. Cal. Aug. 17, 2012) ("As this Court has held

- 16 -

1    on a number of occasions involving Countrywide entities, contentions that the

2    Offering Documents included misleading statements as to underwriting standards and

3    loan to value ratios are sufficient to satisfy the elements of a claim of fraud.") (citing

4    *Dexia Holdings, Inc. v. Countrywide Fin. Corp.*, No. 11-cv-7165-MRP (MANx), 2012

5    WL 1798997 (C.D. Cal. Feb. 17, 2012); *Thrivent Fin. for Lutherans v. Countrywide*

6    *Fin. Corp.*, No. 11-cv-7154-MRP (MANx), 2012 WL 1799028 (C.D. Cal. Feb. 17,

7    2012); *Allstate Ins. Co. v. Countrywide Fin. Corp.*, 824 F. Supp. 2d 1164 (C.D. Cal.

8    2011); *Maine State II*, 2011 WL 4389689, at *17) ("The SAC alleges that Defendants

9    are liable for material misrepresentations and omissions in the offering documents,

10   which failed to disclose that Countrywide was originating loans in systematic

11   disregard of its underwriting guidelines, including using inflated appraisals. . . .

12   Plaintiffs' allegations are sufficient.").

13       Defendants offer nothing new to disturb this Court's prior rulings.[18]

14   **B.    Plaintiffs' Remedy Under the Securities Act Is Damages,
             Not the "Substitution" of Loans**

15       Defendants next argue that the Prospectus Supplements contain no false

16   statements because defendants told investors that if any loan did not comply with the

17   relevant underwriting guidelines, such "non-compliant loans would be cured or

18   replaced upon request." Defs.' Brf. at 17. But this purported "cure" procedure does

19   not insulate defendants from liability under the strict liability provisions of the

20

_____

21   [18]     Defendants argue that plaintiffs "must plead that the practices alleged in the
22   Complaints applied to the ***specific*** mortgage loans underlying the ***specific*** MBS they
     purchased." Defs.' Brf. at 20 (emphasis in original). Again, the Court has rejected
23   this argument. *Maine State II*, 2011 WL 4389689, at *17 (noting that "[t]he Court
     disagrees that Plaintiffs must identify specific loans that were issued by deviating
24   from the underwriting guidelines"). Here, as in *Maine State II*, the Complaints plead
     "facts regarding high default and delinquency rates and a widespread downgrade of
25   the Certificates from investment grade to junk bond levels, both of which fairly give
     rise to an inference that Countrywide had systematically disregarded its underwriting
26   guidelines and that such information was withheld from the offering documents."
     *Maine State II*, 2011 WL 4389689, at *17; *see* ¶¶101-151. Defendants provide no
27   reason for the Court to re-examine the law on these issues, or conclude differently at
     this time.

28

804146_1

Securities Act.  *See* 15 U.S.C. §77k (to state a claim under §11, a plaintiff need only plead that: (1) he or she purchased a registered security; and (2) the registration statement contained a material misstatement or omission).

As defendants admit, this Court already has rejected this argument.  *See Maine State II*, 2011 WL 4389689, at *17 (rejecting argument that "Plaintiffs must identify specific loans that were issued by deviating from the underwriting guidelines").  As the Court aptly recognized, "[p]laintiffs allege that the misstatements and omissions were made with respect to ***all of the loans***, and all of the loans were issued by deviating from the underwriting guidelines." *Id*. (citing *In re Wells Fargo Mortgage-Backed Certificates Litig.*, 712 F. Supp. 2d 958, 971-72 (N.D. Cal. 2010); *Tsereteli v. Residential Asset Securitization Trust 2006-A8*, 692 F. Supp. 2d 387, 392-93 (S.D.N.Y. 2010)).  Accordingly, select loan replacement is not a viable remedy even if it were contemplated by the Securities Act.

Defendants' theory relies upon the holding in *Lone Star Fund V (US), LP v. Barclays Bank PLC*, 594 F.3d 383 (5th Cir. 2010).  *Lone Star*, however, "is at odds with the anti-waiver provision of the [federal] securities laws."  *City of Ann Arbor Emps.' Ret. Sys. v. Citigroup Mortg. Loan Trust Inc.*, No. CV 08-1418, 2010 WL 6617866, at *7 (E.D.N.Y. Dec. 23, 2010).  The Securities Act specifically provides that defendants cannot insulate themselves from liability under §§11 or 12(a)(2) by including a provision in the Offering Documents requiring investors to waive their rights under the Securities Act. 15 U.S.C. §77n ("Any condition, stipulation, or provision binding any person acquiring any security to waive compliance with any provision of this title or of the rules and regulations of the Commission shall be void."); *see also Stratmore v. Combs*, 723 F. Supp. 458, 462 (N.D. Cal. 1989) ("Since the securities laws are a remedial measure intended to encourage the prosecution of securities fraud actions, the Court refuses to enforce [an] indemnity provision.") (citing, *e.g.*, *Doody v. E.F. Hutton & Co.*, 587 F. Supp. 829, 833 (D. Minn. 1984), *aff'd*, 968 F.2d 810 (9th Cir. 1992)).

804146_1

*Lone Star* is also wholly distinguishable on its facts. Unlike the *Lone Star* plaintiffs who only alleged that only a small number of specific loans in each of the pools were delinquent (*Ann Arbor*, 2011 WL 6617866, at *3), plaintiffs here allege that the value of the securities as a whole were impacted because of defendants' misstatements about their systemic business practices which were used to underwrite all of the loans at issue. ¶¶88-168.

### C.    Plaintiffs Need Not Plead in Compliance with Fed. R. Civ. P. 9(b)

Defendants next argue that the allegations backing the complaints "are 'grounded in fraud'" because [they] allege[], *inter alia*, that Countrywide loan officers committed fraud when seeking loans approval under false pretenses and because defendants' employees subverted the rules for appraisals. Defs.' Brf. at 19-20. Yet, as the Court previously held in *Maine State II*, such allegations do not suggest that the statements in the Offering Documents, or omissions therefrom, were made knowingly or intentionally. 2011 WL 4389689, at *3 (holding that complaint did not sound in fraud because it did not allege a unified course of fraudulent conduct).[19] Therefore, Fed. R. Civ. P. 9(b) does not apply.[20]

---

[19]    The overwhelming majority of case law from courts within the Ninth Circuit support plaintiffs' position. *See, e.g., Safron Capital Corp. v. Leadis Tech., Inc.*, 274 F. App'x 540, 541 (9th Cir. 2008) (because "the allegations in the Complaint do not 'sound in fraud,' . . . the Complaint is not properly subject to the heightened pleading requirements of Rule 9(b)").

[20]    Defendants assert that because plaintiffs have failed to plead a primary violation of §§11 or 12(a)(2), plaintiffs' §15 claims must also fail. Defs.' Br. at 34. However, as discussed *supra*, plaintiffs have adequately pleaded each of the elements of a Securities Act claim and therefore have established the requisite primary violation. Moreover, defendants' half-hearted contention that plaintiffs have failed to adequately plead control also must fail. Defs.' Br. at 34-35. Plaintiffs have alleged that CFC directly controlled CWALT, CWMBS, CWABS, and CWHEQ "through its appointment of CFC executives as directors and officers of these entities" and "exercised actual day to day control over [these] defendants." ¶31. Plaintiffs further allege that "CFC, CSC, CCM and CHL had the power and influence and exercised the same to cause the Issuing Defendants to engage in" the primary violations and that "CFC's, CSC's, CCM's and CHL's control, ownership and position made them privy to and provided them with actual knowledge of the material facts concealed from

**V.    Plaintiffs Do Not Seek to Recover for Post-Filing Purchases**

Defendants argue that plaintiffs cannot recover with regard to 14 MBS purchases that took place after the initial *Luther* complaint was filed because, at the time of the transactions, plaintiffs "had knowledge of the allegedly untrue statements" at issue in this action.  Defs.' Brf. at 30-31.  As set forth below, only nine of the 14 MBS should be dismissed and not on the basis of defendants' argument, but other grounds.[21]

The initial *Luther* complaint was filed on November 14, 2007.  Burkholz Decl., Ex B (11/14/07 *Luther* complaint).  As defendants admit, the initial *Luther* complaint presented claims only on a narrow band of CWALT securities currently at issue.  Defs.' Brf. at 11-13 (noting additional registration statements and offerings were added to later complaints).  Plaintiff VPIC made 13 of the 14 purchases defendants seek to put at issue and is asserting claims only as to seven of them.[22]  With respect to the seven securities as to which VPIC is asserting Securities Act claims, VPIC did not file a complaint asserting those claims in this action until September 9, 2008, ***more***

---

plaintiffs and the Class."  ¶¶234-35.  This Court has previously sustained §15 claims against these defendants based on nearly identical allegations.  *See Maine State*, 2011 WL 4389689, at *13.  Defendants have provided no reason for the Court to find differently here.

