ROBBINS GELLER RUDMAN
  & DOWD LLP
SPENCER A. BURKHOLZ (147029)
THOMAS E. EGLER (189871)
SCOTT H. SAHAM (188355)
NATHAN R. LINDELL (248668)
ASHLEY M. ROBINSON (281597)
655 West Broadway, Suite 1900
San Diego, CA 92101
Telephone: 619/231-1058
619/231-7423 (fax)
spenceb@rgrdlaw.com
tome@rgrdlaw.com
scotts@rgrdlaw.com
nlindell@rgrdlaw.com
arobinson@rgrdlaw.com

KESSLER TOPAZ MELTZER
  & CHECK, LLP
ANDREW L. ZIVITZ                    COHEN MILSTEIN SELLERS
SHARAN NIRMUL                         & TOLL PLLC
KIMBERLY JUSTICE                    STEVEN J. TOLL (*pro hac vice*)
JENNIFER L. JOOST                   JULIE GOLDSMITH REISER (*pro hac vice*)
280 King of Prussia Road            JOSHUA S. DEVORE (*pro hac vice*)
Radnor, PA 19087                    1100 New York Avenue, N.W.
Telephone: 610/667-7706             West Tower, Suite 500
610/667-7056 (fax)                  Washington, DC 20005-3964
azivitz@ktmc.com                    Telephone: 202/408-4600
snirmul@ktmc.com                    202/408-4699 (fax)
kjustice@ktmc.com                   stoll@cohenmilstein.com
jjoost@ktmc.com                     jreiser@cohenmilstein.com
                                    jdevore@cohenmilstein.com

Co-Lead Counsel in the *Luther*
and *Western Conference* actions    Lead Counsel in the *Maine State* action only

[Additional counsel appear on signature page.]

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| MAINE STATE RETIREMENT SYSTEM, Individually and On Behalf of All Others Similarly Situated, | No. 2:10-cv-00302-MRP(MANx) |
| | CLASS ACTION |
| Plaintiff, | MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFFS' MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT AND PLAN OF ALLOCATION OF SETTLEMENT PROCEEDS |
| vs. | |
| COUNTRYWIDE FINANCIAL CORPORATION, et al., | |
| Defendants. | Date: October 28, 2013 |
| | Time: 1:30 p.m. |
| | Ctrm: 12, Hon. Mariana R. Pfaelzer |

[Caption continued on following page.]

869541_5

| | |
|---|---|
| WESTERN CONFERENCE OF TEAMSTERS PENSION TRUST FUND, Individually and On Behalf of All Others Similarly Situated, | No. 2:12-cv-05122-MRP(MANx) |
| | CLASS ACTION |
| Plaintiff, | |
| vs. | |
| COUNTRYWIDE FINANCIAL CORPORATION, et al., | |
| Defendants. | |
| DAVID H. LUTHER, et al., Individually and On Behalf of All Others Similarly Situated, | No. 2:12-cv-05125-MRP(MANx) |
| | CLASS ACTION |
| Plaintiffs, | |
| vs. | |
| COUNTRYWIDE FINANCIAL CORPORATION, et al., | |
| Defendants. | |

869541_5

# TABLE OF CONTENTS

**Page**

I.    PRELIMINARY STATEMENT ................................................................1

II.   THE STANDARDS GOVERNING JUDICIAL APPROVAL OF CLASS ACTION SETTLEMENTS ................................................7

III.  THE PROPOSED SETTLEMENT IS FAIR, REASONABLE, AND ADEQUATE ...............................................................................9

    A.  The Settlement Is Entitled to a Presumption of Reasonableness Because It Is the Product of Arm's-Length Settlement Negotiations ........................................................................9

    B.  The Strength of Plaintiffs' Case When Balanced Against the Risk, Expense, Complexity, and Likely Duration of Further Litigation Supports Approval of the Settlement ..............................11

        1.  The Risks of Proving Liability ...................................12

        2.  The Risks of Proving Loss Causation and Damages................16

    C.  The Complexity, Expense, and Likely Duration of the Litigation Justifies the Settlement ........................................19

    D.  The Amount Offered in Settlement ....................................21

    E.  Plaintiffs Had Sufficient Information to Determine the Propriety of Settlement ...............................................21

    F.  The Recommendations of Experienced Counsel After Extensive Litigation and Arm's-Length Settlement Negotiations Favor the Approval of the Settlement ..................................................22

    G.  Reaction of Class Members to Date to the Proposed Settlement .......23

IV.   THE COURT HAS THE AUTHORITY TO CERTIFY THE SETTLEMENT CLASS................................................................23

V.    THE PLAN OF ALLOCATION IS FAIR AND REASONABLE..............28

VI.   CONCLUSION ............................................................................35

869541_5

1

## TABLE OF AUTHORITIES

2

**Page**

3

**CASES**

4

*Air Line Stewards & Stewardesses Ass'n*

5

*v. Trans World Airlines, Inc.*,
    630 F.2d 1164 (7th Cir. 1980), *aff'd*,

6

    455 U.S. 385, 102 S. Ct. 1127,

7

    71 L. Ed. 2d 234 (1982)...................................................................26, 27, 28, 33

8

*Alia Loh Woo v. Home Loan Grp., L.P.*,
    No. 07-cv-202 H (POR) 2008 U.S. Dist. LEXIS 65144

9

    (S.D. Cal. Aug. 25,  2008) .......................................................................... 8

10

*Amchem Prods. v. Windsor*,

11

    521 U.S. 591, 117 S. Ct. 2231,

12

    138 L. Ed. 2d 689 (1997)...........................................................................23, 24

13

*Anixter v. Home-Stake Prod. Co.*,

14

    77 F.3d 1215 (10th Cir. 1996) ................................................................... 18

15

*Backman v. Polaroid Corp.*,

16

    910 F.2d 10 (1st Cir. 1990) ....................................................................... 19

17

*Berkey Photo, Inc. v. Eastman Kodak Co.*,

18

    603 F.2d 263 (2d Cir. 1979) ...................................................................... 19

19

*Boilermakers Nat'l Annuity Trust Fund v. WaMu Mortg. Pass*,
    748 F. Supp. 2d 1246 (W.D. Wash. 2010) ................................................ 16

20

*Churchill Vill., L.L.C. v. GE*,

21

    361 F.3d 566 (9th Cir. 2004) ..................................................................... 7

22

*Class Plaintiffs v. Seattle*,

23

    955 F.2d 1268 (9th Cir. 1992).....................................................................23, 28

24

*Fed. Deposit Ins. Corp. v. Countrywide Fin. Corp.*,

25

    No. 2:12-cv-4354 MRP, 2012 U.S. Dist. LEXIS 167696
    (C.D. Cal. Nov. 21, 2012) ........................................................................6, 12, 13

26

*Geffon v. Micrion Corp.*,

27

    249 F.3d 29 (1st Cir. 2001) ....................................................................... 12

28

869541_5

**Page**

*Goldman, Sachs & Co. v. NECA-IBEW Health & Welfare
Fund v. Goldman Sachs & Co.*,
  __ U.S. __, 133 S. Ct. 1624,
  185 L. Ed. 2d 576 (2013) ................................................................... 14

*Greebel v. FTP Software, Inc.*,
  194 F.3d 185 (1st Cir. 1999) ............................................................. 12

*Hanlon v. Chrysler Corp.*,
  150 F.3d 1011 (9th Cir. 1998) ..................................................... 23, 24

*Harris v. Vector Mktg. Corp.*,
  No. C-08-5198 EMC, 2011 U.S. Dist. LEXIS 48878
  (N.D. Cal. Apr. 29, 2011) ..................................................................... 9

*IBEW Local 697 Pension Fund v. Int'l Game Tech., Inc.*,
  No. 3:09-cv-00419-MMD-WGL, 2012 U.S. Dist. LEXIS 151498
  (D. Nev. Oct. 19, 2012) ...................................................................... 17

*In re Apple Computer Sec. Litig.*,
  No. C-84-20148(A)-JW, 1991 U.S. Dist. LEXIS 15608
  (N.D. Cal. Sept. 6, 1991) .................................................................... 18

*In re Broadcom Corp. Sec. Litig.*,
  No. SACV 01-275 DT (MLGx), 2005 U.S. Dist. LEXIS 41976
  (C.D. Cal. Sept. 12, 2005) .................................................................. 28

*In re Cendant Corp. Litig.*,
  264 F.3d 201 (3d Cir. 2001) ............................................................... 18

*In re Countrywide Fin. Corp. Mortgage-Backed Sec. Litig.*,
  860 F. Supp. 2d 1062 (C.D. Cal. 2012) ............................................. 31

*In re Digi Int'l, Inc. Sec. Litig.*,
  14 F. App'x 714 (8th Cir. 2001) ......................................................... 12

*In re Enron Corp. Sec.*,
  MDL No. 1446, 2008 U.S. Dist. LEXIS 84656
  (S.D. Tex. Sept. 8, 2008) .............................................................. 33, 34

- iii -

869541_5

**Page**

*In re Flag Telecom Holdings*,
No. 02-CV-3400 (CM) (PED), 2010 U.S. Dist. LEXIS 119702
(S.D.N.Y. Nov. 8, 2010) ....................................................................... 11

*In re Heritage Bond Litig.*,
No. 02-ML-1475 DT, 2005 U.S. Dist. LEXIS 13355
(C.D. Cal. June 10, 2005) ..................................................................... 33

*In re Ikon Office Solutions, Inc.*,
194 F.R.D. 166 (E.D. Pa. 2000) ...................................................... 19, 20

*In re JDS Uniphase Corp. Sec. Litig.*,
No. C-02-1486-CW(EDL), 2007 WL 4788556
(N.D. Cal. Nov. 27, 2007) ..................................................................... 18

*In re Mego Fin. Corp. Sec. Litig.*,
213 F.3d 454 (9th Cir. 2000) ........................................................ *passim*

*In re MRV Commc'ns, Inc. Derivative Litig.*,
No. CV 08-03800 GAF, 2013 U.S. Dist. LEXIS 86295
(C.D. Cal. June 6, 2013) ....................................................................... 19

*In re Omnivision Techs.*,
559 F. Supp. 2d 1036 (N.D. Cal. 2007) ....................................... 22, 23

*In re Oracle Corp. Sec. Litig.*,
627 F.3d 376 (9th Cir. 2010) ............................................................... 12

*In re Pac. Enters. Sec. Litig.*,
47 F.3d 373 (9th Cir. 1995) .................................................................... 7

*In re Rambus Inc. Derivative Litig.*,
No. C 06-3513 JF (HRL), 2009 U.S. Dist. LEXIS 131845
(N.D. Cal. Jan. 20, 2009) ..................................................................... 23

*In re Silicon Graphics Sec. Litig.*,
183 F.3d 970 (9th Cir. 1999) ............................................................... 12

*In re WorldCom, Inc. Sec. Litig.*,
388 F. Supp. 2d 319 (S.D.N.Y. 2005) .................................................. 34

- iv -

**Page**

*Johansson-Dohrmann v. CBR Sys.*,
    No. 12-cv-1115-MMA (BGS), 2013 U.S. Dist. LEXIS 103863
    (S.D. Cal. July 24, 2013) ............................................................... 11

*Lamb v. Bitech, Inc.*,
    No. 3:11-cv-05583-EDL MED, 2013 U.S. Dist. LEXIS 109875
    (N.D. Cal. Aug. 5, 2013) ................................................................. 8

*Lemus v. H&R Block Enters., LLC*,
    No. C 09-03179 SI, 2013 U.S. Dist. LEXIS 103037
    (N.D. Cal. July 23, 2013) ................................................................ 7

*Levitin v. Painewebber, Inc.*,
    159 F.3d 698 (2d Cir. 1998) ........................................................... 12

*Linney v. Cellular Alaska P'ship*,
    151 F.3d 1234 (9th Cir. 1998) ........................................................ 23

*Lone Star Fund V (U.S.), L.P. v. Barclays Bank PLC*,
    No. 3:08-CV-0261-L, 2008 U.S. Dist. LEXIS 77146
    (N.D. Tex. Sept. 30, 2008), *aff'd*,
    594 F.3d 383 (5th Cir. 2010) .......................................................... 16

*Longman v. Food Lion, Inc.*,
    197 F.3d 675 (4th Cir. 1999) ......................................................... 12

*Maine State Ret. Sys. v. Countrywide Fin. Corp.*,
    722 F. Supp. 2d 1157 (C.D. Cal. 2010) ....................................*passim*

*Maine State Ret. Sys. v. Countrywide Fin. Corp.*,
    No. 2:10-CV-0302 MRP, 2011 U.S. Dist. LEXIS 125203
    (C.D. Cal. May 5, 2011) ........................................................... 31, 32