[21]    Of these nine MBS, six are not even part of plaintiffs' case because VPIC purchased them in 2009.  Defendants list these six transactions that were contained in plaintiffs' lead plaintiff filing in *Maine State*.  Under the Securities Act, plaintiffs were required to identify all transactions in the securities at issue to the date of the filing so that the Court could make a determination of which plaintiff(s) possessed the "largest financial interest in the relief sought by the class" as lead plaintiff.  15 U.S.C. §77z-1(a)(3)(B)(iii).  Under the statute plaintiffs listed all transactions to that date (January 2010) which included six transactions by VPIC in 2009 after they filed their action in September 2008 that are not claimed for damages in this case.  *Maine State*, No. 2:10-cv-00302-MRP-MAN (Dkt. No. 88, Ex. B).  As set forth below, the other three MBS are time-barred under the Court's prior orders.

[22]    Plaintiffs represented previously that six of the 13 VPIC securities were purchased in 2009 and, thus, VPIC was not seeking recovery as to the six purchases.  Defs.' Brf., App. H.  Plaintiffs respectfully submit, however, that the Court should defer until class certification any determination regarding whether another class representative(s) may assert claims related to these securities.

1    ***than six months after*** the last of the seven transactions.  Accordingly, there is no

2    evidence in the record demonstrating that VPIC had "actual knowledge" that the

3    Offering Documents contained false statements as is required under the statute.  15

4    U.S.C. §77k(a).[23]  To prevail on this argument, it is defendants' burden to "prove[]

5    that at the time of such acquisition [a plaintiff actually] knew of" the untruth or

6    omissions at issue. 15 U.S.C. §77k(a).  There is nothing in the record even suggesting

7    that defendants have "proven" plaintiffs' knowledge of the alleged false statements

8    and omissions.  This defense employs a ***subjective*** standard – defendants must prove

9    that the plaintiffs actually "***knew*** of such untruth or omission," and differs from the

10   "reasonable person" standard this Court may apply on defendants' statute of

11   limitations defense.  *Id.*  Because plaintiffs were not yet parties to this action when

12   they made the purchases at issue, defendants have shown no facts to demonstrate that

13   VPIC, PTOE or Washington, the three plaintiffs who bought the 14 securities, actually

14   knew that the Offering Documents were materially misleading when they bought the

15   securities.

16          Defendants' argument that actual knowledge can be imputed to Vermont from

17   the earlier filed *Luther* complaint, also clearly fails for five of the seven securities

18   because the September 9, 2008 Complaint was the first time the Registration

19   Statements and Offerings covering the five securities were alleged to be at issue.[24]

20

21   _____

22   [23]    Also, for the other transaction purchased by Washington and PTOE-CWALT,
     CWALT 2005-62-2A1 the transaction took place two months before the *Washington*
23   Complaint was filed in June 2008 and should not be dismissed.

24   [24]    The CWALT 2006-43CB and CWALT 2007-22 securities were not listed in the
     initial *Luther* complaint, so no actual knowledge can be imputed to Vermont.
25   Likewise, the three CWMBS securities listed on Defs.' App. H were not included in
     the *Luther* complaint.  As noted above, that complaint asserted claims only with
26   respect to CWALT securities.  Defendants' contention that plaintiffs, who were not
     parties to the initial *Luther* complaint, purchased these CWMBS securities with actual
27   knowledge of a Securities Act violation must therefore fail.  Plaintiffs do agree that
     one of these three CWMBS-2007-9-A13 was purchased by Vermont in 2009 and is
28   untimely.  Plaintiffs also agree that the other two which were Vermont purchases –

## A.    Per Federal Regulation and Case Law, Plaintiffs Need Not Plead Nor Demonstrate Reliance

Defendants incorrectly argue that some plaintiffs (as well as some class members) must show reliance upon the false statements at issue because plaintiffs purchased the securities at issue "after twelve months of Distribution Reports had been issued" by the Trustee.  Defs.' Brf. at 31-32.  Indeed, this Court has rejected their argument on two prior occasions.  *See State Treasurer*, No. 11-CV-00809-MRP-MAN (C.D. Cal. 2011) (Dkt. No. 130 at 10) (rejecting this defense in the MBS context because "'Section 11(a) and the SEC rulemaking do not allow defendants to shift the reliance burden to plaintiffs where, as in this case, both the financial statements incorporated in the registration statements and subsequent earning statements are alleged to contain material accounting-related misstatements or omissions'") (quoting *In re Countrywide Fin. Corp. Sec. Litig.*, 273 F.R.D. 586, 622 (C.D. Cal. 2009)).

Under §11(a) of the Securities Act, a plaintiff must show it relied on the alleged false statements only where it "acquired the security after the issuer has made generally available to its security holders an earnings statement covering a period of at least twelve months beginning after the effective date of the registration statement." 15 U.S.C. §77k(a).  The SEC has ruled that Distribution Reports, like those cited by defendants, ***do not qualify as*** "***earnings statements***" that would trigger §11(a).  *See* 17 C.F.R. §230.158(a)(2)(i)-(ii) (listing the information and forms that are eligible for "earnings statement" treatment under "section 11(a) of the act").  Furthermore, every court to examine defendants' argument in the MBS context has rejected it.  *See, e.g.*, *Wash. Mut.*, 276 F.R.D. at 667-68 ("By regulation, the term 'earning statement' does not include trustee or distribution reports."); *In re IndyMac Mortg.-Backed Sec. Litig.*, No. 09 Civ. 4583 LAK, 2012 WL 3553083, at *8 (S.D.N.Y. Aug. 17, 2012)

---

CWALT 2005-26CB-A6 and CWALT 2005-46CB-A20 are time barred under the Court's prior orders.

804146_1

1  (collecting cases and noting that "[o]nly reports on Forms 10-K, 10-Q, 8-K, 20-F, 40-

2  F, and 6-K, and annual reports made pursuant to Rule 14a-3 of the Exchange Act, are

3  earning statements under the statute").

**B.    Plaintiffs' Purchase of MBS Before the Effective Date of the Prospectus Supplements and Amendments to the Registration Statements Does Not Bar Their Claims**

6      Defendants argue that all Securities Act claims on those securities purchased

7  "before the dates on which the prospectus supplements for those securities were

8  issued," are barred.  Defs.' Brf. at 33.  This Court has already addressed and rejected

9  this argument twice with respect to near identical allegations.  *See State Treasurer*,

10  No. 11-CV-00809-MRP-MAN (Dkt. No. 130 at 11 n.4) (rejecting argument and

11  noting, *inter alia*, that "it is entirely possible that a private party could have seen and

12  relied upon the Prospectus Supplement before it was publicly filed"); *Maine State*, No.

13  2:10-cv-00302-MRP-MAN (Dkt. No. 315 at 10) (rejecting argument because "there

14  are simply too many unknown facts for resolution at the motion to dismiss stage").[25]

15      In rejecting defendants' argument, this Court distinguished *APA Excelsior III*

16  *L.P. v. Premiere Techs.*, 476 F.3d 1261, 1272 (11th Cir. 2007), and its progeny.