*Marshall v. Holiday Magic, Inc.*,
    550 F.2d 1173 (9th Cir. 1977) ......................................................... 7

*Milstein v. Huck*,
    600 F. Supp. 254 (E.D.N.Y. 1984) ................................................. 19

869541_5

1

2                                                                          **Page**

3

4

*MWS Wire Indus., Inc. v. Cal. Fine Wire Co.,*
    797 F.2d 799 (9th Cir. 1986) ................................................................... 7

*N.J. Carpenters Health Fund v. Residential Capital, LLC,*
    272 F.R.D. 160 (S.D.N.Y. 2011), *aff'd sub nom., N.J.*
    *Carpenters Health Fund v. Rali Series 2006-Q01,*
    477 F. App'x 809 (2d Cir. 2012) ........................................................ 15

*Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.,*
    221 F.R.D. 523 (C.D. Cal. 2004) .......................................... 9, 19, 22

*NECA-IBEW Health & Welfare Fund v. Goldman Sachs & Co.,*
    693 F.3d 145 (2d Cir. 2012), *cert denied*, __ U.S. __,
    133 S. Ct. 1624, 185 L. Ed. 2d 576 (2013) ............................ 14, 27, 32

*NECA-IBEW Health & Welfare Fund v. Goldman, Sachs & Co.,*
    743 F. Supp. 2d 288 (S.D.N.Y. 2010), *aff'd in part and vacated*
    *in part*, 693 F.3d 145 (2d Cir. 2012) ................................................. 16

*New Jersey Carpenters Health Fund v. DLJ Mortgage Capital, Inc.,*
    No. 08 Civ. 5653 (S.D.N.Y. Aug. 16, 2011) ................................... 15

*Officers for Justice v. Civil Serv. Comm'n,*
    688 F.2d 615 (9th Cir. 1982) ...................................................*passim*

*Phillips v. LCI Int'l, Inc.,*
    190 F.3d 609 (4th Cir. 1999) .............................................................. 12

*Plumbers' Union Local No. 12 Pension Fund v.*
*Nomura Asset Acceptance Corp.,*
    632 F.3d 762 (1st Cir. 2011) ............................................................... 14

*Plumbers' Union Local No. 12 Pension Fund v.*
*Nomura Asset Acceptance Corp.,*
    658 F. Supp. 2d 299 (D. Mass. 2009), *aff'd in part*
    *and vacated in part*, 632 F.3d 762 (1st Cir. 2011) ........................... 16

*Police & Fire Ret. Sys. v. IndyMac MBS, Inc.,*
    721 F.3d 95 (2d Cir. 2013) ................................................................. 12

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**Page**

*Policemen's Annuity & Benefit Fund of Chi. v. Bank of Am., NA*,
    907 F. Supp. 2d 536 (S.D.N.Y. 2012) ................................................................. 32

*Redwen v. Sino Clean Energy, Inc*.,
    No. CV 11-3936 PA, 2013 U.S. Dist. LEXIS 100275
    (C.D. Cal. July 9, 2013) ......................................................................... 11, 28, 33

*Robbins v. Koger Props*.,
    116 F.3d 1441 (11th Cir. 1997) ............................................................................ 18

*Rodriguez v. W. Publ'g Corp.*,
    563 F.3d 948 (9th Cir. 2009) ........................................................................... 9, 22

*Satchell v. Fed. Express Corp.*,
    No. C03-2659 SI, 2007 U.S. Dist. LEXIS 99066
    (N.D. Cal. Apr. 13, Cal. 2007) ............................................................................... 9

*Silver v. H&R Block*,
    105 F.3d 394 (8th Cir. 1997) ................................................................................ 12

*Util. Reform Project v. Bonneville Power Admin.*,
    869 F.2d 437 (9th Cir. 1989) .................................................................................. 7

*Van Bronkhorst v. Safeco Corp.*,
    529 F.2d 943 (9th Cir. 1976) .................................................................................. 7

*Wal-Mart Stores, Inc. v. Dukes*,
    ___ U.S. ___, 131 S. Ct. 2541, 180 L. Ed. 2d 374 (2011) .................................. 32

*Williams v. First Nat'l Bank*,
    216 U.S. 582, 30 S. Ct. 441, 54 L. Ed. 625 (1910) .............................................. 7

*Williams v. Rohm & Haas Pension Plan*,
    658 F.3d 629 (7th Cir. 2011), *cert. denied*, __ U.S. __,
    132 S. Ct. 1911, 182 L. Ed. 2d 779 (2012) ........................................................ 33

**STATUTES, RULES AND REGULATIONS**

15 U.S.C.
    §77k .......................................................................................................... 16, 30, 33

869541_5

1

2                                                                                    **Page**

3

Federal Rules of Civil Procedure
4        Rule 23..................................................................................... 13, 28
5        Rule 23(a) ................................................................................. 1, 24
         Rule 23(b)(1) .................................................................................. 24
6        Rule 23(b)(2) .................................................................................. 24
7        Rule 23(b)(3) ........................................................................ 1, 15, 24
         Rule 23(e) ...................................................................................... 1, 7
8

9        **SECONDARY AUTHORITIES**

10       4 A. Conte & H. Newberg,
         *Newberg on Class Actions* (4th ed. 2002)
11           §11:50 ........................................................................................... 19

12
         Karen Friefeld, *BofA could still put Countrywide into*
13       *bankruptcy, executive says*, Reuters, June 10, 2013................................. 21

14
         Securities Class Action Services, *The SCAS TOP 100*
15       *Settlements Semi-Annual Report* (Institutional Shareholder
         Services Inc., July 1, 2013)................................................................. 1, 21
16

17

18

19

20

21

22

23

24

25

26

27

28

869541_5

## I.      PRELIMINARY STATEMENT

Pursuant to Rule 23(e) of the Federal Rules of Civil Procedure, Plaintiffs, through their counsel in the above-captioned actions ("*Luther*," "*Maine State*," and "*Western Conference*," collectively, the "Actions"), respectfully submit this memorandum in support of their motion for final approval of the Settlement of the Actions for $500,000,000 (plus interest) in cash, and for approval of the Plan of Allocation of the Settlement proceeds.[1]  The Settlement is an outstanding result for the Class.[2]  If approved, the Settlement would represent the largest class-based mortgage backed securities ("MBS") settlement to date, and one of the largest (top 25) class action securities settlements of all time.[3]

As set forth herein, Plaintiffs and their counsel respectfully submit that they have vigorously prosecuted the Actions on behalf of all Class Members, including those that purchased tranches subject to dismissal under the Court's *Maine State* orders.  The Settlement is the product of nearly six years of vigorous and extensive complex litigation, including appeals to both the United States Court of Appeals for

---

[1]    Unless otherwise defined herein, capitalized terms shall have the same meanings as set forth in the Stipulation and Agreement of Settlement (the "Stipulation"), which was previously filed with the Court. *Maine State*, Dkt. No. 408; *Western Conference*, Dkt. No. 132; *Luther*, Dkt. No. 151.

The terms of the Settlement are set forth in the Stipulation dated July 9, 2013.  The Plan of Allocation is set forth on pages 9 through 11 of the Notice mailed to potential Class Members and nominees.

[2]    Pursuant to the Court's August 7, 2013 Order (the "Preliminary Approval Order"), the Court preliminarily certified for settlement purposes only, pursuant to Rules 23(a) and 23(b)(3) of the Federal Rules of Civil Procedure, the Class. *See Maine State*, Dkt. No. 430 at 4; *Western Conference*, Dkt. No. 150 at 4; *Luther*, Dkt. No. 177 at 4. Nothing has changed to alter the propriety of the Court's certification and, for all the reasons stated in Plaintiffs' Memorandum of Law in Support of Plaintiffs' Unopposed Motion for Preliminary Approval of Class Action Settlement ("Prelim. App. Brf."), incorporated herein by reference, *Maine State*, Dkt. No. 398; *Western Conference*, Dkt. No. 122; *Luther*, Dkt. No. 141.  Plaintiffs respectfully request that the Court reiterate its certification of the Class for purposes of carrying out the Settlement.

[3]    *See* Securities Class Action Services, *The SCAS TOP 100 Settlements Semi-Annual Report* (Institutional Shareholder Services Inc., July 1, 2013), *available at* http://www.issgovernance.com/files/private/SCATop100Settlements_2H2012Rev013 12013.pdf.

the Ninth Circuit and the California Court of Appeal, the review of 16.5 million pages of documents produced by defendants and third parties, and protracted arm's-length settlement negotiations under the auspices of Professor Eric D. Green, a highly-respected mediator with over 30 years of experience in the mediation of complex securities class action litigation. Declaration of Spencer A. Burkholz and Andrew L. Zivitz in Support of (1) Plaintiffs' Motion for Final Approval of Class Action Settlement and Plan of Allocation and Settlement Proceeds; and (2) Plaintiffs' Counsel's Motion for Attorneys' Fees and Expenses (the "Joint Declaration " or "Joint Decl."), ¶¶7-8, 115-125; Declaration of Julie Goldsmith Reiser in Support of Maine State Plaintiffs' Motion for Final Approval of Proposed Class Action Settlement and Plan of Allocation, and Petition for Award of Attorneys' Fees and Reimbursement of Expenses (the "Reiser Declaration" or "Reiser Decl."), ¶¶66-69.[4]   Importantly, Plaintiffs – which include five sophisticated public pension funds (Iowa Public Employees' Retirement System ("Iowa"),the State of Oregon, by and through the Oregon State Treasurer and the Oregon Public Employee Retirement Board on behalf of the Oregon Public Employee Retirement Fund ("Oregon"), Orange County Employees' Retirement System ("Orange County"), Maine State Retirement System ("Maine") and Vermont Pension Investment Committee ("Vermont")) who were actively involved in the prosecution and resolution of the Actions – authorized Class

---

[4]    The Joint Declaration and the Reiser Declaration (collectively the "Declarations") are integral parts of this submission and, for the sake of brevity in this memorandum, the Court is respectfully referred to the Declarations for, among other things, a detailed overview of Plaintiffs' claims, the risks and uncertainties presented by continued litigation, the procedural and factual history of the Actions, including the settlement negotiations, and a description of the services Robbins Geller Rudman & Dowd LLP and Kessler Topaz Meltzer & Check, LLP, counsel in the *Luther* and *Western Conference* actions, and Cohen Milstein Sellers & Toll PLLC, counsel in the *Maine State* action, (collectively, "Class Counsel") provided for the benefit of the Class.

869541_5

1  Counsel to settle the Actions and believe the proposed Settlement represents an

2  excellent recovery for the Class.[5]

3      At the time the Settlement was reached, Plaintiffs and their counsel had a

4  thorough understanding of the strengths and weaknesses of the claims and the risks

5  they faced going forward.  Plaintiffs refer the Court to pages 5-11 of the  concurrently

6  filed Memorandum of Points and Authorities in Support of Plaintiffs' motion for an

7  Award of Attorneys' Fees and Expenses for a description of the extensive work done

8  in the Actions.  The knowledge and insight Plaintiffs and their counsel gleaned from

9  the foregoing efforts across nearly six years of litigation was valuable to their

10  assessment of Plaintiffs' claims and what course of action (*i.e.*, whether to settle and

11  on what terms, or whether to continue to litigate the Actions through the pending

12  motions to dismiss, additional merits and class discovery, motions for class

13  certification, and potentially through summary judgment and trial) would be in the

14  best interest of the Class.

15      After the parties reached an agreement-in-principle to settle the Actions and

16  during the negotiation of the Stipulation and accompanying settlement documents,

17  Class Counsel continued to advocate on the Class's behalf, by developing a fair and

18  equitable plan for allocating the settlement proceeds among eligible Class Members.

19  To this end, on June 19, 2013, Class Counsel met with the Honorable Nancy Gertner

20  (Ret.), a former United States District Court Judge for the District of Massachusetts

21  and current Professor at Harvard Law School.  Joint Decl., ¶¶8, 123-124, 158; Reiser

22  Decl., ¶¶71-73.  In connection with working with Judge Gertner, Class Counsel

23  expended substantial efforts and formulated the proposed Plan of Allocation set forth

24  _____

[5]  *See* Declarations of named plaintiffs Maine Public Employees Retirement System;
25  David H. Luther; MashreqBank, psc; Iowa Public Employees' Retirement System;
   Orange County Employees Retirement System; Western Conference of Teamsters
26  Pension Trust Fund; Oregon Public Employees' Retirement System; Vermont Pension
   Investment Committee; Washington State Plumbing and Pipefitting Pension Trust;
27  Pension Trust Fund for Operating Engineers and the Operating Engineer's Annuity
   Plans; and General Board of Pension and Health Benefits of the United Methodist
28  Church ("Named Plaintiff Decls."), submitted herewith.