17  *Maine State*, No. 2:10-cv-00302-MRP-MAN (Dkt. No. 315 at 6) (noting that "there

18  are clear differences between the present factual situation" and those presented in

19  *Excelsior*).  The Court also noted that many factual questions surrounding the *Maine*

20  *State* plaintiff's purchase of the MBS at issue remained unanswered, thereby

21  precluding determination at the pleading stage.  *See Maine State*, No. 2:10-cv-00302-

22  MRP-MAN (C.D. Cal. Aug. 8, 2011) (Dkt. No. 303, §III.C. at 14-19) (plaintiff's

23  

24  [25]    Defendants frame the issue as one of reliance.  Defs.' Brf. at 33-34.  This Court in *Maine State*, however, found that it was an issue of loss causation.  *Maine State*,

25  No. 2:10-cv-00302-MRP-MAN (Dkt. No. 315 at 9) ("Rather than reliance, tracing, or materiality, loss causation is the better doctrinal foundation for Defendants'

26  motions.").  As the Court noted, under the Securities Act, the lack of causation is a defense that must be proven by defendants and is not suitable for determination on a

27  motion to dismiss as it raises questions of fact far beyond what can be adjudicated under Fed. R. Civ. P. 12(b)(6).  *Id.*

28  

- 23 -

1   briefing in *Maine State* describing the general shelf registration and mortgage-backed

2   securities issuing and purchase process); *see also Maine State*, No. 2:10-cv-00302-

3   MRP-MAN (C.D. Cal. Sept. 13, 2011) (Dkt. No. 315 at 10) (this Court noting that the

4   *Maine State* briefing "provide[d] or impl[ied] answers to many of the[] questions,"

5   mandating denial of defendants' argument at the pleading stage).[26]  Defendants' brief

6   here merely repeats their prior discredited arguments.  Furthermore, defendants do not

7   raise any facts that were not raised in *Maine State* and, thus, cannot support a contrary

8   finding here.  *See* Defs.' Brf., Appendix J.[27]

9   **VI.   Plaintiffs' Claims Are Timely**

10      **A.   Statute of Repose**

11        Section 13 of the Securities Act provides that a §11 claim must be brought

12   within "three years after the security was bona fide offered to the public."  15 U.S.C.

13   §77m.  For §11 claims, the relevant repose period trigger date depends on the date of

14   the registration statement and the role of the defendant in the offering.   For

15   registration statements predating December 1, 2005, the repose trigger date (1) for

16   issuers, officers and directors is the date of the registration statement (*see Finkel v.*

17   *Stratton Corp.*, 962 F.2d 169, 173 (2d Cir. 1992)); and (2) for underwriters is the date

18   they became underwriters of the offering.   15 U.S.C. §77k(d); *see also In re*

19   *Countrywide Fin. Corp. Sec. Litig.*, No. CV-07-05295-MRP (MANx), 2009 WL

---

26     The questions include: "If the securities were not yet registered, did the Plaintiffs purchase unregistered securities, or did they enter into a futures contract to purchase the Offerings once the prospectus supplements became effective?  If a futures contract, under what conditions was the contract revocable (either under the contract or SEC rules)?  Did Plaintiffs have access to a draft prospectus supplement prior to purchase?  Did the previously-filed registration statements contain material misstatements which are independently actionable?  Plaintiffs provide or imply answers to many of these questions in their Opposition brief at Section III.C." *Maine State*, No. 2:10-CV-00302-MRP-MAN (Dkt. No. 315 at 10).  Those same questions apply equally here and preclude a determination of the issue without an evidentiary record.

27     It bears noting that plaintiffs object to and do not agree with the authenticity or correctness of Appendix J as a historical summary of the salient facts.

943271, at *6 (C.D. Cal. Apr. 6, 2009) (recognizing that law governing the statute of repose prior to December 1, 2005, "did not distinguish among any actors except for underwriters, whose liability at that time was governed solely by §11(d)").[28]  This statutory regime provided for certain unintended consequences in the face of shelf-registration statements that predated prospectus supplements issued therefrom. Instances arose where prospectus supplements were issued years after shelf-registration statements were issued, thereby subjecting the underwriters of the newly issued prospectus supplement to §11 liability, but insulating the issuers, officers and directors because they signed the shelf registration statements years prior.[29]

In light of this problem, the Securities and Exchange Commission ("SEC") adopted the Securities Offering Reform ("SOR"), effective December 1, 2005.  17 C.F.R. §230.430B, *et seq.*; *see also Maine State*, 722 F. Supp. 2d at 1165 & n.8 (explaining the statute of repose inquiry and how that inquiry changed after the SEC adopted the SOR); *Countrywide*, 2009 WL 943271, at *6 (same and noting that the court appeared to be the first to consider the SOR's effect on repose timing).  Under the SOR, as of December 1, 2005, the new statute of repose trigger date for issuers is

---

[28]    The statute of repose bars actions filed "more than three years after the security was bona fide offered to the public." 15 USC. §77m. This Court has accepted that the "bona fide offering" date is the date on which the Registration Statement was filed. *Maine State I*, 722 F. Supp. 2d at 1165 & n.8.  Plaintiffs respectfully submit this is wrong.  Instead, in the "shelf registration" context, the issuance of the securities is the "bona fide offering" date. *See e.g.*, *Fed. Hous. Fin. Agency v. UBS Ams., Inc.*, No. 11 CIV. 5201 DLC, 2012 WL 2400263, at*4 (S.D.N.Y. June 26, 2012).

[29]    The SEC explained that under the pre-SOR liability scheme, "there can be a mismatch between issuers and underwriters in the time that liability is assessed.  For example, in an offering off a shelf registration statement, an issuer could have its liability assessed as of the date of the registration statement's initial effectiveness (or post-effective amendment) or the most recent updating required under Securities Act Section 10(a)(3), *while the liability of an underwriter would be assessed at the later time when it became an underwriter*.  In such a case, underwriters in takedowns occurring after the date of initial effectiveness (or post-effective amendment) or the Section 10(a)(3) update would be subject to liability under Section 11 for an issuer's Exchange Act reports incorporated by reference into the prospectus included in the registration statement after that date while issuers would not." 70 Fed. Reg. 773-74 n.467.

1   the date a prospectus supplement is filed in connection with a takedown of securities

2   from a previously issued shelf-registration statement.  The change effectuates the

3   reality that every prospectus supplement reissues the original registration statement,

4   thereby commencing a new repose period.  Securities Offering Reform, 70 Fed. Reg.

5   44,722, 44,773 (Aug. 3, 2005) (codified at 17 C.F.R. § 230.430B).  As for

6   underwriters, the trigger date is the date of the prospectus supplement or, like the pre-

7   SOR rule, the date the person thereafter became an underwriter.  *Id.*; *see also id.* at

8   44,774 n.467 (citing 15 U.S.C. §77k(d)) ("The new effective date also does not apply

9   to a person that becomes an underwriter after that effective date; in that case Securities

10  Act Section 11(d) provides that the date the person became an underwriter is the

11  effective date.").  The SEC recognized that Rule 430B of the SOR corrected the

12  "mismatch between issuers and underwriters in the time that liability is assessed" as

13  "Rule 430B results in most cases in the date of effectiveness of a registration

14  statement for an issuer and underwriter in a particular offering being close in time."

15  *Id.* at 44,773-74 n.467.[30]

16      Applying this framework here, the §11 claims covering 46 of 50 the Offerings

17  identified in Defs.' Brf., Appendix B, are timely as to the Underwriter Defendants.

18  The shelf-registration statements for each of the 50 Offerings identified in Defs.' Brf.,

19  Appendix B, were filed before December 1, 2005, and therefore pre-SOR rules apply.

20  In addition, for all 50 Offerings identified in Appendix B, the respective Underwriter

21  Defendants became underwriters as of the date of the respective Prospectus

22

23  [30]    Defendants argued in state court that pe-SOR rules treated all defendants
    identically, *i.e.*, the three-year statute of repose for issuers, officers, directors **and**
24  underwriters commenced with the issuance of the earliest registration statement.
    Defendants' position is untenable as it would (1) run counter to the SEC's
25  interpretation of the pre-SOR rules it helped create and amend and (2) lead to absurd
    results.  Under defendants' interpretation, an underwriter can be absolved of liability
26  before even becoming an underwriter of an offering.  For example, under defendants'
    interpretation, an underwriter of a 2005 offering could avoid liability prior to being
27  retained as an underwriter if the offering was issued from a 2002 shelf-registration
    statement.