1    in the Notice that provides for different levels of recovery for Live and Dismissed

2    tranches, organizing those claims into three categories.  *Id.*; *see also* Declaration of

3    Nancy Gertner, filed herewith.  The three delineated categories were developed based

4    on the viability and strength of the claims in each category given both their current

5    litigation posture and potential strength of any rights on appeal: certificates purchased

6    by the named Plaintiffs that Plaintiffs believe are currently not subject to dismissal

7    pursuant to the Court's Orders ("Category One"); certificates purchased by Plaintiffs

8    that sought to act as class representatives but had their claims dismissed or their

9    claims were subject to dismissal by the Court's Orders ("Category Two"); and

10    certificates for which claims were dismissed because no plaintiff with standing under

11    the Court's rulings sought to act as a class representative ("Category Three").

12        More specifically, the Plan of Allocation provides for a recovery that is based

13    on Plaintiffs' and Lead Counsel's view of the strengths and weaknesses of the Live

14    and Dismissed tranches and they respectfully submit that the proposed Plan of

15    Allocation is fair and equitable to all Class Members, including those who purchased

16    tranches included in Category Three that have been dismissed or are subject to

17    dismissal under this Court's *Maine State* orders.  In that regard, it should be

18    remembered that in the six years since the first *Luther* class action complaint was filed

19    in California state court in November 2007, no RMBS purchaser that bought the same

20    securities that are included in Category Three of the proposed Plan of Allocation has

21    ever come forward indicating an interest in prosecuting a class action on behalf of the

22    Class Members who hold such claims.  Had it not been for the unrelenting efforts of

23    the named Plaintiffs and Class Counsel to represent the interests of such Category

24    Three Class Members, they might never have received any recovery whatsoever on

25    their claims.  Under the proposed Plan of Allocation formulated with the assistance of

26    Judge Gertner, these Class Members will receive a total of $50 million of the

27    settlement proceeds.

28

- 4 -

1   Pursuant to the Preliminary Approval Order, copies of the Notice and Proof of
2   Claim and Release were sent to over 47,000 potential Class Members or nominees.[6]
3   *See* ¶¶2 through 6 to the accompanying Declaration of Jose Fraga Regarding (A)
4   Mailing of the Notice and Proof of Claim Form; (B) Publication of the Summary
5   Notice; and (C) Report on Requests for Exclusion Received to Date ("Fraga Decl."),
6   submitted herewith.  In addition, a Summary Notice was published in *The Wall Street*
7   *Journal's* U.S., European and Asian editions and over the *PR Newswire* on August 23,
8   2013.  *Id.*, ¶7.  Information regarding the Settlement, including downloadable copies
9   of the Stipulation, Notice, Proof of Claim and Release, Preliminary Approval Order,
10  and other relevant documents, was also posted on the website created for the
11  Settlement, www.countrywidembssettlement.com.[7]  *Id.*, ¶9.  Among other things, the
12  Notice contains the terms of: the Settlement and a description of the claims that will
13  be released in the Settlement; the manner in which the settlement proceeds will be
14  allocated among participating Class Members; the right and mechanism for Class
15  Members to object to the Settlement, the Plan of Allocation, and/or Class Counsel's
16  request for an award of attorneys' fees and expenses; and the right and mechanism for
17  Class Members to exclude themselves from the Class.[8]

18  If not for this Settlement, the parties would have continued to vigorously
19  prosecute and defend the Actions, with the ultimate outcome being far from certain.
20  As discussed herein, the Actions presented unsettled questions of law as to a number
21  of threshold issues and unique hurdles and challenges for Plaintiffs and, at all times,

---

22  [6]   Pursuant to the Preliminary Approval Order, Class Counsel also mailed a copy of
23  the Notice, along with a letter, to plaintiffs' counsel of record in the private individual actions.

24  [7]   The Stipulation, Notice, Proof of Claim and Release, and the Preliminary Approval
25  Order were also posted on Class Counsel's respective websites.

26  [8]   As set forth in the Notice, the postmark deadline for submitting a request for
27  exclusion from the Class is October 1, 2013 and the deadline for filing an objection to the Settlement, or any aspect thereof, is October 7, 2013.  Any requests for exclusion or objections received will be addressed by Class Counsel in their reply submission to
28  be filed with the Court on October 21, 2013.

- 5 -

Plaintiffs faced a real risk that the majority of the Class would receive no recovery. In fact, following the Court's decision in *Fed. Deposit Ins. Corp. v. Countrywide Fin. Corp.* No. 2:12-cv-4354 MRP (MANx), 2012 U.S. Dist. LEXIS 167696 (C.D. Cal. Nov. 21, 2012) ("*Strategic Capital*"), in which this Court held that the filing of the *Luther* class action in state court did not trigger tolling under the *American Pipe* class action tolling rule, the *Maine State* action was subject to complete dismissal after three years of vigorous prosecution. Prior to that time, the *Luther* action was dismissed in its entirety in state court following three years of vigorous prosecution, and was only reinstated following a successful appeal. Joint Decl., ¶¶45-46, 49-53; Reiser Decl., ¶7. The $500 million Settlement ensures that Class Members who have suffered losses, and who already have endured nearly six years of litigation, not only will receive a recovery but also will realize that recovery in the near future. Furthermore, in light of, *inter alia*: (i) the substantial risks, expense, and uncertainties in continuing the Actions through Defendants' pending motions to dismiss and opposition to class certification in the *Luther* action, completion of merits and expert discovery, summary judgment motion(s), trial, and probable years of appeals, including potential appeals to the United States Supreme Court; (ii) the relative strengths and weaknesses of the claims and defenses asserted; (iii) the evidence obtained and the legal and factual issues presented; (iv) the novel issues implicated in litigating MBS class actions and the recent (and conflicting) authority in this and other circuits; (v) Class Counsel's past experience in litigating complex securities class actions; (vi) Plaintiffs' concerns about the possible bankruptcy of Countrywide; and (vii) the serious disputes between the parties, Plaintiffs firmly believe that the Settlement is eminently fair, reasonable and adequate and provides a substantial result for the Class.

Accordingly, for the reasons discussed herein and in the accompanying Declarations, Plaintiffs respectfully submit that: (1) the proposed Settlement should be finally approved by the Court; and (2) the Plan of Allocation, which was developed with Plaintiffs' expert consultants and the assistance of Judge Gertner, provides a fair

and reasonable basis for allocating the net settlement proceeds among Class Members, and therefore should also be approved.

## II.    THE STANDARDS GOVERNING JUDICIAL APPROVAL OF CLASS ACTION SETTLEMENTS

It is well-established in the Ninth Circuit that "voluntary conciliation and settlement are the preferred means of dispute resolution." *Officers for Justice v. Civil Serv. Comm'n*, 688 F.2d 615, 625 (9th Cir. 1982). Class action suits readily lend themselves to compromise because of the difficulties of proof, the uncertainties of the outcome, and the typical length of the litigation. It is beyond question that "there is an 'overriding public interest' in settling class actions." *Lemus v. H&R Block Enters., LLC*, No. C 09-03179 SI, 2013 U.S. Dist. LEXIS 103037, at *4 (N.D. Cal. July 23, 2013) (citing *Van Bronkhorst v. Safeco Corp.*, 529 F.2d 943, 950 (9th Cir. 1976)); *see also Util. Reform Project v. Bonneville Power Admin.*, 869 F.2d 437, 443 (9th Cir. 1989).[9]

In deciding whether to approve a proposed settlement of a stockholders' class action under Federal Rule of Civil Procedure 23(e), the court must first find that the proposed settlement is "'fair, adequate, and reasonable.'" *Pac. Enters.*, 47 F.3d at 377;[10] *Officers for Justice*, 688 F.2d at 625; *Marshall v. Holiday Magic, Inc.*, 550 F.2d 1173, 1178 (9th Cir. 1977). The Ninth Circuit has provided factors which may be considered in evaluating the fairness of a class action settlement:

> Although Rule 23(e) is silent respecting the standard by which a proposed settlement is to be evaluated, the universally applied standard is whether the settlement is fundamentally fair, adequate and reasonable. . . .    The district court's ultimate determination will

---

[9]    *See also Williams v. First Nat'l Bank*, 216 U.S. 582, 595, 30 S. Ct. 441, 54 L. Ed. 625 (1910); *In re Pac. Enters. Sec. Litig.*, 47 F.3d 373, 378 (9th Cir. 1995); *Churchill Vill., L.L.C. v. GE*, 361 F.3d 566, 575 (9th Cir. 2004); *MWS Wire Indus., Inc. v. Cal. Fine Wire Co.*, 797 F.2d 799, 802 (9th Cir. 1986).

[10]    All citations and footnotes are omitted and emphasis is added, unless otherwise noted.

1     necessarily involve a balancing of several factors which may include,

2     among others, some or all of the following: the strength of plaintiffs'

3     case; the risk, expense, complexity, and likely duration of further

4     litigation; the risk of maintaining class action status throughout the trial;

5     the amount offered in settlement; the extent of discovery completed, and

6     the stage of the proceedings; the experience and views of counsel; the

7     presence of a governmental participant; and the reaction of the class

8     members to the proposed settlement.

9  *Officers for Justice*, 688 F.2d at 625.  "'The relative degree of importance to be

10  attached to any particular factor will depend upon . . . the nature of the claim(s)

11  advanced, the type(s) of relief sought, and the unique facts and circumstances

12  presented by each individual case.'" *Alia Loh Woo v. Home Loan Grp., L.P.*, No. 07-

13  CV-202 H (POR), 2008 U.S. Dist. LEXIS 65144, at * 8 (S.D. Cal. Aug. 25, 2008)

14  (quoting *Officers for Justice*, 688 F.2d at 625).

15       The district court must exercise "sound discretion" in approving a settlement.

16  *Lamb v. Bitech, Inc.*, No. 3:11-cv-05583-EDL MED, 2013 U.S. Dist. LEXIS 109875,

17  at *9 (N.D. Cal. Aug. 5, 2013).  In exercising its discretion,

18     the court's intrusion upon what is otherwise a private consensual

19     agreement negotiated between the parties to a lawsuit must be limited to

20     the extent necessary to reach a reasoned judgment that the agreement is

21     not the product of fraud or overreaching by, or collusion between, the

22     negotiating parties, and that the settlement, taken as a whole, is fair,

23     reasonable and adequate to all concerned.

24  *Officers for Justice*, 688 F.2d at 625.

25       Courts have taken a liberal approach toward approval of class action

26  settlements, recognizing that the settlement process involves the exercise of judgment

27  and that the concept of "reasonableness" can encompass a broad range of results. "'In

28  most situations, unless the settlement is clearly inadequate, its acceptance and

- 8 -

approval are preferable to lengthy and expensive litigation with uncertain results.'" *Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523, 526 (C.D. Cal. 2004).

## III.    THE PROPOSED SETTLEMENT IS FAIR, REASONABLE, AND ADEQUATE

### A.    The Settlement Is Entitled to a Presumption of Reasonableness Because It Is the Product of Arm's-Length Settlement Negotiations

The Settlement, which was extensively negotiated between the parties with the substantial assistance of a private mediator with over 30 years of experience mediating complex litigation, provides a significant and certain cash benefit to the Class in the amount of $500 million.  The Ninth Circuit "put[s] a good deal of stock in the product of an arms-length, non-collusive, negotiated resolution" in approving a class action settlement.  *Rodriguez v. W. Publ'g Corp.*, 563 F.3d 948, 965 (9th Cir. 2009).  Courts have recognized that "[t]he assistance of an experienced mediator in the settlement process confirms that the settlement is non-collusive."  *Satchell v. Fed. Express Corp.*, No. C03-2659 SI, 2007 U.S. Dist. LEXIS 99066, at *17 (N.D. Cal. Apr. 13, Cal. 2007); *see also Harris v. Vector Mktg. Corp.*, No. C-08-5198 EMC, 2011 U.S. Dist. LEXIS 48878, at *25-*26 (N.D. Cal. Apr. 29, 2011).

Here, the Settlement is entitled to a presumption of fairness because it is the product of extensive arm's-length negotiations, including two full-day, in-person formal mediation sessions, and many hours of telephone conversations over the course of six months, conducted with the assistance of Professor Green and by experienced and capable counsel with a firm understanding of the strengths and weaknesses of their respective clients' positions.

The negotiations leading to the Settlement were at all times hard-fought. During these negotiations, Class Counsel zealously advanced Plaintiffs' positions and were fully prepared to continue to litigate both in the district court and on appeal rather than accept a settlement that was not in the best interest of the Class.