28

1    Supplements issued from the shelf-registration statements.  *See* 15 U.S.C. §77k(d);

2    *Countrywide*, 2009 WL 943271, at *6.  Plaintiffs' Appendix B,[31] see attached, shows

3    that the dates that 46 of those 50 Offerings were added to the respective complaints

4    fall squarely within the three-year statute of repose, as measured from the date of the

5    Prospectus Supplements.   Accordingly, the §11 claims against the Underwriter

6    Defendants for those 46 Offerings are timely.

7         Defendants further contend that the §11 claims as to an additional 13 Offerings

8    listed on Appendix C are time-barred on the grounds that a named-plaintiff who

9    purchased within the Offering was not added to the amended complaint until after the

10   three-year repose period had run.   *See* Defs.' Brf. at 12-13 & Appendix C.[32]

11   Defendants' contention fails, however, as to 10 of the 13 Offerings.  Indeed, the §11

12   claims covering 10 of the 13 Offerings identified in defendants' Appendix C are

13   timely as to the Underwriter Defendants because the date a named plaintiff who

14   purchased within 10 of these 13 Offerings joined the case falls squarely within the

15   three-year repose period, as measured from the Prospectus Supplement date.  *See*

16   plaintiffs' Appendix C.[33]  Accordingly, plaintiffs' §11 claims brought pursuant to 56

17

18

---

19   [31]     Plaintiffs' Appendix B is patterned after defendants' Appendix B and offers
20   plaintiffs' analysis as to why the referenced §11 claims as to 46 of the 50 offerings are
     timely against the Underwriter Defendants.

21   [32]     Plaintiffs note that there is a discrepancy between the securities identified in
22   defendants' appendices such that the timeliness of each of the Offerings that plaintiffs
     purchased is not adequately addressed.  Nevertheless, as the issue currently before the
23   Court is the proper interpretation of the law regarding the timeliness of plaintiffs'
     potential claims, plaintiffs submit that an application of the Court's holdings to the
24   particular Offerings should be reserved for a later date.  To aid in this eventual
     application, plaintiffs have attached, as Appendix A, a chart listing each of the
25   Offerings in which plaintiffs purchased and the liable §11 defendants for each
     Offering.

26   [33]     For all 13 securities identified in plaintiffs' Appendix C, the respective
27   Underwriter Defendants became underwriters as of the date of the respective
     Prospectus Supplements issued from the shelf-registration statements.

28

of the 63 Offerings listed in Appendices B and C are timely as to the Underwriter Defendants.

As discussed above, plaintiffs respectfully submit that they have standing at the pleading stage to represent a putative class of those plaintiffs who purchased MBS pursuant to the 13 Registration Statements from which plaintiffs purchased. *See* §II, *supra*. Alternatively, plaintiffs respectfully submit that they have standing currently to represent a putative class of those plaintiffs who purchased MBS in the same Offerings in which plaintiffs purchased. *Id.* Recognizing that the Court has held previously that Securities Act standing attaches only when a named plaintiff who purchased MBS entered the case, and respectfully reserving all rights in that regard, plaintiffs have attached for the Court's convenience a list of (1) the Registration Statements and, Offerings, and (2) the tranches in which plaintiffs timely purchased securities within the three-year repose period. *See* plaintiffs' Appendices A, D.[34] As shown by these Appendices, under the Court's prior orders plaintiffs have timely claims for 49 Offerings and 58 tranches (Appendix A – 49 Offerings; Appendix D – 58 tranches).

## B.    Statute of Limitations

Section 13 of the Securities Act provides that actions asserting claims for violations of §§11 and 12(a)(2) must be "brought within one year after the discovery of the untrue statement or the omission, or after such discovery should have been made by the exercise of reasonable diligence." 15 U.S.C. §77m. This Court recently held that the statute of limitations for §11 claims "begins to run only when the plaintiff did or should have actually discovered that the defendant made an 'untrue

---

[34]    Like their repose arguments as to plaintiffs' §11 claims, defendants contend that a mere 11 of the 429 Offerings at issue here are untimely under §12(a)(2). Defs.' Brf. at 13-14. As a result of this Court's ruling on standing, plaintiffs do not contest that their §12(a)(2) claims as to those 11 Offerings are barred by the three-year statute of repose, but respectfully reserve all rights as to those claims.

804146_1

1  statement or omission,' not when it should have begun investigating." *F.D.I.C.*, 2012

2  WL 5900973, at *3 (citing *Merck & Co. v. Reynolds*, _U.S._, 130 S. Ct. 1784, 176 L.

3  Ed. 2d 582 (2010)).   A plaintiff is "considered to have discovered a fact when a

4  'reasonably diligent plaintiff would have sufficient information about that fact to

5  adequately plead it in a complaint . . . with sufficient detail and particularity to survive

6  a 12(b)(6) motion to dismiss.'" *Id.* (citing *City of Pontiac Gen. Emps.' Ret. Sys. v.

7  MBIA, Inc.*, 637 F.3d 169, 175 (2d Cir. 2011); *Allstate*, 824 F. Supp. 2d at 1179).[35]

8      Defendants contend that of the 429 Offerings at issue in this case, plaintiffs'

9  Securities Act claims as to six purchased by VPIC in 2009 are barred by the Securities

10 Act's one-year statute of limitations.  Defs.' Brf. at 14.  *See* note 22, *supra*.  Plaintiffs

11 do not contest defendants' argument as to the six securities listed on defendants'

12 Appendix F, but respectfully reserve all rights as to the Securities Act claims flowing

13 from those securities for other potential plaintiffs by amendment.

14 **VII.   Plaintiffs Have Adequately Pled §12(a)(2) Claims**

15     Section 12(a)(2) creates liability for any person who "offers or sells" newly-

16 issued securities "by means of a prospectus or oral communication."   15 U.S.C.

17 §77l(a)(2).  Plaintiffs have adequately alleged both that the Issuing and Underwriting

18 Defendants[36] are "sellers" within the meaning of §12(a)(2) and that plaintiffs

19 purchased the securities in the Offerings "pursuant to and/or traceable to" the

20 misleading prospectuses.  Nothing more is required at the pleading stage.

21

22

---

23 [35]     In *Merck*, the Supreme Court found that "terms such as 'inquiry notice' and
24 'storm warnings' may be useful to the extent that they identify a time when the facts
   would have prompted a reasonably diligent plaintiff to begin investigating."  130 S.
25 Ct. at 1798.

26 [36]     The Issuing Defendants are: CWALT, CWMBS, CWABS, CWHEQ and CFC.
   ¶56.  The Underwriting Defendants are: CFC, CCM, CSC, JP Morgan, Deutsche
27 Bank, Bear Stearns, BoA, USB, Morgan Stanley, Edward Jones, Citigroup, Goldman
   Sachs, Credit Suisse, RBS, Barclays, HSBC, BNP and Merrill Lynch.  ¶57.

28

### A.    The Issuing and Underwriting Defendants Are Sellers Within the Meaning of §12(a)(2)

The term "seller" within the meaning of §12(a)(2) is defined both in statutory and case law. *First*, SEC Rule 159A defines a "seller" as follows:

> For purposes of section 12(a)(2) of the Act only, ***in a primary offering of securities of the issuer, regardless of the underwriting method used to sell the issuer's securities***, seller shall include the issuer of the securities sold to a person as part of the initial distribution of such securities, and the issuer shall be considered to offer or sell the securities to such person, if the securities are offered or sold to such person by means of any of the following communications: (1) Any preliminary prospectus or prospectus of the issuer relating to the offering required to be filed pursuant to Rule 424 (§ 230.424) . . . .

17 C.F.R. §230.159A(a). The SEC further posits that an ***issuer*** of a security is a statutory seller because by "offering or selling its securities in a registered offering pursuant to a registration statement containing a prospectus that it has prepared and filed," the ***issuer*** "can be viewed as soliciting purchases of the issuer's registered securities." *Securities Offering Reform*, Securities Act Release No. 75, 2005 WL 1692642, at *78 (July 19, 2005) (citing *Pinter v. Dahl*, 486 U.S. 622, 108 S. Ct. 2063, 100 L. Ed. 2d 658 (1988)).

Recognizing the clear language of SEC Rule 159A, certain district courts have applied this statutory definition to hold issuers liable under §12(a)(2). *See, e.g.*, *In re Oppenheimer Rochester Funds Grp. Sec. Litig.*, 838 F. Supp. 2d 1148, 1179 (D. Colo. 2012) ("With regard to the Funds themselves, the argument [that *Pinter* requires "'direct and active participation in the solicitation of plaintiffs' purchases'"] is foreclosed as a matter of logic and by SEC Rule 159A, ***providing that issuers of securities are statutory sellers for purposes of §12(a)(2).***") (citing *Citiline Holdings, Inc. v. iStar Fin., Inc.*, 701 F. Supp. 2d 506, 512 (S.D.N.Y. 2010); 17 C.F.R.