- 9 -

1    Facilitated by Professor Green, the parties first met to discuss possible settlement in

2    2009. That initial meeting with Professor Green led to Plaintiffs' counsel receiving

3    nearly 10 million pages of documents from Countrywide that it had produced

4    previously to the SEC involving similar issues then pending before the Court.

5    Although those initial discussions broke off due to continued litigation and the

6    ultimate dismissal of the *Luther* action in state court, negotiations resumed on

7    November 5, 2012 with an in-person mediation session in Professor Green's office.

8    Joint Decl., ¶¶7-8, 115-125; Reiser Decl., ¶¶66-69; Declaration of Professor Eric

9    Green ("Green Decl."), ¶¶9, 17, submitted herewith. Although the parties remained

10   too far apart in their respective positions to bridge the gap between them at the

11   November 5, 2012 mediation session, the session allowed the parties to engage in a

12   dialogue regarding each side's position and provided the foundation for further

13   settlement negotiations. Green Decl., ¶¶9, 17. The parties continued to engage in

14   settlement discussions, and convened for another full-day mediation session with

15   Professor Green on December 11, 2012. *Id.* Following the second mediation session,

16   the parties remained at an impasse, each steadfastly maintaining their positions and

17   holding divergent views on almost every issue. *Id.*

18         Thereafter and throughout early 2013, Professor Green continued to facilitate

19   settlement negotiations between the parties. *Id.* Plaintiffs participated in at least 20

20   telephonic conferences with Professor Green from December 2012 to April 2013, and

21   also engaged in numerous telephonic discussions with Defendants in order to reach a

22   resolution. *Id.* While these detailed discussions helped to substantially reduce the gap

23   between Plaintiffs' demand and Defendants' offer, a gap remained. *Id.*, ¶17. On

24   April 3, 2013, Professor Green, who is intimately familiar with the facts and issues of

25   the Actions, submitted a mediator's proposal to the parties. *Id.* On April 4, 2013, the

26   parties each accepted the proposal. *Id.* Thereafter, the parties began the process of

27   negotiating a term sheet, which they executed on April 16, 2013. *Id.*

28

- 10 -

1    As evidenced by the result of the negotiations lengthy mediation efforts over the

2    course of several months (and indeed years when taking into account the initial

3    settlement mediation session in 2009), the Settlement was the result of hard-fought,

4    arm's-length negotiations and is "not the product of fraud or overreaching by, or

5    collusion between, the negotiating parties." *Officers for Justice*, 688 F.2d at 625.  In

6    addition, Class Counsel were fully informed of the merits and weaknesses of the

7    Actions by the time the agreement-in-principle to settle was reached in April 2013.

8    *See* Joint Decl., ¶¶126-150; Reiser Decl., ¶¶5-10.

9    **B.    The Strength of Plaintiffs' Case When Balanced Against the Risk, Expense, Complexity, and Likely Duration of Further Litigation Supports Approval of the Settlement**

10

11    In assessing whether the proposed Settlement is fair, reasonable, and adequate,

12    "the Court must balance against the continuing risks of litigation (including the

13    strengths and weaknesses of the plaintiff's case), the benefits afforded to members of

14    the Class, and the immediacy and certainty of a substantial recovery." *Johansson-*

15    *Dohrmann v. CBR Sys.*, No. 12-cv-1115-MMA (BGS), 2013 U.S. Dist. LEXIS

16    103863, at *11-*12 (S.D. Cal. July 24, 2013) (citing *In re Mego Fin. Corp. Sec. Litig.*,

17    213 F.3d 454, 458 (9th Cir. 2000)).

18    In the context of approving class action settlements, "[c]ourts experienced with

19    securities fraud litigation 'routinely recognize that securities class actions present

20    hurdles to proving liability that are difficult for plaintiffs to clear.'" *Redwen v. Sino*

21    *Clean Energy, Inc.*, No. CV 11-3936 PA (SSx), 2013 U.S. Dist. LEXIS 100275, at

22    *19-*20 (C.D. Cal. July 9, 2013) (quoting *In re Flag Telecom Holdings*, No. 02-CV-

23    3400 (CM) (PED), 2010 U.S. Dist. LEXIS 119702, at *48 (S.D.N.Y. Nov. 8, 2010)).

24    While Plaintiffs and Class Counsel believe that the Actions have significant

25    merit, they recognize that Plaintiffs would have faced numerous risks and significant

26    uncertainties in further litigating the Class's claims.  Plaintiffs and Class Counsel also

27    were well aware prior to agreeing to the Settlement that there have been many

28    securities class actions prosecuted in the belief that they were meritorious, only for the

- 11 -

1  plaintiffs to lose on dispositive motions, at trial, or on appeal.[11]   And though

2  significant risks are inherent in any complex, post-PSLRA securities class action,

3  many of the legal and factual issues in these Actions regarding mortgage-backed

4  securities were extremely novel issues of first impression (including questions as to

5  the scope of the standing of the named Plaintiffs to prosecute the MBS claims they

6  asserted) for which there was minimal or no controlling authority.  These issues thus

7  presented heightened risks for Plaintiffs and the Class in proving their claims.

8      The *Strategic Capital* decision and the *Luther* state court dismissal are just two

9  examples of the changing risks in these actions.  In addition, since the parties agreed

10  to the Settlement, the United States Court of Appeals for the Second Circuit in *Police*

11  *& Fire Ret. Sys. v. IndyMac MBS, Inc.*, 721 F.3d 95, 109 (2d Cir. 2013), has held that

12  the running of the statute of repose applicable to claims brought under the Securities

13  Act of 1933 (the "Securities Act") (the same kind of claims that the Actions being

14  settled asserted) cannot be tolled by the filing of a class action.  Had these cases not

15  been settled and were the Ninth Circuit Court of Appeals to adopt the holding in

16  *IndyMac*, it is possible that a substantial portion of the Class's claims could be time-

17  barred due to the running of the three-year repose period in the Securities Act prior to

18  the certification of any class in these cases.  In short, the Settlement recognizes both

19  the inherent risks in complex securities class actions, as well as the specific risks in

20  the Actions due to the difficult, novel and uncertain issues.

21          **1.      The Risks of Proving Liability**

22      Plaintiffs faced substantial risks with respect to their ability to sustain the

23  Actions and ultimately to prove that Defendants had made material misstatements or

24

25  _____
[11]   *See In re Oracle Corp. Sec. Litig.*, 627 F.3d 376 (9th Cir. 2010); *In re Digi Int'l, Inc. Sec. Litig.*, 14 F. App'x 714 (8th Cir. 2001); *Geffon v. Micrion Corp.*, 249 F.3d 29

26  (1st Cir. 2001); *Greebel v. FTP Software, Inc.*, 194 F.3d 185 (1st Cir. 1999); *Longman v. Food Lion, Inc.*, 197 F.3d 675 (4th Cir. 1999); *In re Silicon Graphics Sec. Litig.*,

27  183 F.3d 970 (9th Cir. 1999); *Phillips v. LCI Int'l, Inc.*, 190 F.3d 609 (4th Cir. 1999); *Levitin v. Painewebber, Inc.*, 159 F.3d 698 (2d Cir. 1998); *Silver v. H&R Block*, 105

28  F.3d 394 (8th Cir. 1997).

1    omissions in the Offering Documents.  As set forth above, these Actions involved
2    complex legal and factual issues under the federal securities laws and presented novel
3    issues upon which district courts and even circuit courts have ruled differently,
4    particularly in the context of standing, tolling and class certification.  While Plaintiffs
5    and Class Counsel would have worked tirelessly in an effort to prevail against
6    Defendants' pending motion to dismiss in the *Luther* action, succeed in obtaining
7    certification of the Class, survive Defendants' motions for summary judgment, and
8    prevail at trial and on appeal, they recognize that ultimate success was not assured.
9    They further believe and respectfully submit that this substantial Settlement, when
10   viewed in light of the risks of proving liability and damages (as discussed below), is
11   undoubtedly fair, adequate, and reasonable.

12         To begin, in *Maine State*, the plaintiffs had their case dramatically reduced to
13   only eight tranches.  Just prior to the filing of motions for summary judgment and
14   after three years of vigorous prosecution, the Court issued its order in *Strategic
15   Capital*, application of which would have resulted in the dismissal of the *Maine State*
16   case in its entirety.  As noted above, the Court held in that case that *American Pipe*
17   class action tolling (on which the claims not otherwise dismissed in *Maine State*
18   depended in order to be timely) is triggered only by the filing of a class action
19   complaint in federal court due, in part, to the fact that this rule is an interpretation and
20   implementation of Federal Rule of Civil Procedure 23, which applies solely to
21   putative class actions filed in the federal court system.  *See Strategic Capital*, 2012
22   U.S. Dist. LEXIS 167696.  Plaintiffs also faced numerous risks regarding their
23   standing in a disputed litigation context to represent purchasers of Certificates not
24   purchased by the lead plaintiffs.  As the *Luther* Plaintiffs conceded in their opposition
25   papers, an application of the Court's prior standing decisions in *Maine State* would
26   dramatically reduce the scope of the putative class that the *Luther* lead plaintiffs could
27   represent to 58 tranches out of over 9,200 tranches in the 429 Offerings pled in the
28   *Luther* consolidated complaint.  Joint Decl., ¶130.

- 13 -

869541_5

1    And while Plaintiffs argued in their opposition papers that such a narrow view

2  of standing is not supported by the case law and would have appealed the Court's

3  certificate-based standing ruling to the Ninth Circuit, the chances of prevailing on

4  appeal are uncertain.  To date, only two of the eleven circuit courts of appeal have

5  decided issues of standing with respect to MBS class actions and have not ruled the

6  same way.  *Plumbers' Union Local No. 12 Pension Fund v. Nomura Asset Acceptance*

7  *Corp.*, 632 F.3d 762, 771 (1st Cir. 2011); *NECA-IBEW Health & Welfare Fund v.*

8  *Goldman Sachs & Co.*, 693 F.3d 145, 162-65 (2d Cir. 2012), *cert denied*, __ U.S. __,

9  133 S. Ct. 1624, 185 L. Ed. 2d 576 (2013).  As the United States Supreme Court has

10  declined to take *certiorari* in *Goldman*, these uncertainties will not be resolved in the

11  foreseeable future.  *See Goldman, Sachs & Co. v. NECA-IBEW Health & Welfare*

12  *Fund v. Goldman Sachs & Co.*, __ U.S. __, 133 S. Ct. 1624, 185 L. Ed. 2d 576 (2013).

13  Indeed, all of these uncertainties magnified the inherent risk in proceeding with the

14  Actions and weigh heavily in favor of final approval of the proposed Settlement.

15    In particular, the Court's ruling in the *Maine State* action with regard to tolling

16  of the statutes of limitation and repose would further limit the number of Certificates

17  for which the lead plaintiffs could validly assert claims.  In *Maine State*, the Court

18  held that the *American Pipe* tolling doctrine only tolls the statute of repose and statute

19  of limitations for "claims where the named plaintiffs had standing."  *See* Joint Decl.,

20  ¶130; *Maine State Ret. Sys. v. Countrywide Fin. Corp.*, 722 F. Supp. 2d 1157, 1166-67

21  (C.D. Cal. 2010).  An application of this holding to the *Luther* action would further

22  reduce the number of Certificates at issue.  Joint Decl., ¶130.  If applied to the *Luther*

23  action, the Court's prior standing and tolling rulings would have resulted in the

24  dismissal of all Certificates except the 58 Live Represented Tranches.  *Id.*

25    Had the Actions not been settled, the *Luther* Plaintiffs also would have faced

26  continuing challenges from Defendants at the class certification stage.  *Id.*, ¶¶137-139.

27  Even if the Ninth Circuit had overturned the Court's tranche-based standing rulings,

28  Defendants likely would have opposed any motion for class certification or,

- 14 -

alternatively, argues that only a truncated class consisting of just purchasers of the same tranches the named Plaintiffs bought could be certified. *Id.*, ¶132. Although were they to succeed in reversing the District Court's standing rulings on appeal Class Plaintiffs believe they would be entitled under Federal Rule of Civil Procedure 23(b)(3) to certification of a broad class consisting of purchasers of tranches in all three Categories under the proposed Plan of Allocation, Class Plaintiffs could not be certain of the ultimate disposition of any motion for class certification. *Compare N.J. Carpenters Health Fund v. Residential Capital, LLC*, 272 F.R.D. 160, 168-70 (S.D.N.Y. 2011) (based on testimony elicited in the case, denying class certification on the grounds that individual questions of investors' knowledge predominated over common issues), *aff'd sub nom.*, *N.J. Carpenters Health Fund v. Rali Series 2006-Q01*, 477 F. App'x 809 (2d Cir. 2012) *with New Jersey Carpenters Health Fund v. DLJ Mortgage Capital, Inc.*, No. 08 Civ. 5653 (S.D.N.Y. Aug. 16, 2011) (rejecting defendants' arguments on individualized knowledge and certifying the class).