1   §230.159A); *Mallen v. Alphatec Holdings, Inc.*, 861 F. Supp. 2d 1111, 1132 (S.D. Cal.

2   2012) (finding that the complaint "adequately alleges that [the Issuer] 'successfully

3   solicit[ed]' the purchase of its securities by issuing and promoting the Prospectus, and

4   that it did so 'motivated at least in part by a desire to serve [its] own financial

5   interests' . . . [and that] ***SEC Rule 159A provides that an issuer of securities is***

6   ***considered a statutory seller for purposes of §12(a)(2) regardless of the form of***

7   ***underwriting***") (citing *Pinter*, 486 U.S. at 647; 17 C.F.R. §230.159A(a)).

8          ***Second***, in *Pinter*, the U.S. Supreme Court defined the term "seller" not only as

9   the "owner who passed title, or other interest in the security, to the buyer for value,"

10  but also as a "person who successfully solicits the purchase, motivated at least in part

11  by a desire to serve his own financial interests or those of the securities owner."

12  *Pinter*, 486 U.S. at 642, 647;[37] *see also United Food and Commercial Workers Union*

13  *v. Chesapeake Energy Corp.*, No. CIV-09-1114-D, 2010 WL 3527596, at *4 (W.D.

14  Okla. Sept. 2, 2010).  Therefore, a seller is "not limited to persons who pass title,"

15  such as a firm commitment underwriter.  *Pinter*, 486 U.S. at 643; *Maine State II*, 2011

16  WL 4389689, at *9.

17         Applying SEC Rule 159A and the "solicitation" case law to the instant case, the

18  Issuing Defendants are "sellers" under §12(a)(2).[38]  The Offerings at issue in this

19  matter are "primary offerings" as that term is used in SEC Rule 159A and the Issuing

20  Defendants are "issuer[s] of the securities."  17 C.F.R. §230.159A(a).  Furthermore,

21  the Issuing Defendants cannot deflect liability based on the fact that the Offerings

22

---

23  [37]    The *Pinter* decision addressed the statutory meaning of "seller" under what was
24  then §12(1) and is now §12(a)(1).  Courts have acknowledged, however, that the
     *Pinter* definition of a statutory seller under §12(a)(1) "applie[s] to §12(a)(2) as well."
     *Maher v. Durango Metals*, 144 F.3d 1302, 1307 n.10 (10th Cir. 1998); *see also In re*
25   *Am. Bank Note Holographics Sec. Litig.*, 93 F. Supp. 2d 424, 438 (S.D.N.Y. 2000).

26  [38]    Plaintiffs acknowledge that this Court declined to find that the Issuing
     Defendants were sellers pursuant to SEC Rule 159A in *Maine State II*, 2011 WL
27   4389689.  Plaintiffs respectfully request that the Court reconsider its prior ruling and,
     alternatively, set forth this argument to preserve the record for appeal.

28

804146_1

1   were firm commitment offerings because SEC Rule 159A defines issuers as sellers

2   "*regardless of the underwriting method* used to sell the issuer's securities." *Id*.

3          The Issuing Defendants also meet the definition of soliciting "sellers" under

4   *Pinter*.  While the Issuing Defendants may not have passed title directly to plaintiffs,

5   there is no doubt that they successfully solicited the purchase, "motivated at least in

6   part by a desire to serve [their] own financial interests or those of the securities

7   owner." *Pinter*, 486 U.S. at 647.  "Solicitation" for purposes of §12(a)(2) potential

8   liability "includes both personal solicitation and substantial involvement in the

9   offering process." *United Food*, 2010 WL 3527596, at *7 (citing *Capri v. Murphy,*

10  856 F.2d 473, 478 (2d Cir. 1988)).  Even without transferring title to the securities or

11  signing a registration statement, a defendant can be a statutory seller where it actively

12  solicits the sale of the securities through, for example, "participation in preparation of

13  the registration statement and prospectus and in road shows, 'with a motivation to

14  serve [its] own financial interests or those of the securities' owner.'" *Am. Bank Note*

15  *Holographics*, 93 F. Supp. 2d at 439.  Here, plaintiffs sufficiently allege: (1) that

16  "[e]ach Registration Statement was *prepared by* the Issuing Defendants" (¶152); and

17  (2) "[t]he Issuing . . . Defendants *promoted and sold* the Certificates pursuant to the

18  defective Prospectuses" (¶226).[39]

19         Plaintiffs also have adequately alleged that the Underwriting Defendants are

20  "sellers" within the meaning of §12(a)(2).  Indeed, there is no dispute that the

21  Underwriting Defendants "passed title" to the plaintiffs as all of the Offerings were

22  conducted through firm commitment underwritings. *See Pinter*, 486 U.S. at 642; *Am.*

23  *Bank Note Holographics*, 93 F. Supp. 2d at 439 ("In a firm commitment underwriting,

---

[39]    Allegations of "solicitation" under Rule 12(a)(2) need only comply with Rule 8(a) notice pleading standards to survive a motion to dismiss. *In re Charles Schwab Corp. Sec. Litig.*, 257 F.R.D. 534, 550 (N.D. Cal. 2009).  If, however, the Court finds the foregoing allegations insufficient to plead "solicitation" under Rule 8(a), plaintiffs respectfully request leave to amend those allegations. *Foman*, 371 U.S. at 182 (leave to amend should be freely granted).

- 32 -

1   the underwriter is the ***owner*** of whatever shares fail to sell in the public offering. . . .

2   A direct sale to public investors makes an underwriter a 'seller' within the meaning of

3   Section 12(a)(2) under the first prong of the *Pinter* test."); *see also Maine State II*,

4   2011 WL 4389689, at *10 ("Plaintiffs clearly allege the Section 12 Underwriter

5   Defendants are direct sellers . . . .").

6        The Underwriting Defendants misguidedly contend, however, that plaintiffs

7   have failed to specifically identify the Underwriting Defendants from which they

8   purchased and that that failure renders the allegations infirm. Defs.' Br. at 25. ***First***,

9   the complaint alleges that the "Certificates were . . . sold to plaintiffs by the

10  Underwriter Defendants" (¶2) and plainly sets forth the underwriters for each of the

11  relevant Offerings, thereby establishing which underwriters sold securities to plaintiffs

12  in each Offering. *See generally* ¶55. These allegations alone provide a sufficient

13  basis for the Court to reject defendants' arguments. *See In re Scottish Re Group Sec.*

14  *Litig.*, 524 F. Supp. 2d 370, 400 (S.D.N.Y. 2007) ("[T]he Complaint adequately

15  alleges that defendants, including the Underwriter Defendants, sold the securities as

16  part of the Offerings, and plaintiffs acquired securities in the Offerings. A reasonable

17  inference is that plaintiffs acquired their securities from the Underwriter Defendants.

18  The Complaint thus states a claim under section 12(a)(2)."). ***Second***, "[p]laintiffs

19  need not allege 'which underwriter sold securities to each plaintiff' to state a claim

20  under Section 12(a)(2). *In re DDi Corp. Sec. Litig.*, No. CV 03-7063 NM, 2005 WL

21  3090882, at *20 (C.D. Cal. July 21, 2005); *see also In re Westinghouse Sec. Litig.*, 90

22  F.3d 696, 718 (3d Cir. 1996) (plaintiffs are not "required to allege which underwriter

23  sold securities to each plaintiff"); *In re Wash. Mut.*, 259 F.R.D. 490, 509 (W.D.

24  Wash. 2009) (same); *Schoenhaut v. Am. Sensors*, 986 F. Supp. 785, 790 n.6 (S.D.N.Y.

25  1997) (same).[40]   As plaintiffs' §12(a)(2) claims are not subject to a heightened

26

27          [40]     *See also Wachovia Equity Sec. Litig. v. Wachovia Corp.*, 753 F. Supp. 2d 326,

28  374 (S.D.N.Y. 2011) ("Although the Underwriter Defendants protest that the

1   particularity requirement, plaintiffs have adequately pled that the Underwriting

2   Defendants are "sellers" within the meaning of §12(a)(2).

3       **B.    Plaintiffs Have Adequately Alleged that They Purchased
             Their Securities in the Offerings**

4

5           Defendants contend that plaintiffs fail to allege that they purchased securities in

6   the Offerings, rather than in the aftermarket, and that some of plaintiffs' purchases

7   occurred after the expiration of the prospectus delivery period.  Defs.' Brf. at 27-30.