If the *Luther* Plaintiffs prevailed at the motion to dismiss and class certification stages, they faced numerous additional hurdles in establishing Defendants' liability. To survive summary judgment and succeed at trial, Plaintiffs would need to show that the Offering Documents contained an untrue statement of a material fact or omitted to state a material fact required to be stated therein related to: (i) the underwriting of the loans underlying the MBS; (ii) the appraisals and LTV ratios of the loans underlying the MBS; or (iii) the ratings assigned to the MBS.

Defendants asserted several challenging defenses to liability during the mediation and in their motions to dismiss the *Luther* complaint. For example, Defendants claimed: the Offering Documents contained no material misrepresentations and that the robust risk disclosures and disclosure of details about the credit risk associated with the pooled loans in the Offering Documents insulated them from liability; the Offering Documents fully disclosed the relevant characteristics of the mortgage loans collateralizing the MBS and contained extensive

- 15 -

1  risk disclosures, thereby rendering any alleged misstatements and omissions

2  immaterial; and purchasers of certain of the Certificates were on notice of the alleged

3  false and misleading statements at the time of their purchases due to the filing of the

4  Initial *Luther* Complaint and thus could not recover under §§11 or 12(a)(2) of the

5  Securities Act.  Joint Decl., ¶146.

6        In fact, the risks in these actions were significant, as shown by the dismissal of

7  parts of other MBS actions.  *See Plumbers' Union Local No. 12 Pension Fund v.*

8  *Nomura Asset Acceptance Corp.*, 658 F. Supp. 2d 299 (D. Mass. 2009), *aff'd in part*

9  *and vacated in part*, 632 F.3d 762 (1st Cir. 2011); *NECA-IBEW Health & Welfare*

10 *Fund v. Goldman, Sachs & Co.*, 743 F. Supp. 2d 288 (S.D.N.Y. 2010), *aff'd in part*

11 *and vacated in part*, 693 F.3d 145 (2d Cir. 2012); *Lone Star Fund V (U.S.), L.P. v.*

12 *Barclays Bank PLC*, No. 3:08-CV-0261-L, 2008 U.S. Dist. LEXIS 77146 (N.D. Tex.

13 Sept. 30, 2008), *aff'd*, 594 F.3d 383 (5th Cir. 2010); *Boilermakers Nat'l Annuity Trust*

14 *Fund v. WaMu Mortg. Pass*, 748 F. Supp. 2d 1246 (W.D. Wash. 2010).  Accordingly,

15 when the risks of establishing standing, timeliness and liability are balanced against

16 the outstanding recovery obtained for the Class, this factor weighs in favor of

17 approval.

18            **2.     The Risks of Proving Loss Causation and Damages**

19       Even if Plaintiffs were successful in establishing liability, they faced substantial

20 risks in proving loss causation and damages.  There is no question that Defendants

21 would vigorously contest loss causation if the Actions continued.  Defendants were

22 expected to advance, primarily through expert testimony, a "negative causation"

23 defense – *i.e.*, that any losses were caused by external factors unrelated to the alleged

24 misrepresentations or omissions in the Offering Documents.  This defense, if asserted

25 and accepted by the Court, would dramatically reduce or eliminate recoverable

26 damages.  Beginning in 2007, and continuing throughout the remainder of the relevant

27 time period, the steep decline in real estate prices nationally led to the largest national

28 decline in home prices in recent history.  Joint Decl., ¶¶140-142.  According to

1  Defendants, during this same time period, the credit and capital markets in the United
2  States seized up and demand for MBS all but disappeared as investors sought out what
3  they perceived to be less risky investments.  *Id.*  Defendants asserted that the market
4  for MBS froze and values declined as investors panicked in the wake of the housing
5  and credit markets crises.  *Id.*, ¶141.  Defendants would likely argue that this freezing
6  and the resultant decline in value, not Defendants' alleged misstatements, caused all or
7  most of the alleged losses suffered by Plaintiffs and the Class.[12]  Joint Decl., ¶141.
8  Because of the availability of this negative causation affirmative defense, Plaintiffs
9  would have to convince the Court and a jury that their losses were caused by
10  Defendants' false and misleading statements as alleged in the complaints rather than,
11  at least in part, intervening external market forces.  *Id.* ¶¶140-145.

12      While Plaintiffs believe their opposing arguments are strong, the outcome of
13  battles between experts is notoriously difficult to assess, and Plaintiffs would have
14  faced the risk that the Court or a jury would accept the Defendants' negative causation
15  arguments.  *Id.*  Plaintiffs also expect that Defendants would have provided testimony
16  on the difficulties inherent in the valuation of MBS, especially during the time period
17  at issue, due to the lack of an active secondary market for the securities.  *Id.*, ¶144.
18  Defendants would likely have argued that these difficulties precluded Plaintiffs from
19  establishing their damages with sufficient certainty in order for such evidence to be
20  probative and admissible at trial.  *Id.*  Defendants also took the position that any
21  damages (assuming damages could be proved) would be capped at the difference
22  between the offering price of the MBS and the price of the securities at the time the
23  *Luther* action was filed in 2007, before much of the price decline in the securities had
24  occurred as the effects of the real estate market downturn and broader capital market

---

26  [12]  *See IBEW Local 697 Pension Fund v. Int'l Game Tech., Inc.*, No. 3:09-cv-00419-
     MMD-WGL, 2012 U.S. Dist. LEXIS 151498, at *8 (D. Nev. Oct. 19, 2012) ("The
27  parties also have [therefore] demonstrated that establishing loss causation damages
     may be challenging because of the historic economic downturn that occurred during
28  the Class Period.").

1    disruptions were felt.  Were Defendants' position ultimately to have been accepted by

2    this Court, it would have drastically limited the dollar amount of damages recoverable

3    by the Class, even assuming it prevailed on all of its claims in full.

4         In addition, Defendants would have asserted that any damages suffered by the

5    Plaintiffs must be reduced dollar for dollar by the significant portion of the $8.5

6    billion dollar BNYM Settlement that would be allocated to the MBS offerings at issue

7    in the Actions upon final approval of that settlement, if not extinguished altogether by

8    approval of that settlement.  *Id.*, ¶145.  While Plaintiffs would have responded to these

9    arguments by calling their own experts , it is uncertain whether Plaintiffs would have

10   prevailed on these issues.[13]  Joint Decl., ¶¶140-145.

11        While it is possible that Plaintiffs could present evidence at trial that damages in

12   the aggregate exceed the amount of the proposed Settlement, that assumes that most,

13   if not all, of the significant liability and damage issues would have been resolved in

14   the Class's favor.  Even if Plaintiffs prevailed and obtained a substantial judgment

15   after trial, there is little doubt that Defendants would have appealed.  The appeals

16   process would have likely spanned several years, during which the Class would have

17   received no distribution on any damage award.  In addition, an appeal of any verdict

18   would carry the risk of reversal, in which case the Class would receive no recovery

19   after having prevailed on the claims at trial.  The risk of reversal after a trial verdict

20   win are real.[14]  Therefore, the amount of damages the Class would actually recover if

21

22   _____

[13]  *See generally In re Cendant Corp. Litig.*, 264 F.3d 201, 239 (3d Cir. 2001)
     ("establishing damages at trial would lead to a 'battle of experts' . . . with no
23   guarantee whom the jury would believe").

24   [14]  *See, e.g., In re JDS Uniphase Corp. Sec. Litig.*, No. C-02-1486-CW(EDL), 2007
     WL 4788556 (N.D. Cal. Nov. 27, 2007) (defense verdict by jury); *Robbins v. Koger*
25   *Props.*, 116 F.3d 1441, 1448-49 (11th Cir. 1997) (jury verdict of $81 million for
     plaintiffs against an accounting firm reversed on appeal on loss causation grounds and
26   judgment entered for defendant); *Anixter v. Home-Stake Prod. Co.*, 77 F.3d 1215,
     1233 (10th Cir. 1996) (Tenth Circuit overturned securities fraud class action jury
27   verdict for plaintiffs in case filed in 1973 and tried in 1988 on the basis of 1994
     Supreme Court opinion); *In re Apple Computer Sec. Litig.*, No. C-84-20148(A)-JW,
28   1991 U.S. Dist. LEXIS 15608, at *1-*2 (N.D. Cal. Sept. 6, 1991) (verdict against two
     individual defendants, but court vacated judgment on motion for judgment

- 18 -

1  successful at trial is uncertain.  In light of all these risks, the proposed Settlement is

2  fair, reasonable, and adequate.

3    **C.    The Complexity, Expense, and Likely Duration of the
          Litigation Justifies the Settlement**

4

5      The certainty of an immediate recovery for the Class also strongly weighs in

6  favor of the Settlement.  Courts consistently have held that "[t]he expense and

7  possible duration of the litigation should be considered in evaluating the

    reasonableness of [a] settlement." *Milstein v. Huck*, 600 F. Supp. 254, 267 (E.D.N.Y.
8
    1984); *see also Officers for Justice*, 688 F.2d at 626. In fact, "'[i]n most situations,
9
    unless the settlement is clearly inadequate, its acceptance and approval are preferable
10
    to lengthy and expensive litigation with uncertain results.'"  *In re MRV Commc'ns,*
11
    *Inc. Derivative Litig.*, No. CV 08-03800 GAF (MANx), 2013 U.S. Dist. LEXIS
12
    86295, at *12 (C.D. Cal. June 6, 2013) (quoting 4 A. Conte & H. Newberg, *Newberg*
13
    *on Class Actions*, §11:50 at 155 (4th ed. 2002)); *see also Nat'l Rural*, 221 F.R.D. at
14
    526.
15
        Here, given their relentless challenges to the Class's claims on both procedural
16
    and substantive grounds over the past nearly six years in both state court and federal
17
    court (including through appeals to both the Ninth Circuit (filed in 2007) and the
18
    California state appellate courts (filed in 2010)), Defendants have demonstrated a
19
    commitment to defend the Actions through and beyond trial, if necessary, and are
20
    represented by well-respected and highly capable counsel.  If not for this Settlement,
21
    the expense and time of continued litigation would have been substantial.  As the
22
    court noted in *In re Ikon Office Solutions, Inc.*, 194 F.R.D. 166 (E.D. Pa. 2000), which
23
    is applicable here:
24

25

26  notwithstanding the verdict); *Backman v. Polaroid Corp.*, 910 F.2d 10, 18 (1st Cir.
    1990) (where the class won a substantial jury verdict and motion for J.N.O.V. was
27  denied, on appeal the judgment was reversed and the case was dismissed – after 11
    years of litigation*); Berkey Photo, Inc. v. Eastman Kodak Co.*, 603 F.2d 263, 309 (2d
28  Cir. 1979) (multimillion dollar judgment reversed after lengthy trial).

869541_5

1     In the absence of a settlement, this matter will likely extend for . . . years

2     longer with significant financial expenditures by both defendants and

3     plaintiffs. This is partly due to the inherently complicated nature of large

4     class actions alleging securities fraud: there are literally thousands of

5     shareholders, and any trial on these claims would rely heavily on the

6     development of a paper trial [sic] through numerous public and private

7     documents.

8     *Id.* at 179.

9     As set forth above and in the accompanying Declarations, the claims advanced

10    by Plaintiffs involved difficult issues of fact and law regarding Defendants' alleged

11    misstatements or omissions of material fact in the Offering Documents. Assuming

12    Plaintiffs prevailed on Defendants' motions to dismiss and were able to successfully

13    certify a class in the *Luther* action, Plaintiffs would then have to oppose and argue

14    Defendants' expected motion(s) for summary judgment, prepare a pre-trial order,

15    submit proposed jury instructions, and file and argue motions *in limine*. In sum,

16    Plaintiffs would have to expend substantial time and expense in preparing the Actions

17    for trial. The trial itself would have been long, expensive, and uncertain and

18    regardless of the outcome, an appeal would be virtually assured. Such an appeal

19    would add considerably to the expense and duration of the Actions. If this Settlement

20    was not achieved, and even if Plaintiffs prevailed through trial, there was a potential

21    that Plaintiffs would face years of costly and risky appeals, such that ultimate success

22    was far from certain.

23    Furthermore, Plaintiffs learned during the course of the Actions that the primary

24    defendant, Countrywide, has contemplated a possible filing for bankruptcy, which

25    would have adversely affected the prospects of any future recovery given that the

26

27

28

- 20 -

869541_5

1    Court has held that Bank of America is not a successor in interest to Countrywide and

2    thus did not assume any of Countrywide's liabilities.[15]

3    ### D.    The Amount Offered in Settlement

4    The determination of a "reasonable" settlement is not susceptible to a

5    mathematical equation yielding a particularized sum.  In fact, a settlement may be

6    acceptable even if it amounts to only a fraction of the potential recovery that might be

7    available at trial.  *See Mego*, 213 F.3d at 458.