8   Defendants' contentions are misplaced.  *First*, plaintiffs have clearly alleged, in

9   accordance with Rule 8(a), that "Plaintiffs and other members of the Class purchased

10  or otherwise acquired Certificates pursuant to and/or traceable to the defective

11  Prospectuses" and that "[t]he Issuing and Underwriting Defendants promoted and sold

12  the Certificates pursuant to the defective Prospectuses."  ¶¶226, 229.  That is sufficient

13  at the pleading stage.  *See, e.g.*, *Nomura*, 632 F.3d at 776 (finding sufficient plaintiffs'

14  allegations that they "'acquired . . . [c]ertificates *from* defendant Nomura Securities'"

15  and that the "'[d]efendants *promoted and sold* the [c]ertificates *to* [the p]laintiffs and

16  other members of the [c]lass'"); *see also Morgan Stanley*, 810 F. Supp. 2d at 671 ("the

17  allegation of promotion and sale to Plaintiffs is sufficient to plead standing with

18  respect to the Section 12(a)(2) claim").

19          *Second*, "[t]here is no clear appellate authority as to whether aftermarket

20  purchasers may have §12(a)(2) standing."  *In re Wash. Mut., Inc. Sec.*, 694 F. Supp.

21  2d 1192, 1225 (W.D. Wash. 2009).  Indeed, "'Section 12(a)(2) does not require that

22  shareholders purchase their securities during the initial distribution of shares, but only

23  that plaintiffs' purchase their shares directly from a seller who makes use of a false or

24

---

25  Complaint 'entirely fails' to identify which Underwriter Defendants sold particular
    securities to the named Plaintiffs, . . . they cite no authority for the proposition that the
26  immediate seller requirement demands such particularity in the pleadings.
    Accordingly, the Court finds that the *Bond/Notes* plaintiffs have successfully pled
27  Section 12(a)(2) standing.").

28

1    misleading prospectus.'" *Hutchison v. CBRE Realty Fin., Inc.*, 638 F. Supp. 2d 265,

2    271 (D. Conn. 2009). Defendants asserted in their prior state court demurrer that they

3    warned investors of the "absence of a secondary market" in the relevant securities,[41]

4    but now defendants assume a directly contrary position and argue that plaintiffs'

5    claims based on the 29 securities supposedly purchased in the aftermarket should be

6    dismissed. Due in part to defendants' contradictory arguments, at the very least,

7    plaintiffs are entitled to discovery on this question of fact.

8         Moreover, defendants' contentions regarding the timing of plaintiffs' purchases,

9    and therefore plaintiffs' standing to bring §12(a)(2) claims, are more appropriately

10   addressed at the class certification stage. *See In re DDi Corp.*, 2005 WL 3090882, at

11   *20 n.18 (determination whether plaintiffs purchased securities from underwriters as

12   part of public offering is "better addressed during the class certification stage in the

13   proceedings") (citing *Westinghouse*, 90 F.3d at 718 n.22 ("While these [standing]

14   concerns might be relevant on a motion for class certification, they do not address

15   whether, as a threshold matter, plaintiffs properly stated a section 12(2) claim under

16   Rule 12(b)(6).")); *see also Citiline Holdings*, 701 F. Supp. 2d at 511-12 (rejecting

17   defendants' arguments that plaintiffs failed to sufficiently plead that they purchased

18   their shares directly in the offering, and not in the aftermarket and stating "[p]laintiffs

19   have sufficiently alleged standing to bring their Securities Act claims") (citing *In re*

20   *WorldCom, Inc. Sec. Litig.*, 294 F. Supp. 2d 392, 423 (S.D.N.Y. 2003)).[42]

21

22

---

23   [41]    *See* Burkholz Decl., Ex. F (The Countrywide Defendants' Memorandum of
     Points and Authorities in Support of Demurrer to Plaintiffs' Consolidated Complaint,
24   filed March 6, 2009 ("3/16/09 Defs.' Demurrer")) at 7, 11, 23.

25   [42]    Defendants' cited authorities are not relevant. For example, the court in *Levi*
     *Strauss* only discussed applying the prospectus delivery requirement period to
26   establish an outer bound for the defendants' potential 12(a)(2) liability for ***after***
     ***market transactions***. *In re Levi Strauss & Co. Sec. Litig.*, 527 F. Supp. 2d 965, 983
27   (N.D. Cal. 2007) (declining to impose §12(a)(2) liability for after-market
     transactions). Defendants fail to assert that each Offering was necessarily completed
28   within the 40-day period following the effective date of the prospectus supplement,

1   Because plaintiffs have alleged that they "purchased or otherwise acquired
2   Certificates pursuant to and/or traceable to the defective Prospectuses," and that "[t]he
3   Issuing and Underwriting Defendants promoted and sold the Certificates pursuant to
4   the defective Prospectuses," they have adequately alleged their §12(a)(2) claims
5   against the Underwriting and Issuing Defendants. *See* ¶¶226, 229.

6   **VIII. The *Western Conference* Action Was Timely Filed**

7   **A.    California Law Governs Any Analysis of the Timeliness of
8            the *Western Conference* Complaint and Cross-Jurisdictional
         Tolling Is Inapplicable**

9   Defendants' argument that *Western Conference's* claims were time barred
10  because they were not tolled under federal law as articulated in this Court's recent
11  decision in *Strategic Capital* is without merit.  Defs.' Brf. at 15.  "[D]efendants'
12  argument requires us to ignore the well-established rule that a federal court must
13  honor state court rules governing commencement of civil actions when an action is
14  first brought in state court and then removed to federal court, even though the cause of
15  action arises from federal law." *Winkels v. George A. Hormel & Co.,* 874 F.2d 567,
16  570 (8th Cir. 1989); *Herb v. Pitcairn*, 324 U.S. 117, 120, 65 S. Ct. 459, 89 L. Ed. 789
17  (1945) (whether case is pending in state court for the purpose of tolling a federal
18  statute of limitations is determined by state law); *Dravo Corp. v. White Consol. Indus.*
19  *Inc.*, 602 F. Supp. 1136, 1139 (W.D. Pa. 1985) (in case originating in state court and
20  removed to federal court, state procedural rules on commencement apply to toll statute
21  of limitations).

22  Here, the *Western Conference* complaint was filed in California state court in
23  November 2010.  *Western Conference* relied on tolling based upon the previously
24  filed *Luther* complaint, which also had been filed in, and was at the time on appeal
25  before the California appellate court. *See Luther v. Countrywide Fin. Corp.*, 195 Cal.

26  ───────────────────────────────
27  thereby rendering any purchases following the expiration of this period after-market
    purchases.  *See generally* Defs.' Brf. at 28-30.

28

804146_1

1    App. 4th 789, 125 Cal. Rptr. 3d 716 (2011) (reversing state trial court's dismissal for

2    lack of jurisdiction).  Because both *Luther* and *Western Conference* were filed and

3    pending in state court, any analysis of timeliness depends on the application of

4    California state law.  Accordingly, contrary to defendants' arguments and citation to

5    *Strategic Capital*, plaintiffs here are not relying on "cross-jurisdictional" tolling, but

6    simply a straightforward analysis of California tolling and standing law as it would

7    apply to a determination of the timeliness of *Western Conference's* complaint.