8    Here, the $500 million secured to settle these Actions – reached after nearly six

9    years of hard-fought litigation – represents the largest MBS class action settlement

10   arising out of the subprime crisis and is also in the top 25 largest class action securities

11   settlements of all time.  *See* Securities Class Action Services, *The SCAS TOP 100*

12   *Settlements Semi-Annual Report* (Institutional Shareholder Services Inc., July 1,

13   2013), *available at* http://www.issgovernance.com/files/private/SCATop100Settle

14   ments_2H2012Rev01312013.pdf.  There can be no question that the $500 million

15   Settlement represents an outstanding recovery for the Class, especially when viewed

16   in light of the significant hurdles in which Plaintiffs would have faced in moving

17   forward with the Actions.

18   ### E.    Plaintiffs Had Sufficient Information to Determine the Propriety of Settlement

19   The knowledge that Class Counsel have acquired over the past six years of

20   litigation enabled them to perform an intelligent evaluation of the strengths and

21   weaknesses of the Actions and the propriety of settlement.  *See Officers for Justice*,

22   688 F.2d at 625; *Mego*, 213 F.3d at 458.  Indeed, as discussed in the Joint and Reiser

23   Declarations, Class Counsel conducted extensive investigatory efforts and vigorously

24   litigated the Actions for the better part of six years and, thus, were able to assess the

25

---

26   [15]    Karen Friefeld, *BofA could still put Countrywide into bankruptcy, executive says*, Reuters, June 10, 2013 (citing Bank of America's Chief Risk Officer's testimony: "One of the options that was available to us and continues to be available to us was to

27   put    Countrywide    into    bankruptcy    .    .    ."),    *available    at*

28   http://www.reuters.com/article/2013/06/10/us-bofa-mbs-idUSBRE95916M20130610.

1  strengths and weaknesses of the claims asserted and resolve the Actions on a highly

2  favorable basis for the Class.

3      **F.    The Recommendations of Experienced Counsel After
           Extensive Litigation and Arm's-Length Settlement
4           Negotiations Favor the Approval of the Settlement**

5          As the Ninth Circuit observed in *Rodriquez*, "[t]his circuit has long deferred to

6  the private consensual decision of the parties" and their counsel in settling an action.

7  563 F.3d at 965.  Courts have recognized that "''[g]reat weight" is accorded to the

8  recommendation of counsel, who are most closely acquainted with the facts of the

9  underlying litigation.'"  *Nat'l Rural*, 221 F.R.D. at 528.  As a court previously

10  recognized, "'[t]he recommendations of plaintiffs' counsel should be given a

11  presumption of reasonableness.'"  *In re Omnivision Techs.*, 559 F. Supp. 2d 1036,

12  1043 (N.D. Cal. 2007).  Class Counsel, having carefully considered and evaluated,

13  *inter alia*, the relevant legal authorities and evidence to support the claims asserted

14  against Defendants, the likelihood of prevailing on these claims, the risk, expense, and

15  duration of continued litigation, and the likelihood of subsequent appellate

16  proceedings even if Plaintiffs prevailed against Defendants at trial, concluded that the

17  Settlement is an excellent result for the Class.

18         Class Counsel possess significant experience in securities and other complex

19  class action litigation and have negotiated numerous other substantial class action

20  settlements throughout the country.  *See, e.g.*, Joint Decl., ¶¶184-185.  Here, "[t]here

21  is nothing to counter the presumption that Lead Counsel's recommendation is

22  reasonable."  *Omnivision*, 559 F. Supp. 2d at 1043.  Moreover, Plaintiffs, who were

23  active in the litigation, including attendance by certain Plaintiffs at the mediation

24  sessions, authorized counsel to settle the Actions and believe that the Settlement

25  represents an excellent recovery for the Class.  *See* Named Plaintiff Decls.

26

27

28

### G.     Reaction of Class Members to Date to the Proposed Settlement

The reaction of the class to the settlement is a significant factor in assessing its fairness and adequacy. *See In re Rambus Inc. Derivative Litig.*, No. C 06-3513 JF (HRL), 2009 U.S. Dist. LEXIS 131845, at \*10 (N.D. Cal. Jan. 20, 2009). "[T]he absence of a large number of objections to a proposed class action settlement raises a strong presumption that the terms of a proposed class settlement action are favorable to the class members." *Omnivision*, 559 F. Supp. 2d at 1043. To date, copies of the Notice have been mailed to over 47,000 potential Class Members or nominees. Fraga Decl., ¶¶2-6. Pursuant to the Preliminary Approval Order and as set forth in the Notice, the deadlines for Class Members to submit a request for exclusion from the Class or object to any aspect of the Settlement, including the Plan of Allocation, are October 1, 2013 and October 7, 2013, respectively. As of the date of this submission, there have been no objections, and only four requests for exclusions from the Class (most of which had filed their own individual actions prior to public announcement of the Settlement). *Id.*, ¶11.[16]

### IV.     THE COURT HAS THE AUTHORITY TO CERTIFY THE SETTLEMENT CLASS

The district court's decision certifying the class is subject to a "very limited" review and will be reversed "'only upon a strong showing that the district court's decision was a clear abuse of discretion.'" *See Mego*, 213 F.3d at 461 (quoting *Linney v. Cellular Alaska P'ship*, 151 F.3d 1234, 1238 (9th Cir. 1998) (citing *Hanlon v. Chrysler Corp.*, 150 F.3d 1011 (9th Cir. 1998)); *Class Plaintiffs v. Seattle*, 955 F.2d 1268, 1276 (9th Cir. 1992) (citing *Officers for Justice*, 688 F.2d at 626). In *Amchem Prods. v. Windsor*, 521 U.S. 591, 620, 117 S. Ct. 2231, 138 L. Ed. 2d 689 (1997), the Court noted that each of the certification requirements must be satisfied in a

---

[16]  If any objections or requests for exclusion are received after the date of this submission, Class Counsel will address them in their reply briefing to be filed with the Court on October 21, 2013.

869541_5

settlement context.  "Rule 23(a) states four threshold requirements applicable to all class actions:  (1) numerosity (a 'class [so large] that joinder of all members is impracticable'); (2) commonality ('questions of law or fact common to the class'); (3) typicality (names parties' claims or defenses 'are typical . . . of the class'); and (4) *adequacy of representation* (representatives 'will fairly and *adequately protect the interests of the class*')."  *Id*. at 613 (alteration in original).  "In addition to satisfying Rule 23(a)'s prerequisites, parties seeking class certification must show that the action is maintainable under Rule 23(b)(1), (2), or (3)."  *Id*. at 614.

The numerosity, commonality, and typicality criteria, as well as maintaining the action under Rule 23(b)(3) are set forth in prior filings with the Court.  *See* Prelim. App. Brf., *Maine State*, Dkt. No. 398 at 14-21; *Western Conference*, Dkt. No. 122 at 14-21; *Luther*, Dkt. No. 141 at 14-21.  As the Court has indicated, the adequacy prong requires close inspection, in particular with respect to the Category Three Tranches. The adequacy prong requires a showing that plaintiffs and their counsel have no conflicts with other members of the class, and will adequately prosecute the action vigorously on behalf of the class.  *Mego*, 213 F.3d at 461 (citing *Hanlon*, 150 F.3d at 1020).  Here, there are no conflicts between the named plaintiffs and class members, and Class Counsel has vigorously prosecuted these actions on behalf of *all* class members for six years.  Joint Decl., ¶124; Reiser Decl., ¶71.

Indeed, throughout this litigation, Plaintiffs and their counsel have had every incentive to maximize the value of this litigation to *all* three Plaintiff categories.  As both Professor Green and Judge Gertner attest, Plaintiffs and Class Counsel have vigorously and unrelentingly represented the interests of all Class Members, including the interests of those Class Members in Category Three of the proposed Plan of Allocation, who purchased securities not purchased by any of the named Plaintiffs. As Judge Gertner explains, she "spent considerable time" discussing with Class Counsel "what a fair and reasonable allocation of the settlement fund to purchasers of these [Category Three] tranches would be."  Gertner Decl. ,¶9.  Part of her discussions

- 24 -

1    with Class Counsel addressed the fact that counsel would have filed an appeal to the

2    Ninth Circuit in which they would have argued that the named Plaintiffs had standing

3    to represent all Class Members, including those in Category Three. *Id.* Judge Gertner

4    stated, "the named Class Plaintiffs and Class Counsel vigorously represented the

5    interests of all Class Members, including those in Category Three, while mindful of

6    the differences in the relative strength of their appellate rights and the current value of

7    their claims under Judge Pfaelzer's rulings as to standing and timeliness." *Id.*

8    Likewise, Professor Green described the named Plaintiffs' robust representation of the

9    interests of all Class Members throughout the mediation process as follows: "[D]uring

10    both the parties' formal mediation sessions and in my numerous telephone

11    conferences with Class Counsel outside of those formal sessions, Class Counsel

12    vigorously advocated for these Category Three Class Members (as well as Class

13    Members in Categories One and Two)," arguing that their claims were timely and that

14    the named Class Plaintiffs had standing to represent their interests (even though Judge

15    Pfaelzer had dismissed those claims as untimely and/or for lack of standing in the

16    *Maine State* action). Green Decl., ¶19. Professor Green further stated:

> 17    Throughout the extensive mediation process in these matters,
>
> 18    Class Counsel advocated for the interests of the Class Members,
>
> 19    including those Class Members who purchased in the tranches in
>
> 20    Category Three of the proposed settlement plan of allocation – i.e.,
>
> 21    purchasers for which no buyer of the same securities has ever come
>
> 22    forward and expressed an interest in prosecuting a class action. . . .
>
> 23    Also, during the final stages of mediation, when Class Counsel discussed
>
> 24    among themselves what a fair and reasonable allocation of the $500
>
> 25    million settlement fund would be, Class Counsel recognized that these
>
> 26    Category Three class members had appeal rights. For that reason, $50
>
> 27    million was ultimately allocated to these Category Three Class Members,
>
> 28    reflecting in part the relative strength of those appellate rights.

1    *Id.*  As noted above, *see* §§I, III.B, *supra*, were it not for the unflagging efforts of the

2 named Plaintiffs and Class Counsel, purchasers who hold claims in Category Three

3 (who upon approval of the Settlement will receive a total of $50 million) might never

4 have received anything on their claims at all, given this Court's rulings dismissing

5 those claims for lack of standing and a consequent lack of jurisdiction and given the

6 fact that no purchaser of any of those securities has ever sought to prosecute claims

7 based on those securities on a class-wide basis.  *See also* Gertner Decl., ¶8.

8    As this Court has already recognized, its earlier rulings that it lacks jurisdiction

9 over the Category Three claims in a disputed litigation context do not preclude it from

10 certifying the present class for settlement purposes.  *See* Preliminary Approval

11 Hearing Transcript dated July 10, 2013 at 59:15-60:9; 61:17-21.  If the law were

12 otherwise, parties to an action where jurisdiction is disputed could ***never*** enter into a

13 settlement until there is a definitive resolution of the jurisdictional issue.  As other

14 courts have observed, such a rule would not only be absurd but would entirely

15 frustrate the longstanding public policy in favor of the settlement of disputes.  For

16 example, in *Air Line Stewards & Stewardesses Ass'n v. Trans World Airlines, Inc.*,

17 630 F.2d 1164 (7th Cir. 1980), *aff'd*, 455 U.S. 385, 102 S. Ct. 1127, 71 L. Ed. 2d 234

18 (1982) ("*TWA*"), the Seventh Circuit (after previously holding that the district court

19 lacked subject matter jurisdiction over the claims asserted on behalf of a subclass

20 which made up the vast bulk of the class) affirmed the district court's approval of a

21 settlement including those very same subclass claims that had been dismissed for lack

22 of subject matter jurisdiction.  In doing so, the Seventh Circuit rejected the argument

23 of an intervenor that the district court lacked jurisdiction to issue a binding order

24 approving the settlement.  The court explained:

25      There is a crucial issue, that of jurisdiction as to Subclass B, which has

26      not been finally determined because a challenge to our decision is still

27      pending before the United States Supreme Court.  Both parties to the

28      settlement believed it in their interests to approve the settlement rather

1    than await the action of the Supreme Court.  Not only does their

2    compromise reflect their perception that the ultimate resolution of this

3    issue could not be predicted with certainty, but prior case law also left

4    the law on this matter open to question. . . .