8    Accordingly, the principal of cross-jurisdictional tolling is not implicated here.

9        As this Court has previously recognized, "California does recognize *American*

10   *Pipe* tolling for its own class actions."  *FDIC*, 2012 WL 5900973, at *14 (citing

11   *Bangert v. Narmco Materials, Inc.*, 163 Cal. App. 3d 207, 209, 209 Cal. Rptr. 438

12   (1984)).  Because *Western Conference* was filed in California state court, plaintiff

13   Western Conference is entitled to *American Pipe* tolling based upon *Luther*, a

14   previously filed California class action that was pending before the California Court of

15   Appeal at the time the *Western Conference* complaint was filed.

16   **B.    The *Western Conference* Complaint Was Tolled Under**
     **California Law Because the *Luther* Plaintiffs Had Standing**
17   **to Bring Claims on Behalf of All Class Members with a Well**
     **Defined Community of Interest in the Law and Facts**
18   **Involved**

19       Under California law, a determination of standing hinges on "a well-defined

20   community of interest in the questions of law and fact involved."  *Vasquez v. Superior*

21   *Court of San Joaquin Cnty.*, 4 Cal. 3d 800, 809, 484 P.2d 964 (1971); *Sav-On Drug*

22   *Stores, Inc. v. Superior Court*, 34 Cal. 4th 319, 326, 96 P.3d 194 (2004).  The

23   "community of interest" requirement has three elements: (1) predominating common

24   questions of law or fact; (2) class representatives with claims or defenses typical of the

25   class; and (3) class representatives who can adequately represent the class.  *Sav-On*,

26   34 Cal. 4th at 326; *see also Fireside Bank v. Superior Court*, 40 Cal. 4th 1069, 1089,

27   155 P.3d 268 (2007).  Under California law, a "demurrer to class allegations may be

28   sustained without leave to amend only 'where it is clear that there is no reasonable

possibility that the plaintiffs could establish a community of interest among the potential class members and that individual issues predominate over common questions.'" *Blakemore v. Superior Court*, 129 Cal. App. 4th 36, 53, 27 Cal. Rptr. 3d 877 (2005). "'Whenever there is a "reasonable possibility" plaintiffs can plead a prima facie community of interest among class members, "the preferred course is to defer decision on the propriety of the class action until an evidentiary hearing has been held on the appropriateness of class litigation."'" *Id.*; *Brown v. Regents of Univ. of Cal.*, 151 Cal. App. 3d 982, 988, 198 Cal. Rptr. 916 (1984).

The California Court of Appeal has applied these class action standing principles to actions such as this one and has held that "'plaintiffs in a class action should consist of those sharing "a well-defined 'community of interest' in the questions of law and fact involved."' . . . ***Thus, it is the community of interest that defines the class, not whether each individual [investment] has a former investor as a named plaintiff***." *Daniels*, 16 Cal. App. 4th at 473; *see also B.W.I. Custom Kitchen v. Owens-Illinois, Inc.*, 191 Cal. App. 3d 1341, 1349-50 (1987) ("[t]he fact that each or any proposed class member did *not* purchase *all* products affected . . . is irrelevant").

Thus, according to the California Court of Appeal in *Daniels*, the focus must be on the typicality of the claims, rather than the number of investments made by the plaintiff. *Daniels*, 16 Cal. App. 4th at 473. Members of a class are not atypical on the grounds that they purchased different investments when the investments were "'prepared by the same defendants, and contain[] the same alleged omissions and misrepresentations.'" *Id*. That is because, under California law, "***there is no strict requirement to have a named plaintiff with an interest in each individual*** " ***investment***, as long as "[t]here is a sufficient community of interest to define the class." *Id*. In this case, because the *Western Conference* and *Luther* plaintiffs have been injured by a common course of conduct – the origination, securitization, and sale of MBS pursuant to Registration Statements and Prospectuses containing nearly

- 38 -

1   identical misstatements and omissions – the requisite "community of interest" under

2   California law clearly exists to allow tolling of Western Conference's claims.  Put

3   another way, because under California law Luther had standing to represent a class

4   that would have included Western Conference's claims, Western Conference is

5   entitled to tolling based upon the pendency of the *Luther* class action in California

6   state court.

7   　　　　Defendants' reliance on Article III to the U.S. Constitution also is inapposite to

8   this analysis because the United States Supreme Court has "recognized often that the

9   constraints of Article III do not apply to state courts, and accordingly the state courts

10  are not bound by the limitations of a case or controversy or other federal rules of

11  justiciability even when they address issues of federal law, as when they are called

12  upon to interpret the Constitution or, in this case, a federal statute." *ASARCO, Inc. v.*

13  *Kadish*, 490 U.S. 605, 617, 109 S. Ct. 2037, 104 L. Ed. 2d 696 (1989); *Pennell v. San*

14  *Jose*, 485 U.S. 1, 8, 108 S. Ct. 849, 99 L. Ed. 2d 1 (1988); *Los Angeles v. Lyons*, 461

15  U.S. 95, 113, 103 S. Ct. 1660, 75 L. Ed. 2d 675 (1983); *Doremus v. Bd. of Educ.*, 342

16  U.S. 429, 434, 72 S. Ct. 394, 96 L. Ed. 475 (1952); *Secretary of Md. v. Joseph H.*

17  *Munson Co.*, 467 U.S. 947, 971, 104 S. Ct. 2839, 81 L. Ed. 2d 786 (1984) (Stevens, J.,

18  concurring); *Bateman v. Ariz.*, 429 U.S. 1302, 1305, 97 S. Ct. 1, 50 L. Ed. 2d 32

19  (1976) (Rehnquist, J., in chambers); *cf. Highland Farms Dairy, Inc. v. Agnew*, 300

20  U.S. 608, 612, 57 S. Ct. 549, 81 L. Ed. 835 (1937).  California courts similarly have

21  recognized the inapplicability of Article III to actions pending therein. *See Nat'l Paint*

22  *& Coatings Ass'n v. State of Cal.*, 58 Cal. App. 4th 753, 761, 68 Cal. Rptr. 2d 360

23  (1997).  Because Article III does not apply to actions pending in state court, the

24  federal authority cited by defendants is inapposite to any determination of the

25  timeliness of the *Western Conference* action.

26  **IX.   Conclusion**

27  　　　　For the reasons stated herein, plaintiffs respectfully request the Court deny

28  defendants' Motion in its entirety.

1    DATED:  January 21, 2013                    Respectfully submitted,

2                                                ROBBINS GELLER RUDMAN
                                                    & DOWD LLP
3                                                SPENCER A. BURKHOLZ
                                                 THOMAS E. EGLER
4                                                SCOTT H. SAHAM
                                                 NATHAN R. LINDELL
5                                                ASHLEY M. ROBINSON

6
                                                      s/SPENCER A. BURKHOLZ
7                                                   SPENCER A. BURKHOLZ

8                                                655 West Broadway, Suite 1900
                                                 San Diego, CA  92101
9                                                Telephone:  619/231-1058
                                                 619/231-7423 (fax)
10
                                                 KESSLER TOPAZ MELTZER
11                                                  & CHECK, LLP
                                                 ANDREW L. ZIVITZ
12                                               SHARAN NIRMUL
                                                 KIMBERLY JUSTICE
13                                               JENNIFER L. JOOST
                                                 280 King of Prussia Road
14                                               Radnor, PA  19087
                                                 Telephone:  610/667-7706
15                                               610/667-7056 (fax)

16                                               Co-Lead Counsel for Plaintiffs

17                                               DEUTSCH & LIPNER
                                                 SETH E. LIPNER
18                                               1325 Franklin Avenue, Suite 225
                                                 Garden City, NY  11530
19                                               Telephone:  516/294-8899
                                                 516/742-9416 (fax)
20
                                                 THE MEHDI FIRM
21                                               AZRA Z. MEHDI
                                                 One Market
22                                               Spear Tower, Suite 3600
                                                 San Francisco, CA  94105
23                                               Telephone:  415/293-8039
                                                 415/293-8001 (fax)
24
                                                 Additional Counsel for Plaintiff
25

26

27

28

<u>CERTIFICATE OF SERVICE</u>

I hereby certify that on January 21, 2013, I authorized the electronic filing of the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the e-mail addresses denoted on the attached Electronic Mail Notice List, and I hereby certify that I caused to be mailed the foregoing document or paper via the United States Postal Service to the non-CM/ECF participants indicated on the attached Manual Notice List.

I certify under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.  Executed on January 21, 2013.

s/ SPENCER A. BURKHOLZ
SPENCER A. BURKHOLZ

ROBBINS GELLER RUDMAN
& DOWD LLP
655 West Broadway, Suite 1900
San Diego, CA 92101-3301
Telephone: 619/231-1058
619/231-7423 (fax)

E-mail:      spenceb@rgrdlaw.com

804146_1

# Mailing Information for a Case 2:12-cv-05122-MRP-MAN

## Electronic Mail Notice List

The following are those who are currently on the list to receive e-mail notices for this case.