5    . . . The uncertainty of the outcome on this issue before the Supreme

6    Court was considered by the district court to be a major factor leading

7    the parties to reach this settlement, to avoid "the plaintiff class and

8    T.W.A. being forced against their will to continue a legal battle before

9    the Supreme Court in a winner-take-all contest which neither party

10    desires to risk."

11    *Id.* at 1167-68.  That reasoning is virtually on all fours with the instant case.

12        Here, although this Court held for disputed litigation purposes that the named

13    Plaintiffs lacked standing over various of the claims they had brought (and the Court

14    thus lacked subject matter jurisdiction over them), the question of what a named

15    plaintiff in an MBS class action must show in order to have standing to prosecute

16    claims on behalf of absent class members (and thus confer subject matter jurisdiction

17    on a court in a disputed litigation setting) is unresolved by either Ninth Circuit or the

18    United States Supreme Court.  And the Supreme Court's refusal to hear this issue in

19    the *Goldman* case, declining to grant *certiorari*, means that this issue will remain

20    unresolved for many years to come.  Through arm's-length negotiations, the parties

21    have decided it is in all of their interests to resolve that dispute by settlement rather

22    than continuing to litigate it through the entire chain of appeal, potential *en banc*

23    review, certiorari, and remand.  As *TWA* recognizes, the Court has both the power and

24    the discretion to approve a settlement under such circumstances, and doing so does not

25    represent "an attempt to confer subject matter jurisdiction by consent," especially

26    where – as here – under any of the competing formulations in the various court

27    opinion as to the requirements for standing in an MBS class action – this Court

28    indisputably has subject matter jurisdiction over all of the parties before the Court and

- 27 -

1  class claims involving the purchase of many billions of dollars of MBS certificates.

2  *Id*. at 1168.[17]

3  **V.    THE PLAN OF ALLOCATION IS FAIR AND REASONABLE**

4        Plaintiffs also seek the Court's final approval of the Plan of Allocation of the

5  settlement proceeds.[18]  Assessment of a plan of allocation of settlement proceeds in a

6  class action under Rule 23 of the Federal Rules of Civil Procedure is governed by the

7  same standards of review applicable to the settlement as a whole – the plan must be

8  fair, reasonable and adequate.  *Redwen*, 2013 U.S. Dist. LEXIS 100275, at *28; *Class*

9  *Plaintiffs*, 955 F.2d at 1284.  An allocation formula need only have a reasonable,

10  rational basis, particularly if recommended by "'experienced and competent'" class

11  counsel.  *In re Broadcom Corp. Sec. Litig.*, No. SACV 01-275 DT (MLGx), 2005 U.S.

12  Dist. LEXIS 41976, at *6-*7 (C.D. Cal. Sept. 12, 2005).  Further, claims that "could

13  not be presented may be included in a settlement, as long as they arise out of the same

14  factual predicate as the settled conduct."  *Id*. at *7.

15        The Plan of Allocation (set forth at pages 17-20 of the proposed Notice)

16  provides that the Gross Settlement Fund, totaling $500 million, less all taxes and

17  Court-approved costs, fees and expenses will be allocated as follows:

18        •    Category One – Three hundred and twenty five million dollars ($325

19             million) or 65% of the fund will be distributed to those members of the

20             proposed Class that purchased Certificates within the 58 tranches that are

21             still "live" or likely to remain alive in the Actions based on the Court's

22             prior standing and tolling rulings.  Category One includes:  the 58

23             tranches purchased by the *Luther* Plaintiffs (eight of which the Court

---

[17]  Notably, at the time when the  Settlement was reached, the Court had not yet ruled on the *Luther* Plaintiffs' ability to represent purchasers within each of the Offerings alleged in the *Luther* Complaint and thus the *Luther* Plaintiffs believe that the Court currently has jurisdiction over the *Luther* putative class in its entirety.

[18]  The Plan of Allocation was also addressed at length in Plaintiffs' Supplemental Plan of Allocation Submission filed with the Court on July 23, 2013 and that submission is incorporated herein by reference.  Joint Decl., ¶¶158-166.

certified as a class in the *Maine State* action following the parties' stipulation requesting class treatment);[19]

- Category Two – One hundred and twenty-five million dollars ($125 million) or 25% of the fund will be distributed to those members of the proposed Class that purchased Certificates within the 111 tranches that were purchased by the named Plaintiffs in the Actions and in the *Putnam Bank v. Countrywide Fin. Corp., et al.*, No. 2:11-cv-04698-MRP(MANx) (C.D. Cal.) ("*Putnam Bank*") action, but were dismissed by, or subject to dismissal, based on the Court's prior standing and tolling rulings. Category Two includes: the 83 tranches purchased by the named plaintiffs in the *Maine State* action that were dismissed on standing and tolling grounds;[20] the 11 tranches purchased by several *Luther* named plaintiffs that were subject to dismissal based on the Court's prior rulings concerning application of the statute of repose under the Securities Act; the nine tranches purchased by the named plaintiff in the *Western Conference* action and subject to dismissal based on the Court's prior standing and tolling rulings in *Maine State*; and the eight tranches purchased by the named plaintiff in the *Putnam Bank* putative class action that were dismissed on standing and tolling grounds;[21] and

- Category Three – Fifty million dollars ($50 million) or 10% of the fund will be distributed to those members of the proposed Class that

---

[19]  The Category One Tranches are listed in Table A to the Declaration of Steven P. Feinstein in Support of the Plan of Allocation of the Net Settlement Fund ("Feinstein Decl."), submitted herewith and are listed on the settlement website www.countrywidembssettlement.com.

[20]  Five of the 83 tranches purchased by the named plaintiffs in *Maine State* were also purchased by the named plaintiff in *Western Conference*.

[21]  The Category Two Tranches are listed in Table B to the Feinstein Decl. and are listed on the settlement website, www.countrywidembssettlement.com.

869541_5

purchased Certificates within the remaining 9,214 tranches that were not purchased by any of the named Plaintiffs (or by any other investors that have ever come forward as proposed class representatives).    All Securities Act claims arising from the 9,214 tranches were dismissed or subject to dismissal based on the Court's standing and tolling rulings in *Maine State*.[22]    As discussed in greater detail below, all but three of the mezzanine and non-investment grade tranches in the Offerings are contained in Category Three.

Plaintiffs engaged in extensive negotiations and debate concerning the foregoing allocation structure, and sought the assistance of Judge Gertner, before arriving at the proposed Plan of Allocation set forth in the Notice.  Gertner Decl., ¶¶6-8.  The formula for distribution, which tracks the language of Section 11 of the Securities Act and follows the approach taken in other court-approved MBS settlements, is fair, just and reasonable to all Class Members.

More specifically, the Plan of Allocation allocates the majority of the Settlement Amount (65%) to the Category One Tranches because the claims: (1) as to 58 of the tranches were likely to be upheld by the Court in *Luther* based on the Court's prior standing and tolling decisions as the *Luther* Plaintiffs actually purchased those tranches; and (2) as to eight of the tranches were upheld in *Maine State* at the pleading stage.[23]  Plaintiffs reasoned that these "live" claims subjected the Defendants to the greatest risk of liability at trial and, thus, were entitled to receive the greatest percentage recovery by those in the Class.[24]

---

[22]  The Category Three Tranches are listed in Table C to the Feinstein Decl. and are listed on the settlement website www.countrywidembssettlement.com.

[23]  The eight tranches certified as a class in *Maine State* are also covered by the named plaintiffs in *Luther*.

[24]  All Certificates in the  Category One Tranches were initially rated (by the rating agencies) as investment grade.  Furthermore, all but one Certificate (a Class M Certificate) were senior Certificates, which Plaintiffs believe were characterized by the lowest risk of loss.

1      Class Members who invested in the 111 tranches in Category Two (*i.e.*, the

2   Category Two Tranches), will receive a lower proportion of their recognized losses

3   than those in Category One because their claims were dismissed by the Court and,

4   thus, have less value.[25]   Specifically, the claims brought on the Category Two

5   Certificates were dismissed because the Certificates were not purchased by the

6   original *Luther* Plaintiffs and, thus, the claims were not brought in a timely fashion by

7   a named plaintiff with standing.  *See Maine State Ret. Sys. v. Countrywide Fin. Corp.*,

8   No. 2:10-CV-0302 MRP (MANx), 2011 U.S. Dist. LEXIS 125203, at *9 -*10 (C.D.

9   Cal. May 5, 2011); *In re Countrywide Fin. Corp. Mortgage-Backed Sec. Litig.*, 860 F.

10  Supp. 2d 1062 (C.D. Cal. 2012).  Plaintiffs believe, however, that the appellate rights

11  of the Category Two Tranche holders are stronger than the appellate rights of the

12  holders in Category Three, and thus deserve a larger settlement share, because for

13  each of the Category Two Tranches there was a named Plaintiff representative that

14  would be found to have standing under this Court's rulings.[26]

15      The Class Members who invested in the tranches contained in Category Three

16  are being allocated 10% of the Settlement Amount as the claims of these Class

17  Members have been dismissed by the Court on standing and tolling grounds, and the

18  Certificates at issue were not purchased by any of the named Plaintiffs.  Because no

19  named Plaintiff actually purchased any of the tranches contained in Category Three,

20  the claims of the Category Three Class Members were the least likely to receive any

---

22  [25]  Like the Certificates in Category One, all of the securities in Category Two
23  initially were rated as investment grade.  In addition, all but two of the Certificates in
    Category Two (109 of 111) are senior securities.   Only two of the securities in
    Category Two are subordinate (*i.e.*, Class M) securities.

24  [26]  The named Plaintiffs who sought to represent a class of tranche investors in the
25  Actions include: Iowa, Oregon, Orange County, General Board of Pension and Health
    Benefits of the United Methodist Church, Western Conference of Teamsters Pension
26  Trust Fund, Mashreqbank, p.s.c., Vermont, and Maine.  Putnam Bank is also included
    in Category Two because, like the above named Plaintiffs, it sought to represent a
27  class of investors in the eight tranches it purchased.  Plaintiffs respectfully submit that
    Putnam Bank has appellate rights like those of the named Plaintiffs and should be
28  treated similarly.

1   type of recovery in absence of this Settlement.  This point is underscored by the

2   Court's repeated holdings requiring tranche-based standing.  *See, e.g.*, *Maine State*,

3   2011 U.S. Dist. LEXIS 125203, at *29 (tranche coverage required because "[i]n all

4   cases, each tranche provided a different investment opportunity with unique

5   characteristics").  Thus, while it is impossible to determine the result of any review by

6   the Ninth Circuit Court of Appeals or (ultimately) the U.S. Supreme Court of this

7   Court's standing or tolling rulings, the Plan of Allocation reflects that a tranche that

8   was actually purchased by a named Plaintiff would (absent this Settlement) be more

9   likely to ultimately recover than a tranche that was not purchased by such a named

10  Plaintiff.

11          Furthermore, even if the Ninth Circuit were to embrace a more expansive view

12  of standing at the pleading stage, the class certification stage would provide another

13  hurdle to recovery for investors in Category Three due to their lack of tranche-based

14  representation.  *See id.* at *30 ("any alleged injury flowing from an alleged

15  misstatement as to one tranche would not necessarily constitute injury to purchasers of

16  different tranches"); *see also Wal-Mart Stores, Inc. v. Dukes*, ___ U.S. ___, 131 S. Ct.

17  2541, 2551, 180 L. Ed. 2d 374, 389 (2011) ("[c]ommonality requires the plaintiff to

18  demonstrate that the class members 'have suffered the same injury'" not "merely that

19  they have all suffered a violation of the same provision of law").  Indeed, following

20  the Second Circuit Court of Appeals' decision in *Goldman Sachs*, 693 F.3d at 145,

21  Judge Forrest of the Southern District of New York indicated that tranche-based

22  representation may be required at class certification.  *See Policemen's Annuity &*

23  *Benefit Fund of Chi. v. Bank of Am., NA*, 907 F. Supp. 2d 536, 548 (S.D.N.Y. 2012)

24  ("class standing here is whether a diminution in value to one tranche may affect the

25  value of another thus, implicating the 'same set of concerns' for tranche-holders

26  across the Trust").[27]

27  _____

28  [27]  The vast majority of the securities in Category Three were originally rated
     investment grade (as defined by the rating agencies).  In addition, nearly all of the

- 32 -

869541_5

The "adequacy" prong discussed above applies to review and approval of plans of allocation. Courts routinely approve allocation plans that provide for a disparate treatment for claims of certain class members based on plaintiffs counsels' determination of the relative strengths and weakness of the respective claims. *See Mego*, 213 F.3d at 462; *see also Redwen*, 2013 U.S. Dist. LEXIS 100275, at *28-*29 ("'It is also reasonable to allocate more of the settlement to class members with stronger claims on the merits.'") (quoting *In re Heritage Bond Litig.*, No. 02-ML-1475 DT, 2005 U.S. Dist. LEXIS 13355 (C.D. Cal. June 10, 2005)); *Williams v. Rohm & Haas Pension Plan*, 658 F.3d 629, 634 (7th Cir. 2011) (district court did not abuse its discretion in: (i) approving a settlement that applied different interest rates to distributions to early retirees resulting in discounted recoveries; and (ii) not creating a separately represented subclass of early retirees), *cert. denied*, __ U.S. __, 132 S. Ct. 1911, 182 L. Ed. 2d 779 (2012).