- **Leiv H Blad , Jr**
  leiv.blad@bingham.com

- **Spencer Alan Burkholz**
  spenceb@rgrdlaw.com,e_file_sd@rgrdlaw.com

- **Christopher G Caldwell**
  caldwell@caldwell-leslie.com,hammer@caldwell-leslie.com, ,hong@caldwell-leslie.com,perigoe@caldwell-leslie.com,pettit@caldwell-leslie.com,hayes@caldwell-leslie.com,popescu@caldwell-leslie.com,strother@caldwell-leslie.com,wilson@caldwell-leslie.com

- **Peter Young Hoon Cho**
  petercho@paulhastings.com

- **Matthew W Close**
  mclose@omm.com

- **Brian Charles Devine**
  bdevine@goodwinprocter.com,ABoivin@goodwinprocter.com

- **Jenifer Q Doan**
  jeniferdoan@paulhastings.com,jenniferroussillon@paulhastings.com

- **Daniel S Drosman**
  ddrosman@rgrdlaw.com,tholindrake@rgrdlaw.com,e_file_sd@rgrdlaw.com

- **Thomas E Egler**
  tome@rgrdlaw.com,jillk@rgrdlaw.com

- **John O Farley**
  jfarley@goodwinprocter.com

- **Inez H Friedman-Boyce**
  ifriedmanboyce@goodwinprocter.com,MConnolly@goodwinprocter.com

- **Jeanne A Fugate**
  fugate@caldwell-leslie.com,harper@caldwell-leslie.com,wilson@caldwell-leslie.com

- **Joshua G Hamilton**
  joshuahamilton@paulhastings.com,melmanahan@paulhastings.com,lindayoung@paulhastings.com

- **Jennifer Lee Hong**
  hong@caldwell-leslie.com

- **Dean J Kitchens**
  dkitchens@gibsondunn.com,MOstrye@gibsondunn.com

- **Teodora Manolova**
  tmanolova@goodwinprocter.com

- **Alexander K Mircheff**
  amircheff@gibsondunn.com,mostrye@gibsondunn.com,inewman@gibsondunn.com,cnowlin@gibsondunn.com,mpulley@gibsondunn.com

- **Christopher Anthony Nowlin**
  cnowlin@gibsondunn.com

- **Brian E Pastuszenski**
  bpastuszenski@goodwinprocter.com

- **Michelle K Pulley**
  mpulley@gibsondunn.com

- **Ashley M Robinson**
  ashleyr@rgrdlaw.com

- **Jonathan Rosenberg**
  jrosenberg@omm.com

- **Scott H Saham**
  scotts@rgrdlaw.com,e_file_sd@rgrdlaw.com

- **Jennifer M Sepic**
  jennifer.sepic@bingham.com

- **William F Sullivan**
  williamsullivan@paulhastings.com,lisavermeulen@paulhastings.com,lindayoung@paulhastings.com

- **William J Sushon**
  wsushon@omm.com

- **Michael C Tu**
  mtu@orrick.com

- **David C Walton**
  davew@rgrdlaw.com,e_file_sd@rgrdlaw.com

- **Lloyd Winawer**
  lwinawer@goodwinprocter.com,cburgos@goodwinprocter.com

## Manual Notice List

The following is the list of attorneys who are **not** on the list to receive e-mail notices for this case (who therefore require manual noticing). You may wish to use your mouse to select and copy this list into your word processing program in order to create notices or labels for these recipients.

- (No manual recipients)

https://ecf.cacd.uscourts.gov/cgi-bin/MailList.pl?801395967264439-L_555_0-1

# Mailing Information for a Case 2:12-cv-05125-MRP-MAN

## Electronic Mail Notice List

The following are those who are currently on the list to receive e-mail notices for this case.

- **Leiv H Blad , Jr**
  leiv.blad@bingham.com

- **Spencer Alan Burkholz**
  spenceb@rgrdlaw.com,e_file_sd@rgrdlaw.com

- **Christopher G Caldwell**
  caldwell@caldwell-leslie.com,hammer@caldwell-leslie.com, ,hong@caldwell-leslie.com,perigoe@caldwell-leslie.com,pettit@caldwell-leslie.com,hayes@caldwell-leslie.com,popescu@caldwell-leslie.com,strother@caldwell-leslie.com,wilson@caldwell-leslie.com

- **Matthew D Caplan**
  matthew.caplan@dlapiper.com,susan.byrd@dlapiper.com

- **Peter Young Hoon Cho**
  petercho@paulhastings.com

- **Brian Charles Devine**
  bdevine@goodwinprocter.com,ABoivin@goodwinprocter.com

- **Rajiv S Dharnidharka**
  rajiv.dharnidharka@dlapiper.com

- **Jenifer Q Doan**
  jeniferdoan@paulhastings.com,jenniferroussillon@paulhastings.com

- **Daniel S Drosman**
  ddrosman@rgrdlaw.com,tholindrake@rgrdlaw.com,e_file_sd@rgrdlaw.com

- **Thomas E Egler**
  tome@rgrdlaw.com,jillk@rgrdlaw.com

- **John O Farley**
  jfarley@goodwinprocter.com

- **Inez H Friedman-Boyce**
  ifriedmanboyce@goodwinprocter.com,MConnolly@goodwinprocter.com

- **Jeanne A Fugate**
  fugate@caldwell-leslie.com,harper@caldwell-leslie.com,wilson@caldwell-leslie.com

- **Joshua G Hamilton**
  joshuahamilton@paulhastings.com,melmanahan@paulhastings.com,lindayoung@paulhastings.com

- **Jennifer L Joost**
  jjoost@ktmc.com

- **Kimberly A Justice**
  kjustice@ktmc.com,dpotts@ktmc.com

- **Dean J Kitchens**
  dkitchens@gibsondunn.com,MOstrye@gibsondunn.com

- **Jennifer Y Lai**
  jennifer@21orgpartners.com

- **Seth E Lipner**
  proflipner@aol.com

- **Teodora Manolova**
  tmanolova@goodwinprocter.com

- **Azra Z Mehdi**
  azram@themehdifirm.com,ghamilton@themehdifirm.com

https://ecf.cacd.uscourts.gov/cgi-bin/MailList.pl?327343145641995-L_555_0-1

- **Alexander K Mircheff**
  amircheff@gibsondunn.com,mostrye@gibsondunn.com,inewman@gibsondunn.com,cnowlin@gibsondunn.com,mpulley@gibsondunn.com

- **Nicolas Morgan**
  nicolas.morgan@dlapiper.com,sonji.leblanc@dlapiper.com,paul.puzon@dlapiper.com

- **Sharan Nirmul**
  snirmul@ktmc.com,mswift@ktmc.com

- **Christopher Anthony Nowlin**
  cnowlin@gibsondunn.com

- **Brian E Pastuszenski**
  bpastuszenski@goodwinprocter.com

- **Eric Stephen Pettit**
  pettit@caldwell-leslie.com,wilson@caldwell-leslie.com

- **David A Priebe**
  david.priebe@dlapiper.com,carmen.manzano@dlapiper.com

- **Michelle K Pulley**
  mpulley@gibsondunn.com

- **Ashley M Robinson**
  ashleyr@rgrdlaw.com

- **Scott H Saham**
  scotts@rgrdlaw.com,e_file_sd@rgrdlaw.com

- **Jennifer M Sepic**
  jennifer.sepic@bingham.com

- **William F Sullivan**
  williamsullivan@paulhastings.com,lisavermeulen@paulhastings.com,lindayoung@paulhastings.com

- **Michael C Tu**
  mtu@orrick.com

- **Avi N Wagner**
  avi@thewagnerfirm.com,anwagneresq@hotmail.com

- **Shirli Fabbri Weiss**
  shirli.weiss@dlapiper.com,emiko.gonzales@dlapiper.com

- **Lloyd Winawer**
  lwinawer@goodwinprocter.com,cburgos@goodwinprocter.com

- **Andrew L Zivitz**
  azivitz@ktmc.com,dpotts@ktmc.com

## Manual Notice List

The following is the list of attorneys who are **not** on the list to receive e-mail notices for this case (who therefore require manual noticing). You may wish to use your mouse to select and copy this list into your word processing program in order to create notices or labels for these recipients.

- (No manual recipients)