In *TWA*, the Seventh Circuit affirmed a plan that provided for allocation of a portion of the settlement funds to 92% of the settlement class whose claims had been dismissed by the court for lack of subject matter jurisdiction, but still pending for higher court review. 630 F.2d at 1167-69. The claims of 8% of class members received 50% of the settlement fund and a greater percentage of the settlement fund on a pro-rata basis. *Id.* at 1166. Likewise, in *In re Enron Corp. Sec.*, MDL No. 1446,

---

mezzanine (Class M) tranches subject to the proposed Settlement are included in Category Three. Category Three also contains senior, junior, subordinate, prepay and residual securities. Like all prior MBS class action settlements, the proposed Plan of Allocation treats all of these securities in Category Three the same for purposes of calculating their Recognized Loss. Specifically, like the other MBS settlements, the Recognized Loss for the Certificates is calculated in accordance with Section 11 of the Securities Act, which does not differentiate based on the type of security at issue. Furthermore, any difference in Recognized Loss among different types of Certificates likely will be immaterial because of the large number of Category Three Tranches compared to the amount of the recovery ($50 million) allocated to Category Three. Thus, the subordinate/mezzanine Certificates, which likely experienced greater losses than those incurred by the senior Certificates, will not be allocated a disproportionate amount of the Net Settlement Fund by virtue of the fact that they will be sharing in Category Three, the smallest of the three distribution Categories provided for in the Plan of Allocation representing just 10% of total settlement proceeds.

- 33 -

1   2008 U.S. Dist. LEXIS 84656 (S.D. Tex. Sept. 8, 2008), the court approved a plan that

2   provided only 10% of the settlement fund to claims that included weaker claims on the

3   merits and securities not even asserted in the complaint but added to the settlement.

4   *Id.* at *48-*49 n.10.

5          In *WorldCom*, the court approved a plan that provided no recovery for certain

6   class members who had purchases that predated the Class Period.  *In re WorldCom,*

7   *Inc. Sec. Litig.*, 388 F. Supp. 2d 319 (S.D.N.Y. 2005).  In *Mego*, the court found no

8   conflict in a plan of distribution that favored later purchasers compared to earlier

9   purchasers on a class period.  *Mego*, 213 F.3d at 462-64.  In other MBS class action

10  cases, courts have approved plans that provided for a lower recovery for dismissed

11  claims.  *See generally In re Lehman Brothers Mortgage-Backed Sec. Litig.*, No. 08-

12  cv-6762, 09MD2017 (LAK) (S.D.N.Y.) (21% of settlement fund to dismissed

13  tranches); *In re Wells Fargo Mortgage-Backed Certificates Litig.*, No. 09-CV-1376-

14  LHK (PSG) (N.D. Cal.) (12% allocated to dismissed tranches).  In this case, there is

15  adequate support to approve a plan of allocation that provides for a lower recovery for

16  dismissed tranches in Category Two and Three compared to the live claims in

17  Category One, and different treatment between even Category Two and Three

18  tranches.  In short, there is no "mathematical formula" for the allocation of settlement

19  funds to different claims of class members (*WorldCom*, 388 F. Supp. 2d at 348), but

20  rather a determination by Class Counsel, subject to Court review, of the relative

21  strengths and weaknesses of the claims.

22

23

24

25

26

27

28

869541_5

# VI.    CONCLUSION

For all the reasons set forth above, in the accompanying Declarations, and the entire record, the Settlement and Plan of Allocation warrant this Court's final approval.

DATED:  September 23, 2013                    Respectfully submitted,

ROBBINS GELLER RUDMAN
  & DOWD LLP
SPENCER A. BURKHOLZ
THOMAS E. EGLER
SCOTT H. SAHAM
NATHAN R. LINDELL
ASHLEY M. ROBINSON


                                                          s/ Spencer A. Burkholz
                                                      SPENCER A. BURKHOLZ

655 West Broadway, Suite 1900
San Diego, CA  92101
Telephone:  619/231-1058
619/231-7423 (fax)

KESSLER TOPAZ MELTZER
  & CHECK, LLP
ANDREW L. ZIVITZ
SHARAN NIRMUL
KIMBERLY JUSTICE
JENNIFER L. JOOST


                                                          s/ Andrew L. Zivitz
                                                      ANDREW L. ZIVITZ

280 King of Prussia Road
Radnor, PA  19087
Telephone:  610/667-7706
610/667-7056 (fax)

Co-Lead Counsel for Plaintiffs and the Class
in the *Luther* and *Western Conference* actions

DEUTSCH & LIPNER
SETH E. LIPNER
1325 Franklin Avenue, Suite 225
Garden City, NY  11530
Telephone:  516/294-8899
516/742-9416 (fax)

- 35 -

869541_5

THE MEHDI FIRM
AZRA Z. MEHDI
One Market
Spear Tower, Suite 3600
San Francisco, CA  94105
Telephone:  415/293-8039
415/293-8001 (fax)

Additional Counsel for Plaintiff

COHEN MILSTEIN SELLERS
   & TOLL PLLC
STEVEN J. TOLL (*pro hac vice*)
JULIE GOLDSMITH REISER (*pro hac vice*)
JOSHUA S. DEVORE (*pro hac vice*)


                    s/ Steven J. Toll
                  STEVEN J. TOLL

1100 New York Avenue, N.W.
West Tower, Suite 500
Washington, DC  20005-3964
Telephone:  202/408-4600
202/408-4699 (fax)

COHEN MILSTEIN SELLERS
   & TOLL PLLC
JOEL P. LAITMAN (*pro hac vice*)
CHRISTOPHER LOMETTI (*pro hac vice*)
RICHARD SPEIRS (*pro hac vice*)
DANIEL B. REHNS (*pro hac vice*)
77 Pine Street, 14th Floor
New York, NY  10005
Telephone:  212/838-7797
212/838-7745 (fax)

Lead Counsel for Plaintiffs and the Class in
the *Maine State* action only

GLANCY BINKOW &
   GOLDBERG LLP
LIONEL Z. GLANCY
MICHAEL GOLDBERG
1801 Avenue of the Stars, Suite 311
Los Angeles, CA  90067
Telephone:  310/201-9150
310/201-9106 (fax)

Liaison Counsel for Plaintiffs in the *Maine State* action

- 36 -

869541_5

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

KIRBY McINERNEY LLP
IRA M. PRESS
RANDALL K. BERGER
825 Third Avenue, 16th Floor
New York, NY  10022
Telephone: 212/371-6600
212/751-2540 (fax)

Additional Counsel for United Methodist
Churches Benefit Board. Inc.

869541_5

<u>CERTIFICATE OF SERVICE</u>

I hereby certify that on September 23, 2013, I authorized the electronic filing of the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the e-mail addresses denoted on the attached Electronic Mail Notice List, and I hereby certify that I caused to be mailed the foregoing document or paper via the United States Postal Service to the non-CM/ECF participants indicated on the attached Manual Notice List.

I certify under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.  Executed on September 23, 2013.

   s/ Spencer A. Burkholz
SPENCER A. BURKHOLZ

ROBBINS GELLER RUDMAN
   & DOWD LLP
655 West Broadway, Suite 1900
San Diego, CA  92101-3301
Telephone:  619/231-1058
619/231-7423 (fax)

E-mail:  spenceb@rgrdlaw.com

869541_5

## Mailing Information for a Case 2:12-cv-05125-MRP-MAN

**Electronic Mail Notice List**

The following are those who are currently on the list to receive e-mail notices for this case.

- **Leiv H Blad , Jr**
  leiv.blad@bingham.com

- **Spencer Alan Burkholz**
  spenceb@rgrdlaw.com,e_file_sd@rgrdlaw.com

- **Christopher G Caldwell**
  caldwell@caldwell-leslie.com,hammer@caldwell-leslie.com, ,hong@caldwell-leslie.com,perigoe@caldwell-leslie.com,pettit@caldwell-leslie.com,records@caldwell-leslie.com,hayes@caldwell-leslie.com,popescu@caldwell-leslie.com,strother@caldwell-leslie.com

- **Michelle K Camp**
  mpulley@gibsondunn.com

- **Matthew D Caplan**
  matthew.caplan@dlapiper.com,susan.byrd@dlapiper.com

- **Michele E Connolly**
  mconnolly@goodwinprocter.com

- **Brian Charles Devine**
  bdevine@goodwinprocter.com,ABoivin@goodwinprocter.com

- **Rajiv S Dharnidharka**
  rajiv.dharnidharka@dlapiper.com

- **Jenifer Q Doan**
  jeniferdoan@paulhastings.com,jenniferroussillon@paulhastings.com

- **Daniel S Drosman**
  ddrosman@rgrdlaw.com,tholindrake@rgrdlaw.com,e_file_sd@rgrdlaw.com

- **Thomas E Egler**
  tome@rgrdlaw.com,jillk@rgrdlaw.com

- **John O Farley**
  jfarley@goodwinprocter.com

- **Inez H Friedman-Boyce**
  ifriedmanboyce@goodwinprocter.com,MConnolly@goodwinprocter.com

- **Jeanne A Fugate**
  fugate@caldwell-leslie.com,records@caldwell-leslie.com,harper@caldwell-leslie.com

- **Joshua G Hamilton**
  joshuahamilton@paulhastings.com,melmanahan@paulhastings.com,lindayoung@paulhastings.com

- **Jennifer L Joost**
  jjoost@ktmc.com

- **Kimberly A Justice**
  kjustice@ktmc.com,dpotts@ktmc.com

- **Deborah Kang**
  deborahkang@paulhastings.com

- **Dean J Kitchens**
  dkitchens@gibsondunn.com,MOstrye@gibsondunn.com

- **Jennifer Y Lai**
  jlai@leonardcarder.com

- **Seth E Lipner**
  proflipner@aol.com

- **Teodora Manolova**
  tmanolova@goodwinprocter.com

- **Azra Z Mehdi**
  azram@themehdifirm.com,ghamilton@themehdifirm.com

- **Alexander K Mircheff**
  amircheff@gibsondunn.com,mostrye@gibsondunn.com,inewman@gibsondunn.com,cnowlin@gibsondunn.com,mpulley@gibsondunn.com

- **Nicolas Morgan**
  nicolas.morgan@dlapiper.com,sonji.leblanc@dlapiper.com,paul.puzon@dlapiper.com

- **Sharan Nirmul**
  snirmul@ktmc.com,mswift@ktmc.com

- **Christopher Anthony Nowlin**
  cnowlin@gibsondunn.com,hkim@gibsondunn.com

- **Brian E Pastuszenski**
  bpastuszenski@goodwinprocter.com,aboivin@goodwinprocter.com,ashapiro@goodwinprocter.com

- **Eric Stephen Pettit**
  pettit@caldwell-leslie.com,records@caldwell-leslie.com

- **David A Priebe**
  david.priebe@dlapiper.com,carmen.manzano@dlapiper.com

- **Ashley M Robinson**
  ashleyr@rgrdlaw.com

- **Scott H Saham**
  scotts@rgrdlaw.com,e_file_sd@rgrdlaw.com

- **Jennifer M Sepic**
  jennifer.sepic@bingham.com

- **Alexis L Shapiro**
  ashapiro@goodwinprocter.com

- **William F Sullivan**
  williamsullivan@paulhastings.com,lisavermeulen@paulhastings.com,lindayoung@paulhastings.com

- **Michael C Tu**
  mtu@orrick.com,cchiang@orrick.com

- **Avi N Wagner**
  avi@thewagnerfirm.com,anwagneresq@hotmail.com

- **Shirli Fabbri Weiss**
  shirli.weiss@dlapiper.com,emiko.gonzales@dlapiper.com

- **Lloyd Winawer**
  lwinawer@goodwinprocter.com,cburgos@goodwinprocter.com

- **Andrew L Zivitz**
  azivitz@ktmc.com,dpotts@ktmc.com,jenck@ktmc.com,cchiappinelli@ktmc.com,acashwell@ktmc.com

## Manual Notice List

The following is the list of attorneys who are **not** on the list to receive e-mail notices for this case (who therefore require manual noticing). You may wish to use your mouse to select and copy this list into your word processing program in order to create notices or labels for these recipients.

- (No manual recipients)